23-4011

# United States Court of Appeals
### *for the*
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

JARRED JAVON FORD,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

# BRIEF OF APPELLANT

Amos G. Tyndall
Thomas K. Maher
AMOS TYNDALL PLLC
202B South Greensboro Street
Carrboro, North Carolina 27510
(919) 967-0504

*Counsel for Appellant*



CP COUNSEL PRESS      (800) 4-APPEAL • (JOB 809447)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT .......................................................1

ISSUE PRESENTED FOR REVIEW ....................................................1

STATEMENT OF THE CASE............................................................2

SUMMARY OF THE ARGUMENT ...................................................11

ARGUMENT ...................................................................................12

    I.    Did the district court err in allowing Mr. Ford to proceed *pro se* without ensuring that Mr. Ford's decision was made knowingly and voluntarily?..............................................12

        A.    Standard of Review.................................................12

        B.    Discussion of the Issue............................................13

    II.    Did the district court violate Mr. Ford's rights to Due Process and Effective Assistance of Counsel under the Fifth and Sixth Amendments to the United States Constitution and procedural rights under Rules 32 and 43 of the Federal Rules of Criminal Procedure when it held a hearing without Mr. Ford present, discussed the guidelines, offense conduct, and the presentence investigation report, and decided what sentence to impose?..........................................................14

        A.    Standard of Review.................................................14

        B.    Discussion of the Issue............................................15

    III.    Did the district court commit procedural and substantive error at sentencing by failing to make a factual determination regarding Mr. Ford's objection to the cross-reference to state attempted murder charges, to address the 18 U.S.C. §3553(a) factors, or explain why a sentence of 120 months was appropriate under the totality of the circumstances? ..........................21

        A.    Standard of Review.................................................21

        B.    Discussion of the Issue............................................21

Procedural Error.........................................................................21

Objection to the Presentence Investigative Report...................22

Failure to Address 18 U.S.C. 3553(a) Factors..........................27

CONCLUSION ...................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Faretta v. California*,
  422 U.S. 806, 95 S. Ct. 2525 (1975)....................................................13

*Gall v. United States*,
  552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)..................... 21, 22, 26, 27

*Illinois v. Allen*,
  397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970) .......................................16

*Rita v. United States*,
  551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) ...................... 22, 23, 27

*United States v. Bernard*,
  708 F.3d 583 (4th Cir. 2013) ...........................................................13

*United States v. Carter*,
  564 F.3d 325 (4th Cir. 2009) ...........................................................27

*United States v. Diggles*,
  957 F.3d 551 (5th Cir. 2020) ...........................................................20

*United States v. Gonzales-Flores*,
  701 F.3d 112 (4th Cir. 2012) ...........................................................19

*United States v. Hall*,
  2023 U.S. App. 13702 (4th Cir. 2023) ...........................................................20

*United States v. King*,
  582 F.2d 888 (4th Cir. 1978) ........................................................ 13, 14

*United States v. Lawrence*,
  248 F.3d 300 (4th Cir. 2001) ........................................................ 16, 20

*United States v. Lynn*,
  912 F.3d 212 (4th Cir. 2019) ........................................................ 14, 21

*United States v. Singleton*,
  107 F.3d 1091 (4th Cir. 1997) ........................................................ 12, 13

*United States v. Slager*,
  912 F.3d 224 (4th Cir. 2019) ........................................................ 23, 25

iii

**Statutes & Other Authorities:**

U.S. Const. Amend V.................................................................... 1, 14, 17

U.S. Const. Amend VI ............................................................. 1, 14, 16, 17

18 U.S.C. § 922(g)(1).........................................................................1

18 U.S.C. § 924..................................................................................1

18 U.S.C. § 3231................................................................................1

18 U.S.C. § 3553(a) .................................................................. *passim*

28 U.S.C. § 1291................................................................................1

Fed. R. App. P. 4(b)(2).......................................................................1

Fed. R. Crim. P. 32..................................................................... *passim*

Fed. R. Crim. P. 32(c)(1) .................................................................20

Fed. R. Crim. P. 32(i)(4)(B)..............................................................15

Fed. R. Crim. P. 43....................................................... 1, 11, 14, 15

Fed. R. Crim. P. 43(a) ................................................................ 16, 17

Fed. R. Crim. P. 43(b) ................................................................ 16, 19

Fed. R. Crim. P. 43(c)......................................................................16

U.S.S.G. § 2A2.1.............................................................................25

U.S.S.G. § 2A2.2.............................................................................26

U.S.S.G. § 2A2.3.............................................................................26

## JURISDICTIONAL STATEMENT

The government indicted Mr. Ford on 2 March 2021 for one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924. [JA2, JA14]

The district court announced the sentence on 4 January 2023 and filed its final judgment the same day. [JA181] Mr. Ford filed his notice of appeal on 7 September 2022. [JA159] This Court issued a letter and appeal transmittal sheet on 8 September 2022. [JA161-162] Pursuant to Fed. R. App. P. 4(b)(2), the appeal was filed on 5 January 2023. [JA161]

The district court had jurisdiction pursuant to 18 U.S.C § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

I.    Whether the district court erred in allowing Mr. Ford to proceed *pro se* without ensuring that his decision was made knowingly and voluntarily.

II.   Whether the trial court violated Mr. Ford's rights to Due Process and Effective Assistance of Counsel under the Fifth and Sixth Amendments to the United States Constitution and procedural rights under Rules 32 and 43 of the Federal Rules of Criminal Procedure when it held a hearing without Mr. Ford present, discussed the guidelines, offense conduct, and the presentence investigation report, and reached a conclusion about an appropriate sentence.

III.  Whether the district court committed procedural and substantive error at sentencing by failing to make a factual determination regarding Mr. Ford's objection to a cross-reference to state attempted murder charges, to address the 18 U.S.C. §3553(a) factors, or explain why a sentence of 120 months was appropriate under the totality of the circumstances.

1

## STATEMENT OF THE CASE

On 4 February 2021, Mr. Ford was travelling down Interstate 95 in Nash County, North Carolina when Deputy Shelby Smith of the Nash County Sheriff's Department stopped him for speeding and unsafe movement. Deputy Smith testified that she intended to issue a warning ticket but changed her mind after she smelled marijuana. While writing the warning ticket, Deputy Smith called Deputy William Toney to assist her. [JA84]

Deputy Toney arrived while Deputy Smith spoke to Mr. Ford at the front of Deputy Smith's patrol car. Mr. Ford had his arm close by his side so Deputy Smith asked to "pat him down." Mr. Ford declined the invitation. [JA84-85]

Deputy Smith decided to force Mr. Ford to place his hands behind his back. Mr. Ford refused the arrest. According to Deputy Smith, she and Deputy Toney fought Mr. Ford in a ditch. Mr. Ford pulled a firearm from his left side and started shooting. [JA85]

Deputy Smith exchanged gunfire with Mr. Ford. She hit Mr. Ford several times. Deputy Toney sustained gunshot wounds to his right arm, his left arm, and his hip. Both Deputy Toney and Mr. Ford were transported from the scene by emergency medical personnel. [JA86, JA91-92]

2

Deputy David Marks of the Nash County Sheriff's Department recovered a Taurus 9 mm handgun from the scene and the government admitted it into evidence as Exhibit 5.  [JA110-11]

Mr. Ford testified that he pulled over in response to Deputy Smith activating blue lights behind him. [JA129] After discussing the stop with Deputy Smith, Mr. Ford expected to get a warning ticket. [JA130] He waited while Deputy Smith returned to car to write the ticket. When she returned, however, Deputy Smith asked Mr. Ford to step out of his car. Mr. Ford had been stopped before but had never been asked to step out of his car. [JA130] Deputy Smith directed him to move to several locations, behind his driver's side light, toward the headlight of the patrol car, and back to the original spot. [JA130]

At that point, Mr. Ford 'became suspicious as to the movements. There wasn't normal." When Mr. Ford declined to be frisked, Deputy Smith seemed upset. [JA130]

A second officer arrived and spoke to Deputy Smith. After speaking to that deputy, Deputy Smith informed Mr. Ford that the deputies intended to search him and his car. Mr. Ford did not understand "why you have to search me and the vehicle." [JA131]

As the deputies passed Mr. Ford, he expected them to conduct the search, but "they kind of abruptly changed directions and each officer grabbed one of my

3

arms." [JA131] Mr. Ford froze. Deputy Smith did not "say anything like, you're under arrest, you're being detained. She just kind of grabbed me." [JA131]

Mr. Ford did not understand what the deputies were trying to accomplish. "I kept my body still. … I was kind of waiting for her to give me an instruction to … get against the vehicle, put your arms –put your hands behind your back, you're under arrest…. Normal things that an officer would tell somebody if they're being detained or arrested." [JA132]

Mr. Ford was surprised and shocked. Then, Deputy Smith announced that Mr. Ford had a gun. At that point, Mr. Ford "went into fear mode. I was kind of in fear for my life at that point because she yelled out that." [JA132]

Given his circumstances and the deputies behavior, Mr. Ford interpreted Deputy Smith's statement as a direction for Deputy Toney to shoot Mr. Ford. "[I]t kind of sounded like, shoot him at this point." [JA133]

Mr. Ford explained his fear. "Because … there is a lot of traffic stops that end in people being – a suspect, detainee, defendant – being shot and killed and they don't get to testify about what happened. So I was really in fear for my life at that point." [JA133]

After pulling the gun and shooting Deputy Toney in the arm and hip at close range, Mr. Ford "began to try to move away from the two officers. …[T]here's not

… really anywhere to go, but I'm trying to get some type of cover in between me and the officer…. I was trying to avoid being shot at that point." [JA134]

Mr. Ford lost consciousness but realized he was under fire when he awoke. He pointed the firearm to provide cover. After he stopped firing, Mr. Ford was unable to move because of the wounds from the gunshots Deputy Smith fired. [JA135]

On 28 March 2022, the District Court appointed counsel to represent Mr. Ford. [JA3] On 3 August 2022, trial counsel filed a motion to withdraw as counsel for Mr. Ford. [JA5] In the motion, she cited Mr. Ford's desire to represent himself without commenting on Mr. Ford's understanding of the responsibilities inherent in representing himself. [JA49]

The trial court held a hearing on the Motion to Withdraw for 9 August 2022. [JA6, JA51] Counsel informed the trial court that Mr. Ford wanted to proceed *pro se* and that he had serious charges related to the same incident pending in state court. [JA52] The trial court did not ask trial counsel any questions about her assessment of her client's competency, understanding of legal issues, or strategy for litigating a criminal case while incarcerated. [JA52, JA55-56]

Before asking Mr. Ford any questions, the trial court advised him as follows:

> You have the right to counsel. You also have a right to be
> your own lawyer. I'd admonish you that you need legal
> skill to appear in a court. But tell me why you want to be
> your own lawyer.

[JA53]

Mr. Ford responded as follows:

> My attorney really doesn't believe me when I speak to
> them about the evidence against me in the case or the
> series of events that took place. So I just feel like it
> would be in my best interest to represent myself.

[JA53]

The trial court asked Mr. Ford where he was from, his nationality, and his

birthplace. [JA53]

The trial court questioned the prosecutor about the government's version of

the facts. After commenting to the prosecutor that the case should be easy to try,

the trial court ask the prosecutor when the government wanted to schedule the trial.

The prosecutor wanted to confirm that witnesses were available but agreed that 29

August 2022 was a suitable trial date for the government. [JA54-56]

The trial court allowed trial counsel's motions to withdraw. At Mr. Ford's

request, the trial court allowed him one week to file motions. [JA56]

The trial court arraigned Mr. Ford. Mr. Ford pleaded not guilty. The trial

court scheduled the trial for 29 August 2022. [JA56]

In the interim, and without consulting with Mr. Ford, the trial court moved the trial date to 25 August 2022, one week earlier than scheduled. That trial began as scheduled. [JA6] Mr. Ford was restricted to the defense table throughout the trial. [JA76]

The government called six witnesses at trial. [JA70] The parties stipulated that Mr. Ford was aware on the date of offense that he was convicted felon. [JA125] Mr. Ford testified on his own behalf. [JA129-142] The jury convicted Mr. Ford of possession of a firearm by a convicted felon. [JA155]

Mr. Ford filed his notice of appeal on 7 September 2022. [JA159] This Court issued a letter and appeal transmittal sheet on 8 September 2022. [JA161-62]

The trial court scheduled the sentencing hearing for 16 November 2022. [JA156] The government filed an Emergency Motion to Continue Sentencing under seal on 14 November 2022. [JA8]

On 15 November 2022, the trial court held a hearing on the government's motion to continue outside Mr. Ford's presence. [JA9, JA227] During the hearing, the trial court and the prosecutor discussed the basis for the motion: a deputy involved in the shootout wanted to appear for the sentencing hearing. [JA164]

The following discussion occurred between the prosecutor and the trial court outside Mr. Ford's presence:

THE COURT:          … what's his projected sentence?

MR. SINGH:          Well, … he's 360 to life. … The event that's 360 to life
is capped at ten.

THE COURT:          Is he an ACCA?

MR. SINGH:          He's not. No. He's got a couple of priors, but I think one
of them – only one of them would be ---

THE COURT:          Well, what was he --- he was convicted of felon in
possession of a firearm.

MR. SINGH:          Correct. The instant conviction at trial was felon in
possession of a firearm.

THE COURT:          And – and what's he being sentenced for? Felon in
possession of a firearm.

MR. SINGH:          Uh-huh. Uh-huh. But he got cross-referenced with
attempted murder, so his guidelines go up to 360 to life.

THE COURT:          But – but the cap is ten years.

MR. SINGH:          Correct. Correct. Correct. Yeah.

THE COURT:          So he's going to get the ten years.

MR. SINGH:          Yeah

                    …

THE COURT:          … where's the mystery? …

8

MR. SINGH:        … there's no mystery. .., I just … want to … ensure the victim gets the chance to allocate… There's no mystery. … I don't think he's actually filed any objections to the PSR either.

THE COURT:        Well, he's representing himself, isn't he?"

…

THE COURT:        … There's no lawyer.

MR. SINGH:        No lawyer.

THE COURT:        So none at all.

MR. SINGH:        None at all.

THE COURT:        Okay. So that's easy.

MR. SINGH:        Yeah. … my assumption is he'll – his objections would probably just be to everything.

THE COURT:        Yeah.

[JA 164-67]

The *ex parte* hearing ends with the trial court scheduling the sentencing hearing for 17 November 2022 and encouraging the prosecutor to determine whether the victim could appear that day. [JA166] According to the docket sheet, the government made an oral motion for reconsideration of the Emergency Sealed Motion to Continue. The trial court reconsidered the motion and rescheduled

sentencing to January 2023 without hearing from Mr. Ford. There is no transcript of the oral motion, a hearing, or the ruling. [JA9]

Neither party objected to the Presentence Investigation Report prior to the sentencing hearing. [JA126] The probation officer calculated Mr. Ford's range as 120 months because the statutory maximum for possession of a firearm by a felon was lower than the total offense level of 42 that the probation officer calculated as the offense conduct. [JA222]

The official sentencing hearing was convened at 3:35 p.m. on 4 January 2022. The trial court asked Mr. Ford if he wanted to say anything about his sentence. Mr. Ford responded that he had insufficient time to object to the report before it was filed and asked to make objections during the sentencing hearing. The trial court agreed. [JA171]

Mr. Ford argued that his prior record level should be record level II instead of record level III. The trial court concluded that the total offense level exceeded the statutory maximum for any prior record so the statutory maximum became the maximum of the guideline range. [JA171-72]

Mr. Ford objected to the cross-reference for attempted murder because those charges were pending in state court. In the alternative, he argued that the cross-reference should be for assault, not attempted murder. [JA172] The trial court

concluded "your exchange of gunfire …[with] the law enforcement officers was an attempted murder as a matter of law…." [JA172]

The trial court turned to victim allocution next. It heard from one of the deputies involved in the shootout with Mr. Ford. Finally, the prosecutor argued for a sentence of 120 months, the maximum under the statute and guidelines. [JA179]

At that point, the trial court found a statutory maximum of 120 months and imposed that sentence. It did not address any 18 U.S.C. §3553(a) factors. Nor did the court explain its reasoning for the sentence. [JA170-80]

## SUMMARY OF THE ARGUMENT

During the pre-trial and sentencing proceedings, the trial court failed to protect Mr. Ford's rights to due process and confrontation under the United States Constitution and pursuant to Rule 32 and 43 of the Federal Rules of Criminal Procedure.

First, the trial court allowed Mr. Ford to proceed without the assistance of counsel without ensuring that his waiver of counsel was knowing and voluntary. This decision was especially troubling given an *ex parte* hearing the trial court held with the prosecutor after the conviction but before the sentencing hearing.

During that hearing, the trial court discussed Mr. Ford's adjusted offense level, advisory guideline ranges, and potential sentences. In the end, the trial court

11

announced that Mr. Ford would get the maximum sentence under the guideline range the prosecutor suggested applied.

At sentencing, the trial court failed to address the 18 U.S.C. §3553(a) factors in name or substance. The trial court rejected Mr. Ford's arguments that the advisory guideline ranges were incorrect without making factual findings. It sentenced Mr. Ford to 120 months without giving any reason for the sentence, much less tying it to the factors required under the statute.

This Court should order a new trial because the trial court failed to ensure that Mr. Ford made a knowing and voluntary waiver of his right to counsel. It should remand the case for resentencing because of the procedural and substantive errors following the trial.

## ARGUMENT

**I.    Did the district court err in allowing Mr. Ford to proceed pro se without ensuring that Mr. Ford's decision was made knowingly and voluntarily?**

**A. Standard of Review**

The Court "examines the constitutional adequacy of the court's inquiry into Appellant's desire to serve as his own counsel … de novo." *United States v. Singleton*, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997).

### B. Discussion of the Issue

A criminal defendant has the right to represent himself. *Faretta v. California*, 422 U.S. 806. 819, 95 S.Ct. 2525 (1975). To do so, he must waive his right to the assistance of counsel. *Id*. Before allowing a defendant to represent himself, the trial court must ensure that "the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." *United States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013). There is no formula for determining whether a waiver is knowing and intelligent. *United States v. King*, 582 F.2d 888, 890 (4th Cir. 1978). The determination depends on the facts and circumstances of each case. *United States v. Singleton*, 107 F.3d 1091, 1097 (4th Cir. 1997).

At a minimum, the trial court "must assure itself that the defendant knows the charges against him, the possible punishment, and the manner in which an attorney can be of assistance." *King*, 582 F.2d at 890. The trial court must make sure the defendant understands that he will have to navigate complex legal proceedings alone without the training necessary to do so. *Id.*

The trial court met none of these requirements. The trial court advised Mr. Ford that he could represent himself or proceed without a lawyer. The trial court did state that "you need legal skill to appear in a court." [JA53]

The trial court asked Mr. Ford why he wanted to proceed but never followed up with questions about the charges, possible punishments, or the way a lawyer could

assist him. [JA53] The trial courts only questions were about Mr. Ford's home, nationality, and citizenship. None of these factors said anything about whether Mr. Ford understood the significance of his decision to represent himself. *Id.*

Under the standards set forth by this Court, this inquiry was insufficient and warrants a new trial. While the type and substance of the inquiry must be fashioned for the circumstances, the Court in *King* set minimal requirements missing from the record in this case.

At best, the record reveals that Mr. Ford's decision was clear, and questionably unequivocal. But that is one element of the minimum that the record must establish. *Id.* In addition, the trial court must ensure that the waiver is knowing, intelligent and voluntary. *Id.* Nothing about the colloquy in this case supports such a finding.

Mr. Ford is entitled to a new trial.

II.    **Did the district court violate Mr. Ford's rights to Due Process and Effective Assistance of Counsel under the Fifth and Sixth Amendments to the United States Constitution and procedural rights under Rules 32 and 43 of the Federal Rules of Criminal Procedure when it held a hearing without Mr. Ford present, discussed the guidelines, offense conduct, and the presentence investigation report, and decided what sentence to impose?**

### A. Standard of Review

The Court reviews the trial court's legal conclusions *de novo*. *United States v. Lynn*, 912 F.3d 212, 216 (4th Cir. 2019).

14

**B. Discussion of the Issue**

The government filed a motion entitled "Emergency Motion to Continue Sentencing" (under seal) on 14 November 2022, two days before the scheduled sentencing hearing. The prosecutor did not obtain Mr. Ford's position on the Motion before filing, but certified that he sent a copy of the Motion by mail or Federal Express to Central Prison, where Mr. Ford was incarcerated. [JA227-229]

The basis for the motion was set out in paragraphs four and five: "one of the primary victims … recently sustained a post-surgery infection" and "the medical issues may hinder the process of victim allocution." [JA227] Of course, Rule 32(i)(4)(B) requires the sentencing court to hear from a victim who appears for sentencing.

In response to the government's Emergency Motion to Continue the sentencing hearing, the trial court held a hearing to consider the motion on 15 November 2022. Neither the government nor the court made any effort to secure Mr. Ford's presence for the hearing. As noted above, Mr. Ford represented himself at trial and sentencing. [JA70, JA170] Because he was incarcerated, however, Mr. Ford was dependent on the trial court to assure his presence at all hearings.

Rule 43 of the Federal Rules of Criminal Procedure requires a defendant to be present at critical stages of the proceedings, including the initial appearance, trial stages, and sentencing.

Rule 43(b) makes exceptions for hearings on questions of law or sentencing corrections, assuming counsel appears on the defendant's behalf. Nothing in the rules sanctions *ex parte* communications between judges and prosecutors about substantive matters. Those exceptions would not apply where a defendant acts as his own counsel. U.S. Const. Amend IV.

As noted above, Mr. Ford represented himself at trial and sentencing. [J.A.70, 170] He had a right to be present for any hearing where counsel's presence would have been required, particularly one where the district court considered substantive matters. Rule 43(a). See *Illinois v. Allen*, 397 U.S. 337, 338, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970).

As this Court has noted, Rule 43(a) is based on the constitutional assurance that a person has a right to physical presence at all stages of the trial. *United States v. Lawrence*, 248 F.3d 300 (4th Cir. 2001). Courts "must indulge every reasonable presumption against the loss of a constitutional rights." *Allen*, 397 U.S. at 343. While a defendant can lose those rights by consent or misconduct, the district court must strictly comply with the process announced by the Court in *Allen* and codified in Rule 43(c) before finding that a defendant waived his right to presence. *Lawrence*, 248 F.3d at 305.

Without lingering on the question of whether Mr. Ford was entitled to presence and an opportunity to be heard as to the sentencing date, the unannounced

16

substance of the *ex parte* hearing violated his rights to presence and confrontation under the Due Process and Confrontation Clauses of the Fifth and Sixth Amendments to the United States Constitution and Rule 43(a).

The hearing was convened at 2:47 p.m. on 15 November 2022. Mr. Ford was not present. [JA164] First, the district court and the prosecutor discussed a few facts to remind the judge of the case. Next, the prosecutor assured the district court that a victim wanted to appear at the sentencing hearing but could not appear the following day. [JA164] Without deciding the scheduling issue, however, the district court turned the focus of the hearing to sentencing.

The dialog between the prosecutor focused almost exclusively on the projected sentence before the district court announced the sentence he intended to impose and ultimately did impose. [JA164]

THE COURT:        … what's his projected sentence?

MR. SINGH:        Well, … he's 360 to life. … The event that's 360 to life is capped at ten.

THE COURT:        Is he an ACCA?

MR. SINGH:        He's not. No. He's got a couple of priors, but I think one of them – only one of them would be ---

THE COURT:        Well, what was he --- he was convicted of felon in possession of a firearm.

MR. SINGH:        Correct. The instant conviction at trial was felon in possession of a firearm.

THE COURT:        And – and what's he being sentenced for? Felon in possession of a firearm.

MR. SINGH:        Uh-huh. Uh-huh. But he got cross-referenced with attempted murder, so his guidelines go up to 360 to life.

THE COURT:        But – but the cap is ten years.

MR. SINGH:        Correct. Correct. Correct. Yeah.

**THE COURT:        So he's going to get the ten years.**

MR. SINGH:        Yeah

**THE COURT:        … where's the mystery? …**

MR. SINGH:        … there's no mystery. .., I just … want to … ensure the victim gets the chance to allocate… There's no mystery. **… I don't think he's actually filed any objections to the PSR either.**

**THE COURT:        Well, he's representing himself, isn't he?"**

…

**THE COURT:        … There's no lawyer.**

MR. SINGH:        No lawyer.

THE COURT:        So none at all.

MR. SINGH:        None at all.

**THE COURT:    Okay. So that's easy.**

[JA164-167; emphasis added]

This hearing violated Mr. Ford's Due Process and Confrontation rights in several ways. First, the hearing is conducted in Mr. Ford's absence. Even if the original intent of the hearing falls under the types of hearings permissible outside a defendant's presence under Rule 43(b), those exceptions anticipate the presence of counsel for the defendant. *United States v. Gonzales-Flores*, 701 F.3d 112 (4th Cir. 2012)

In *Gonzales-Flores,* this Court considered whether the defendant had a right to be present during a hearing on "counsel's motion in limine…." *Id.* at 115. The Court emphasized that deciding whether a particular hearing falls under Rule 43(b) where a defendant's presence is unnecessary is based on whether "a defendant's contribution is apt to be more marginal than at the trial and sentencing proceedings [where] a defendant's presence is a must." *Id.* at 119. The Court emphasized the primary objective of any proceeding, "ensuring the fair and accurate resolution of the proceeding at issue." *Id.* at 118.

This analysis makes it clear that any hearing without the defendant would require the presence of counsel advocating on the defendant's behalf. *Id.* Mr. Ford represented himself in this matter so excluding him meant that no one was present

to advocate on his behalf or to object to the consideration of issues outside the scope of the hearing.

The second way the hearing violated Mr. Ford's constitutional and statutory rights was the discussion between the district court and the prosecutor of sentencing issues outside Mr. Ford's presence and prior to the sentencing proceeding. [JA164-67] The district court and the prosecutor must review an exhaustive presentence investigation report before the sentencing hearing in most cases. Fed. R. Crim. P. 32(c)(1). Discussing the sentence with each other outside the defendant's presence is tantamount to opening the sentencing hearing. That process is strictly prohibited by the constitution and Rule 32. *Lawrence*, 248 F.3d at 305.

Finally, the district court reached and announced the sentence it would impose during this hearing. Reaching that conclusion during a hearing without giving Mr. Ford the opportunity to appear and argue for an alternative sentence was the same as sentencing him *in abstentia*, which is not permissible. *United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020); *see United States v. Hall*, 2023 U.S. App. 13702 (4th Cir. 2023).

As this Court stated in *Lawrence*, "imposing punishment on those who break the law must be in accordance with the law." *Lawrence*, 248 F.3d at 305. Because the ex parte hearing violated Mr. Ford's rights to appear at all hearings as his own

20

counsel and the conversation between the prosecutor and district court included

consideration of sentencing arguments and conclusions, the case should be

remanded for a new sentencing hearing.

### III. Did the district court commit procedural and substantive error at sentencing by failing to make a factual determination regarding Mr. Ford's objection to the cross-reference to state attempted murder charges, to address the 18 U.S.C. §3553(a) factors, or explain why a sentence of 120 months was appropriate under the totality of the circumstances?

#### A.      Standard of Review

This Court reviews sentences under a deferential abuse-of-discretion

standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445

(2007).  The Court reviews the factual findings underlying a district court's

application of a guidelines cross-reference for clear error and the trial court's legal

conclusions de novo. <u>*United States v. Lynn*, 912 F.3d 212, 216 (4th Cir. 2019)</u>.

#### B.      Discussion of the Issue

#### **Procedural Error**

To apply the deferential abuse-of-discretion standard, the Court must

determine whether the district court committed procedural error. *Id.* at 597. If the

sentence is procedurally reasonable, the Court must "consider the substantive

reasonableness of the sentence imposed under an abuse of discretion standard." *Id.*

Failing to consider 18 U.S.C. §3553(a) factors "or failing to adequately

explain the chosen sentence-including an explanation for any deviation from the

Guidelines range..." are examples of procedural errors. *Id.* Both errors are present in this case.

Rule 32 of the Federal Rules of Criminal Procedure defines the procedure for the sentencing hearing. Fed. R. Crim. P 32. Section 3553(a) sets out the statutory factors the district court must consider before imposing a sentence. 18 U.S.C. §3553(a).

The district court must first correctly calculate the applicable Guideline range. *Rita v. United States*, 551 U.S. 338, 347-48, 127 S. Ct. 2456, 2480, 168 L. Ed. 2d 203 (2007). Next, the district court should consider the 3553(a) factors. *Gall*, 552 U.S. at 50. The sentencing court cannot assume that the guideline range is reasonable. *Rita*, 551 U.S. 351, 127 S.Ct. at 2456. The district court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. Finally, the sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

**<u>Objection to the Presentence Investigative Report</u>**

Mr. Ford objected to two conclusions in the presentence investigative report. (1) He argued that he is a prior record level two instead of a prior record level three. (2) Mr. Ford took exception to a cross-reference to the attempted murder guideline.

The trial court responded to both objections by concluding that neither

mattered to the guidelines' calculation. The trial court's rationale was that Mr.

Ford's total offense level after the cross-reference was 360 to life so the statutory

maximum became the advisory guideline range. [JA171]

This analysis was flawed under the circumstances, and the trial court's

response is procedural and substantive error. The government must support a

cross-reference offense by a preponderance of the evidence. *United States v.*

*Slager*, 912 F.3d 224, 232 (4th Cir. 2019). If the defendant articulates the reasons

why the facts do not support the probation officer's conclusions, the trial court

must make a factual and legal determination as to whether the cross-reference

applies. *Id.*

Mr. Ford argued that the cross-reference did not apply because he faced

charges for the conduct in state court. Second, he argued that any cross-reference

would be to an assault, not attempted murder. [JA172]

Once Mr. Ford objected to the prior record level and the cross-reference, the

trial court had an obligation to determine the appropriate record level and make a

factual determination as to whether the cross-reference to attempted murder

applied. *Rita*, 551 U.S. at 347-48, 127 S. Ct. at 2480.

23

Instead, the trial court accepted the probation officer's assessment at face value. If Mr. Ford's appropriate guideline range is level 42, the prior record level would not matter because every range under level 42 is 360 to life. [JA171]

Mr. Ford disputed the facts in this case. He testified that he shot in fear for his life, not to kill. In fact, Mr. Ford attempted to retreat after the initial shots.

As the deputies passed Mr. Ford, he expected them to conduct the search, but "they kind of abruptly changed directions and each officer grabbed one of my arms." [JA131] Mr. Ford froze. Deputy Smith did not "say anything like, you're under arrest, you're being detained. She just kind of grabbed me." [JA131]

Mr. Ford did not understand what the deputies were trying to accomplish. "I kept my body still. … I was kind of waiting for her to give me an instruction to … get against the vehicle, put your arms –put your hands behind your back, you're under arrest…. Normal things that an officer would tell somebody if they're being detained or arrested." [JA132]

Mr. Ford was surprised and shocked. Then, Deputy Smith announced that Mr. Ford had a gun. At that point, Mr. Ford "went into fear mode. I was kind of in fear for my life at that point because she yelled out that." [JA132]

Given his circumstances and the deputies behavior, Mr. Ford interpreted Deputy Smith's statement as a direction for Deputy Toney to shoot Mr. Ford. "[I]t kind of sounded like, shoot him at this point." [JA133]

24

Mr. Ford explained his fear. "Because … there is a lot of traffic stops that end in people being – a suspect, detainee, defendant – being shot and killed and they don't get to testify about what happened. So I was really in fear for my life at that point." [JA133]

After pulling the gun and shooting Deputy Toney in the arm and hip at close range, Mr. Ford "began to try to move away from the two officers. …[T]here's not … really anywhere to go, but I'm trying to get some type of cover in between me and the officer…. I was trying to avoid being shot at that point." [JA134]

Mr. Ford lost consciousness but realized he was under fire when he awoke. He pointed the firearm to provide cover. After he stopped firing, Mr. Ford was unable to move because of the wounds from the gunshots Deputy Smith fired. [JA135]

Mr. Ford's argument that his conduct amounted to an assault as opposed to an attempted murder required the trial court to determine under the facts and law whether the cross-reference for attempted murder applied under the facts. *Slager*, 912 F.3d at 232.

The probation officer's conclusions about the base offense level are based on the cross-reference to attempted murder under U.S.S.G. §2A2.1. Based on Mr. Ford's argument, however, the base offense level would be a 7 for assault and 14 for aggravated assault. Under either scenario, Mr. Ford's advisory guideline range

would be less than the statutory maximum, even with upward adjustments that could apply for injuries resulting from the encounter. See U.S.S.G. §2A2.2 & 2A2.3.

The trial court concluded that Mr. Ford's conduct "was an attempted murder as a matter of law…." [JA172] Sentencing courts must make factual findings in the face of objections about offense conduct. *Id.* By failing to consider the evidence and determine whether the conduct was an attempted murder, instead of an assault, the trial court failed to adequately consider Mr. Ford's objections. *Id.*

The result is that the record is unclear as to the accuracy of the advisory guideline range. The trial court may have assessed the facts in concluding that the cross-reference should apply but that is not clear from the record. In fact, the opposite appears likely. The trial court made its determination as a matter of law, not fact. [JA172]

That conclusion is error. Failing to consider the facts, apply the preponderance of the evidence standard, and make findings was error. *Gall*, 552 U.S. at 50. Both the procedure and substance of the trial court's treatment of Mr. Ford's objections were flawed.  This Court should remand this case based on these errors.

**Failure to Address 18 U.S.C. 3553(a) Factors**

Even if the trial court was correct that the guidelines' calculation was 0-120, it had an obligation to consider the factors enumerated in 18 U.S.C. §3553(a) and explain their significance to the sentence. *Rita*, 551 U.S. 351, 127 S.Ct. at 2456. The trial court did neither.

The sentencing hearing commenced at 3:35 p.m. on 4 January 2023. [JA171] It ended at 3:50 p.m. that same day. [JA180] During the entire fifteen-minute hearing, the trial court never mention the statute, the factors, or the reason for imposing the ten-year sentence. *Gall*, 552 U.S. at 50. All are required to ensure that Mr. Ford's procedural and substantive rights were protected. *Id.*

Where the district court fails to provide any explanation for its sentence, this Court should remand this case for resentencing. *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009).

## CONCLUSION

This Court should order a new trial because the record is unclear as to whether Mr. Ford made a knowing and voluntary waiver. In the alternative, the Court should remand for a new sentencing hearing based on the procedural and substantive violations during the sentencing proceedings.

Respectfully submitted,

_/s/_ Amos Tyndall
Amos G. Tyndall
Amos Tyndall PLLC
202B S. Greensboro St.
Carrboro, N.C. 27510
(919) 967-0504
amos@amostyndall.com

_/s/ Thomas K Maher_
Thomas K. Maher
Amos Tyndall PLLC
202B South Greensboro St.
Carrboro, N.C. 27510
(919) 967-0504
amos@amostyndall.com

_Counsel for Appellant_

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __23-4011__    **Caption:** US v. Jarred Javon Ford _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____5,812____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 365 _____ [*identify word processing program*] in
Times New Roman 14pt _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Amos Tyndall _____

Party Name Jarred Javon Ford _____

Dated: 8/28/23 _____