23-4011

# United States Court of Appeals
### for the
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

JARRED JAVON FORD,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

# JOINT APPENDIX
# VOLUME ONE (PAGES 1-186)

Amos G. Tyndall
Thomas Kieran Maher
AMOS TYNDALL PLLC
202B South Greensboro Street
Carrboro, North Carolina 27510
(919) 967-0504

*Counsel for Appellant*

David A. Bragdon
OFFICE OF THE U.S. ATTORNEY
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
(919) 856-4530

*Counsel for Appellee*

 COUNSEL PRESS     (800) 4-APPEAL • (JOB 809447)

# TABLE OF CONTENTS

**VOLUME ONE**

District Court Docket Sheet ................................................................. 1

Indictment
    filed February 3, 2021 ................................................................ 14

Order of Temporary Hearing
    filed March 28, 2022................................................................. 17

Transcript of Initial Hearing before
The Honorable Brian S. Meyers
    on March 28, 2022................................................................... 18

Transcript of detention Hearing before
The Honorable James E. Gates
    on March 31, 2022................................................................... 32

Transcript of detention Hearing before
The Honorable Robert T. Numbers
    on April 8, 2022.................................................................... 36

Defendant's Motion to Withdraw as Counsel of Record
    filed August 3, 2022 ............................................................... 49

Transcript of Motion to Withdraw and Arranging and Plea Hearing before
The Honorable Terrence W. Boyle
    on August 9, 2022................................................................... 51

Pro Se Defendant's Motion for Speedy Trial Violation
    filed August 19, 2022 .............................................................. 59

Government's Response to Defendant's Pretrial Motion
    filed August 23, 2022 .............................................................. 66

Transcript of Jury Trial before
The Honorable Terrence W. Boyle
    on August 25, 2022.................................................................. 70

i

Jury Verdict
    filed August 25, 2022 ................................................................ 158

Notice of Interlocutory Appeal
    filed September 7, 2022 .............................................................. 159

Cover Letter to Notice of Interlocutory Appeal
    filed September 7, 2022 .............................................................. 160

Fourth Circuit Letter
    filed September 8, 2022 .............................................................. 161

Appeal Transmittal Sheet
    filed September 8, 2022 .............................................................. 162

Transcript of Motions Hearing before
The Honorable Terrence W. Boyle
    on November 15, 2022 ............................................................... 163

Letter Requesting Status of Case
    filed December 19, 2022 ............................................................ 169

Transcript of Sentencing Hearing before
The Honorable Terrence W. Boyle
    on January 4, 2023 ..................................................................... 170

Judgment
    filed January 4, 2023 ................................................................. 181

**VOLUME TWO (SEALED)**

Pretrial Services Report
    filed March 30, 2022 ................................................................. 187

Transcript of Jury Trial/Jury Selection before
The Honorable Terrence W. Boyle
    on August 25, 2022 ................................................................... 192

Presentence Investigation Report
    filed November 4, 2022 ............................................................. 213

Proposed Emergency Motion to Continue Sentencing
    filed November 14, 2022 ............................................................... 227

Statement of Reasons
    filed January 11, 2023 ................................................................... 230

Query   Reports   Utilities   Help   Log Out

APPEAL,Jury Trial,Pro Se,USMJ Swank

# U.S. District Court
## EASTERN DISTRICT OF NORTH CAROLINA (Western Division)
## CRIMINAL DOCKET FOR CASE #: 5:21-cr-00105-BO-1

Case title: USA v. Ford

Date Filed: 03/02/2021

Date Terminated: 01/04/2023

---

Assigned to: District Judge Terrence W. Boyle

Appeals court case number: 23-4011 USCA

**Defendant (1)**

**Jarred Javon Ford**
*TERMINATED: 01/04/2023*

represented by **Jarred Javon Ford**
1653623
Central Prison
1300 Western Blvd.
Raleigh, NC 27606
PRO SE

**Rosemary Godwin**
Office of the Federal Public Defender
Eastern District of North Carolina
150 Fayetteville St., Suite 450
Raleigh, NC 27601
919-856-4236
Fax: 919-856-4477
Email: rosemary_godwin@fd.org
*TERMINATED: 08/09/2022*
*Designation: Public Defender or Community Defender Appointment*

**Pending Counts**

Possession of a Firearm by a Convicted Felon
(1)

**Disposition**

Count 1 - 120 months - 3 years supervised release with the Standard Conditions of Supervision as adopted in the Eastern District of North Carolina - $100.00 special assessment

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

**Disposition**

JA1

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                          **Disposition**

None

---

**Plaintiff**

**USA**                        represented by    **Charity L. Wilson**
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
919-856-4530
Fax: 919-856-4487
Email: Charity.Wilson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Aakash Singh**
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
919-856-4092
Email: aakash.singh@usdoj.gov
*TERMINATED: 12/19/2022*
*Designation: Assistant US Attorney*

**Chelsea W Draper**
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
919-856-4849
Email: cdraper@usa.doj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/02/2021 | 1 | INDICTMENT as to Jarred Javon Ford (1) count 1. The foreperson's signature has been redacted pursuant to the E-Government Act. The unredacted version of this document has been filed under seal. (Brewer, C) (Entered: 03/05/2021) |
| 03/02/2021 | 2 | Unredacted Document 1 Indictment (Brewer, C) (Entered: 03/05/2021) |
| 03/02/2021 | 3 | Warrant Requested by USA as to Jarred Javon Ford. (Brewer, C) (Entered: 03/05/2021) |
| 03/02/2021 | 4 | Arrest Warrant Issued by Peter A. Moore, Jr., Clerk of Court in case as to Jarred Javon Ford. Original to US Marshal's Office for service. (Brewer, C) (Entered: 03/05/2021) |
| 03/02/2021 | 5 | Penalty Sheet *(Selected Participants Only)* as to Jarred Javon Ford (Brewer, C) (Entered: |

| | | |
|---|---|---|
| | | 03/05/2021) |
| 03/24/2022 | | Set Hearing as to Jarred Javon Ford: Initial Appearance set for 3/28/2022 at 10:00 AM in Raleigh - 6th Floor Courtroom before Magistrate Judge Brian S. Meyers. (Horton, B.) (Entered: 03/24/2022) |
| 03/25/2022 | 6 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 03/25/2022) |
| 03/25/2022 | 7 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for an initial appearance on 3/28/22. Signed by Magistrate Judge James E. Gates on 3/25/2022. (Horton, B.) (Entered: 03/25/2022) |
| 03/28/2022 | | Arrest of Jarred Javon Ford. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | 8 | CJA 23 Financial Affidavit by Jarred Javon Ford. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | 9 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Jarred Javon Ford. Signed by Magistrate Judge Brian S. Meyers on 3/28/2022. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | | ORAL MOTION for Detention filed by USA as to Jarred Javon Ford. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | | ORAL ORDER REGARDING DUE PROCESS PROTECTIONS ACT as to Jarred Javon Ford. Entered by Magistrate Judge Brian S. Meyers on 3/28/2022. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | | TEXT ORDER as to Jarred Javon Ford: As required by Rule 5(f)(1) of the Federal Rules of Criminal Procedure, the court reminds counsel that under Brady v. Maryland and its progeny the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83, 87 (1963). Failure by the government to comply with its disclosure obligation could result in the exclusion of evidence, an adverse jury instruction, dismissal of charges, reversal of a conviction, vacation of a sentence, and imposition of sanctions against the individuals responsible for the violation, among other consequences. Entered by Magistrate Judge Brian S. Meyers on 3/28/2022. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | 10 | Minute Entry for proceedings held before Magistrate Judge Brian S. Meyers in Raleigh.Initial Appearance as to Jarred Javon Ford held on 3/28/2022. Assistant U.S. Attorney present for government. Defendant requests counsel. Federal Public Defender appointed. Defendant advised of rights, charges, and maximum punishments. Government moves for detention. Detention Hearing set for 3/31/2022 at 10:00 AM in Raleigh - 6th Floor Courtroom before Magistrate Judge James E. Gates. The court confirmed to counsel for the government and for defendants both orally and in writing the disclosure obligation of the prosecution under Brady and its progeny and possible consequences of violation of the obligation under applicable law. Defendant remanded to the custody of the U.S. Marshal. (Court Reporter - FTR) (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | 11 | ORDER OF TEMPORARY DETENTION as to Jarred Javon Ford. Detention Hearing set for 3/31/2022 at 10:00 AM in Raleigh - 6th Floor Courtroom before Magistrate Judge Brian S. Meyers. Signed by Magistrate Judge Brian S. Meyers on 3/28/2022. (Horton, B.) (Entered: 03/28/2022) |
| 03/28/2022 | 12 | Notice of Attorney Appearance: Rosemary Godwin appearing for Jarred Javon Ford . (Godwin, Rosemary) (Entered: 03/28/2022) |

| 03/28/2022 | 13 | Request for discovery filed by Jarred Javon Ford . (Godwin, Rosemary) (Entered: 03/28/2022) |
|---|---|---|
| 03/28/2022 | 15 | Arrest Warrant Returned Executed on 3/28/2022 as to Jarred Javon Ford. (Downing, L.) (Entered: 03/29/2022) |
| 03/29/2022 | 14 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 03/29/2022) |
| 03/29/2022 | 16 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for detention hearing on 3/31/22. Signed by Magistrate Judge James E. Gates on 3/29/2022. (Horton, B.) (Entered: 03/29/2022) |
| 03/30/2022 | | Reset Hearing as to Jarred Javon Ford: Detention Hearing set for 3/31/2022 at 10:00 AM in Raleigh - 6th Floor Courtroom before Magistrate Judge James E. Gates. CORRECTION MADE AS TO PRESIDING JUDGE. (Horton, B.) (Entered: 03/30/2022) |
| 03/30/2022 | 17 | Pretrial Services Report filed by Mendoza, Ivonne as to Jarred Javon Ford. (Peay, C.) (Entered: 03/30/2022) |
| 03/30/2022 | 18 | SCHEDULING ORDER as to Jarred Javon Ford. Signed by Magistrate Judge Kimberly A. Swank on 3/30/2022. The parties are reminded to read the attached order in its entirety. (Lopez, R.) (Entered: 03/30/2022) |
| 03/30/2022 | 19 | Writ of Habeas Corpus ad Prosequendum returned executed as to Jarred Javon Ford on 3/28/2022. (Downing, L.) (Entered: 03/30/2022) |
| 03/31/2022 | 20 | Minute Entry for proceedings held before Magistrate Judge James E. Gates in Raleigh.Docket Call for detention hearing as to Jarred Javon Ford held on 3/31/2022. Assistant U.S. Attorney present for government. Defendant present with counsel. Defendant moves to continue his detention hearing. The court allows defendants motion to continue. Detention Hearing continued to 4/8/2022 at 10:00 AM in Raleigh - 5th Floor Courtroom before Magistrate Judge Robert T. Numbers II.The Court finds that any delay resulting from the continuance of this matter shall be excluded from the Speedy Trial Act computation pursuant to 18 U.S.C. § 3161(h)(7)(A) for the reason that the ends of justice served by granting this continuance outweigh the best interest of the public and the defendant in a speedy trial. Defendant remanded to the custody of the U.S. Marshal. (Court Reporter - FTR) (Horton, B.) (Entered: 03/31/2022) |
| 03/31/2022 | | ORAL MOTION to Continue filed by Jarred Javon Ford. (Horton, B.) (Entered: 03/31/2022) |
| 03/31/2022 | | ORAL ORDER granting Oral Motion to Continue as to Jarred Javon Ford (1). Entered by Magistrate Judge James E. Gates on 3/31/2022. (Horton, B.) (Entered: 03/31/2022) |
| 04/07/2022 | 21 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 04/07/2022) |
| 04/07/2022 | 22 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for detention hearing on 4/8/22. Signed by Magistrate Judge James E. Gates on 4/7/2022. (Horton, B.) (Entered: 04/07/2022) |
| 04/08/2022 | 23 | Minute Entry for proceedings held before Magistrate Judge Robert T. Numbers, II in Raleigh - Detention Hearing as to Jarred Javon Ford held on 4/8/2022. Assistant US Attorney present for the Government. Defendant present with counsel. Parties present evidence by proffer. Parties make arguments. The Court grants the Government's motion for detention and finds that the Government has shown by clear and convincing evidence that there are no conditions to impose to reasonably assure the safety of the community and by a preponderance of evidence that there are no conditions to reasonably assure his |

JA4

| | | |
|---|---|---|
| | | appearance at future proceedings. Defendant is ordered detained and remanded to custody of the US Marshal. (Court Reporter - FTR) (Brewer, C) (Entered: 04/08/2022) |
| 04/08/2022 | | ORAL ORDER granting ORAL Motion for Detention Pending Trial as to Jarred Javon Ford (1). Entered by Magistrate Judge Robert T. Numbers, II on 4/8/2022. (Brewer, C) (Entered: 04/08/2022) |
| 04/08/2022 | 24 | ORDER OF DETENTION PENDING TRIAL as to Jarred Javon Ford. Follows oral order of 4/8/2022.. Signed by Magistrate Judge Robert T. Numbers, II on 4/8/2022. (Brewer, C) (Entered: 04/08/2022) |
| 04/08/2022 | 26 | Ex Parte Motion to Seal PROPOSED SEALED EX PARTE event by Jarred Javon Ford (Attachments: # 1 Text of Proposed Order to seal DE 25) (Godwin, Rosemary) (Entered: 04/08/2022) |
| 04/13/2022 | 29 | Writ of Habeas Corpus ad Prosequendum Returned Executed as to Jarred Javon Ford on 4/8/2022. (Downing, L.) (Entered: 04/14/2022) |
| 04/25/2022 | 30 | Consent MOTION for Extension of Time to file Pretrial Motions until 60 days filed by Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order to Extend Pretrial Motions Deadline) (Godwin, Rosemary) (Entered: 04/25/2022) |
| 04/25/2022 | | Motion submitted to District Judge Terrence W. Boyle as to Jarred Javon Ford regarding 30 Consent MOTION for Extension of Time to file Pretrial Motions until 60 days. (Downing, L.) (Entered: 04/25/2022) |
| 04/26/2022 | 31 | ORDER for extension of time to file pretrial motions as to Jarred Javon Ford (1). Any delay that results from this continuance is excluded from the Speedy Trial Act computation pursuant to 18 U.S.C. § 3161(h)(7)(A) for the reason that the ends of justice served by this continuance outweigh the best interest of the public and the defendant in a speedy trial. Signed by District Judge Terrence W. Boyle on 4/25/2022. (Downing, L.) (Entered: 04/26/2022) |
| 06/03/2022 | 32 | Consent MOTION to Facilitate Defendant's Access to Discovery filed by Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order Facilitating Defendant's Access to Discovery) (Godwin, Rosemary) (Entered: 06/03/2022) |
| 06/06/2022 | | Motion submitted to District Judge Terrence W. Boyle as to Jarred Javon Ford regarding 32 Consent MOTION to Facilitate Defendant's Access to Discovery. (Downing, L.) (Entered: 06/06/2022) |
| 06/06/2022 | 33 | ORDER granting 32 Motion as to Jarred Javon Ford (1). Signed by District Judge Terrence W. Boyle on 6/6/2022. The parties are reminded to read the attached order in its entirety. (Downing, L.) (Entered: 06/06/2022) |
| 06/22/2022 | 34 | MOTION for Extension of Time To File Pretrial Motions until August 30, 2022 filed by Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order) (Godwin, Rosemary) (Entered: 06/22/2022) |
| 06/22/2022 | | Motion submitted to District Judge Terrence W. Boyle as to Jarred Javon Ford regarding 34 SECOND MOTION for Extension of Time To File Pretrial Motions until August 30, 2022. (Downing, L.) (Entered: 06/22/2022) |
| 06/29/2022 | 35 | ORDER granting 34 Motion for Extension of Time as to Jarred Javon Ford (1). Signed by District Judge Terrence W. Boyle on 6/26/2022. (Downing, L.) (Entered: 06/29/2022) |
| 08/03/2022 | 36 | MOTION to Withdraw as Attorney by Rosemary Godwin. filed by Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order to Withdraw) (Godwin, Rosemary) (Entered: 08/03/2022) |

JA5

| 08/03/2022 | | Motion submitted to District Judge Terrence W. Boyle as to Jarred Javon Ford regarding 36 MOTION to Withdraw as Attorney by Rosemary Godwin. (Downing, L.) (Entered: 08/03/2022) |
|---|---|---|
| 08/04/2022 | 37 | NOTICE OF HEARING ON MOTION in case as to Jarred Javon Ford 36 MOTION to Withdraw as Attorney by Rosemary Godwin: Motion Hearing set for 8/9/2022 at 2:00 PM in Raleigh - 7th Floor - Courtroom 2 before District Judge Terrence W. Boyle. (Downing, L.) (Entered: 08/04/2022) |
| 08/04/2022 | 38 | Certificate of Service filed by Jarred Javon Ford regarding 36 MOTION to Withdraw as Attorney by Rosemary Godwin.. (Godwin, Rosemary) (Entered: 08/04/2022) |
| 08/08/2022 | 39 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 08/08/2022) |
| 08/08/2022 | 40 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for Motion Hearing on 8/9/2022 at the US District Court in Raleigh, NC as to Jarred Javon Ford (1). Signed by Magistrate Judge Robert T. Numbers, II on 8/8/2022. (Brewer, C) (Entered: 08/08/2022) |
| 08/09/2022 | 41 | ORDER granting 36 Motion to Withdraw as Attorney - defendant intends to represent himself pro se. Rosemary Godwin withdrawn from case as to Jarred Javon Ford (1). Signed by District Judge Terrence W. Boyle on 8/9/2022. Copies emailed to the Office of the Federal Public Defender Office. (Downing, L.) (Entered: 08/10/2022) |
| 08/09/2022 | 42 | Minute Entry for proceedings held in Raleigh, NC before District Judge Terrence W. Boyle: Defendant present with counsel - Assistant US Attorney and US Probation Officer present for the government - Motion hearing as to Jarred Javon Ford held on 8/9/2022 regarding 36 MOTION to Withdraw as Attorney by Rosemary Godwin - defendant addresses the Court and is in agreement that he wishes to proceed pro se, his reasons were also stated on the record - counsel for the government takes no position - defense counsel motion to withdraw is allowed and the defendant is allowed to proceed Pro Se - defendant remanded to custody.(Court Reporter Michelle McGirr - Official Reporter) (Downing, L.) (Entered: 08/10/2022) |
| 08/09/2022 | 43 | Minute Entry for proceedings held in Raleigh, NC before District Judge Terrence W. Boyle: Defendant present pro se - Assistant US Attorney and US Probation Officer present for the government - Arraignment hearing as to Jarred Javon Ford (1) held on 8/10/2022 - Defendant advised of rights, charges and maximum penalties - Plea of Not Guilty entered - court accepts the plea - jury trial set for 8/29/2022 term in Elizabeth City - defendant remanded to custody. (Court Reporter Michelle McGirr - Official Reporter) (Downing, L.) (Entered: 08/10/2022) |
| 08/10/2022 | 44 | Writ of Habeas Corpus ad Prosequendum Returned Executed as to Jarred Javon Ford on 8/9/2022. (Downing, L.) (Entered: 08/10/2022) |
| 08/11/2022 | 45 | Notice of Hearing as to Jarred Javon Ford: Jury Selection and Trial set for 8/29/2022 at 10:00 AM in Elizabeth City - Courtroom before District Judge Terrence W. Boyle. (Downing, L.) (Entered: 08/11/2022) |
| 08/15/2022 | | Reset hearing as to Jarred Javon Ford: Jury Selection and Trial reset for 8/25/2022 at 10:00 AM in Raleigh - 7th Floor - Courtroom 2 before District Judge Terrence W. Boyle. (Downing, L.) (Entered: 08/15/2022) |
| 08/15/2022 | | A copy of the hearing notice issued on 8/15/2022 as to Jarred Javon Ford, mailed to defendant's last known address. (Downing, L.) (Entered: 08/15/2022) |

JA6

| 08/17/2022 | 46 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 08/17/2022) |
|---|---|---|
| 08/17/2022 | 47 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for trial on 8/25/22. Signed by Magistrate Judge James E. Gates on 8/17/2022. (Horton, B.) (Entered: 08/17/2022) |
| 08/19/2022 | 48 | Pro Se MOTION to Dismiss on Speedy Trial filed by Jarred Javon Ford. (Attachment: # 1 Envelope) (Downing, L.) (Entered: 08/19/2022) |
| 08/19/2022 | 49 | Proposed Jury Instructions by USA as to Jarred Javon Ford (Singh, Aakash) (Entered: 08/19/2022) |
| 08/19/2022 | 50 | Proposed Verdict Form by USA as to Jarred Javon Ford (Singh, Aakash) (Entered: 08/19/2022) |
| 08/19/2022 | 51 | Proposed Voir Dire by USA as to Jarred Javon Ford (Singh, Aakash) (Entered: 08/19/2022) |
| 08/20/2022 | | REMINDER TO COUNSEL for the Government as to Jarred Javon Ford regarding DE 49 . Pursuant to Judge Boyle's Practice Preferences located on the court's website, counsel shall provide a courtesy copy of all documents over 20 pages, by mailing or delivering to the clerk's office in Raleigh. (Downing, L.) (Entered: 08/20/2022) |
| 08/22/2022 | 52 | Notice filed by USA as to Jarred Javon Ford. *Notice of Expert Witness - ATF Nexus* (Singh, Aakash) (Entered: 08/22/2022) |
| 08/22/2022 | | Copies of DE 52 Government's notice as to Jarred Javon Ford submitted to US District Judge Terrence W. Boyle. (Downing, L.) (Entered: 08/22/2022) |
| 08/23/2022 | 53 | RESPONSE in Opposition by USA as to Jarred Javon Ford regarding 48 MOTION to Dismiss on Speedy Trial filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 08/23/2022) |
| 08/24/2022 | 54 | ORDER denying 48 Motion to Dismiss for Speedy Trial as to Jarred Javon Ford (1). Signed by District Judge Terrence W. Boyle on 8/24/2022. Copies provided to the Defendant by hand delivery and US Mail. (Downing, L.) (Entered: 08/24/2022) |
| 08/24/2022 | 55 | WITNESS LIST by USA as to Jarred Javon Ford (Singh, Aakash) (Entered: 08/24/2022) |
| 08/25/2022 | 56 | Minute Entry for proceedings held in Raleigh, NC before District Judge Terrence W. Boyle: Voir Dire, Jury Selection and Commencement held on 8/25/2022 as to Jarred Javon Ford - 13 jurors selected and impaneled - oath administered by the clerk - preliminary opening statements by the Court - opening statements by counsel for the government - no opening statements from the Defendant - Government calls witnesses and presents evidence - Government rest - Defendant presents evidence - Defendant rest - charge conference - Closing arguments from the parties - Charge to the jury by the Court - alternates excused - 12 jurors retire to deliberate - verdict reached - Verdict of GUILTY as to the Indictment - jurors released from service - the Court adjudged the defendant guilty - presentence report ordered - sentencing set for the week of November 14, 2022 - defendant remanded to custody. (Court Reporter Michelle McGirr - Official Reporter) (Downing, L.) (Entered: 08/25/2022) |
| 08/25/2022 | 57 | JURY VERDICT as to Jarred Javon Ford (1) - Guilty on Count 1. The foreperson's signature has been redacted pursuant to the E-Government Act. The unredacted version of this document has been filed under seal. Copies provided to the Defendant by US Mail. (Downing, L.) Modified on 8/26/2022 to correct the text. (Downing, L.). (Entered: 08/25/2022) |

| 08/25/2022 | 58 | Unredacted Document 57 Jury Verdict. (Downing, L.) (Entered: 08/25/2022) |
|---|---|---|
| 08/25/2022 | 60 | ORDER returning exhibits regarding Jarred Javon Ford trial. Signed by District Judge Terrence W. Boyle on 8/25/2022. Copies provided to the Defendant by US Mail. (Downing, L.) Modified on 8/26/2022 to correct the text. (Downing, L.). (Entered: 08/26/2022) |
| 09/07/2022 | 62 | Notice of Interlocutory Appeal filed by Jarred Javon Ford. (Attachment: # 1 cover letter, # 2 Envelope) (Downing, L.) (Entered: 09/08/2022) |
| 09/08/2022 | 63 | Transmission of Notice of Appeal and Docket Sheet as to Jarred Javon Ford to US Court of Appeals regarding 62 Notice of Interlocutory Appeal.NOTE: The Docketing Statement and Transcript Order Form, if you are court appointed counsel, are available on our website at website. (Foell, S.) (Entered: 09/08/2022) |
| 09/08/2022 | 64 | Appeal Remark as to Jarred Javon Ford regarding 62 Notice of Interlocutory Appeal. (Foell, S.) (Entered: 09/08/2022) |
| 10/07/2022 | 65 | DRAFT PRESENTENCE INVESTIGATION REPORT (Sealed) as to Jarred Javon Ford. (Attachments: # 1 Supplement Cover Memo Objections due Friday, October 21, 2022) (Williams, C.) (Entered: 10/07/2022) |
| 10/31/2022 | 66 | OBJECTIONS TO PRESENTENCE REPORT as to Jarred Javon Ford regarding 65 Presentence Investigation Report -Draft (Singh, Aakash) (Entered: 10/31/2022) |
| 11/01/2022 | 67 | Appeal Remark as to Jarred Javon Ford regarding 62 Notice of Interlocutory Appeal. Notify court of appeals when case is disposed of. (Foell, S.) (Entered: 11/01/2022) |
| 11/04/2022 | 68 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Jarred Javon Ford. (Williams, C.) (Entered: 11/04/2022) |
| 11/04/2022 | 70 | Notice of Hearing as to Jarred Javon Ford: Sentencing set for 11/16/2022 at 2:00 PM in Raleigh - 7th Floor - Courtroom 2 before District Judge Terrence W. Boyle. Motions to Continue in Criminal Cases must be electronically filed by **NOON on November 8, 2022**. Counsel is to appear for court as scheduled for any motions filed after the noon deadline. (Downing, L.) (Entered: 11/04/2022) |
| 11/04/2022 | | Hearing notice mailed to Jarred Javon Ford at the last known address. (Downing, L.) (Entered: 11/04/2022) |
| 11/14/2022 | 71 | Emergency PROPOSED SEALED MOTION by USA as to Jarred Javon Ford (Attachments: # 1 Text of Proposed Order) (Singh, Aakash) (Entered: 11/14/2022) |
| 11/14/2022 | 72 | MOTION to Seal 71 Emergency PROPOSED SEALED MOTION by USA as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order) (Singh, Aakash) (Entered: 11/14/2022) |
| 11/15/2022 | 73 | NOTICE OF ATTORNEY APPEARANCE Chelsea W Draper appearing for USA. (Draper, Chelsea) (Entered: 11/15/2022) |
| 11/15/2022 | 74 | MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* filed by USA as to Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order) (Draper, Chelsea) (Entered: 11/15/2022) |
| 11/15/2022 | | Motion submitted to District Judge Terrence W. Boyle as to Jarred Javon Ford regarding 71 Emergency PROPOSED SEALED MOTION by USA as to Jarred Javon Ford, 72 MOTION to Seal. (Downing, L.) (Entered: 11/15/2022) |
| 11/15/2022 | 75 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford filed by USA as to Jarred Javon Ford. (Singh, Aakash) (Entered: 11/15/2022) |

JA8

| 11/15/2022 | 76 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for Sentencing on 11/16/2022 at the US District Court in Raleigh, NC as to Jarred Javon Ford (1). Signed by Magistrate Judge Robert T. Numbers, II on 11/15/2022. (Brewer, C) (Entered: 11/15/2022) |
| 11/15/2022 | 77 | Minute Entry for proceedings held in Raleigh, NC before District Judge Terrence W. Boyle: Defendant not present for this hearing - Assistant US Attorney and US Probation Officer present for the government - Motion hearing as to Jarred Javon Ford held on 11/15/2022 regarding 71 Emergency PROPOSED SEALED MOTION by USA - at this time, the sentencing hearing will be continued until 11/17/2022 at 10:00 a.m. (Court Reporter Glenda Biggerstaff - Word Services) (Downing, L.) (Entered: 11/15/2022) |
| 11/15/2022 | | Reset hearing as to Jarred Javon Ford: Sentencing **reset for 11/17/2022 at 10:00 AM** in Raleigh - 7th Floor - Courtroom 2 before District Judge Terrence W. Boyle. (Downing, L.) (Entered: 11/15/2022) |
| 11/15/2022 | | ORAL motion for reconsideration of 71 Emergency PROPOSED SEALED MOTION by USA as to Jarred Javon Ford. (Downing, L.) (Entered: 11/15/2022) |
| 11/15/2022 | | ORAL ORDER granting ORAL motion for reconsideration of 71 Emergency PROPOSED SEALED MOTION filed by USA as to Jarred Javon Ford (1). SO ORDERED by District Judge Terrence W. Boyle on 11/15/2022. (Downing, L.) (Entered: 11/15/2022) |
| 11/15/2022 | | Terminate sentencing set for 11/17/2022 as to Jarred Javon Ford - this case will be reset by notice during the Court's January 2023 term. Copies mailed to Jarred Javon Ford at the last known address. (Downing, L.) (Entered: 11/15/2022) |
| 11/16/2022 | 78 | Amended MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* filed by USA as to Jarred Javon Ford. (Attachments: # 1 Text of Proposed Order) (Draper, Chelsea) (Entered: 11/16/2022) |
| 11/17/2022 | | Notice to Counsel regarding: 78 Amended Motion for Preliminary Order of Forfeiture. Counsel for the Government is directed to provide a copy of this document to the Pro Se defendant and to file a corrected certificate of service. (Downing, L.) (Entered: 11/17/2022) |
| 11/21/2022 | 79 | Certificate of Service filed by USA as to Jarred Javon Ford regarding 78 Amended MOTION for Forfeiture of Property *Preliminary Order of Forfeiture*. (Draper, Chelsea) (Entered: 11/21/2022) |
| 12/01/2022 | 80 | Appeal Remark as to Jarred Javon Ford regarding 62 Notice of Interlocutory Appeal. Notify 4CCA once case has been sentenced. (Foell, S.) (Entered: 12/01/2022) |
| 12/19/2022 | 81 | Letter from Jarred Javon Ford requesting status of the case. (Attachment: # 1 Envelope) (Downing, L.) (Entered: 12/19/2022) |
| 12/19/2022 | 82 | Notice of Hearing as to Jarred Javon Ford: Sentencing set for 1/4/2023 at 2:00 PM in Raleigh - 7th Floor - Courtroom 2 before District Judge Terrence W. Boyle. Motions to Continue in Criminal Cases must be electronically filed by **NOON on December 28, 2022**. Counsel is to appear for court as scheduled for any motions filed after the noon deadline. (Downing, L.) (Entered: 12/19/2022) |
| 12/19/2022 | | Sentencing hearing notice mailed to Jarred Javon Ford last know address: Jarred Javon Ford #1653623 - Central Prison FL208 - 4285 Mail Service Center - Raleigh, NC 27699. (Downing, L.) (Entered: 12/19/2022) |
| 12/19/2022 | 83 | Notice of Substitution of Counsel filed by Charity L. Wilson on behalf of USA |

| | | substituting for Aakash Singh. (Wilson, Charity) (Entered: 12/19/2022) |
|---|---|---|
| 12/20/2022 | 84 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford *Sentencing 1.4.2023* filed by USA as to Jarred Javon Ford. (Wilson, Charity) (Entered: 12/20/2022) |
| 12/20/2022 | 85 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for sentencing on 1/4/22. Signed by Magistrate Judge James E. Gates on 12/20/2022. (Horton, B.) (Entered: 12/20/2022) |
| 12/23/2022 | 86 | Notice filed by USA as to Jarred Javon Ford. *Regarding Victims - Courts Standing Order dated March 20, 2017 (17-JP-1-BO)* (Wilson, Charity) (Entered: 12/23/2022) |
| 01/04/2023 | 87 | Application for Writ of Habeas Corpus ad Prosequendum as to Jarred Javon Ford *Sentencing 1.4.2023 [Defendant Moved Facilities]* filed by USA as to Jarred Javon Ford. (Wilson, Charity) (Entered: 01/04/2023) |
| 01/04/2023 | 88 | ORDER - Writ of Habeas Corpus ad Prosequendum Issued as to Jarred Javon Ford for Sentencing on 1/4/2023 at the US District Court in Raleigh, NC as to Jarred Javon Ford (1). Signed by Magistrate Judge Robert T. Numbers, II on 1/4/2023. (Brewer, C) (Entered: 01/04/2023) |
| 01/04/2023 | 89 | Minute Entry for proceedings held in Raleigh, NC before District Judge Terrence W. Boyle: Defendant present with counsel - Assistant US Attorney and US Probation Officer present for the government - Sentencing hearing held on 1/4/2023 for Jarred Javon Ford (1) - Count 1 - 120 months - 3 years supervised release with the Standard Conditions of Supervision as adopted in the Eastern District of North Carolina - $100.00 special assessment - Defendant remanded to custody. (Court Reporter Wanda Constantino, Word Services) (Downing, L.) (Entered: 01/05/2023) |
| 01/04/2023 | 90 | ORDER granting 78 Motion for Preliminary Order of Forfeiture as to Jarred Javon Ford (1). Signed by District Judge Terrence W. Boyle on 1/4/2023. (Downing, L.) (Entered: 01/05/2023) |
| 01/04/2023 | 92 | JUDGMENT as to Jarred Javon Ford (1) - Count 1 - 120 months - 3 years supervised release with the Standard Conditions of Supervision as adopted in the Eastern District of North Carolina - $100.00 special assessment. Signed by District Judge Terrence W. Boyle on 1/4/2023. (Downing, L.) (Entered: 01/08/2023) |
| 01/06/2023 | 91 | Writ of Habeas Corpus ad Prosequendum Returned Executed as to Jarred Javon Ford on 1/4/2023. (Downing, L.) (Entered: 01/06/2023) |
| 01/08/2023 | | Copies of DE 92 Judgment as to Jarred Javon Ford, mailed to: Jarred Javon Ford #1653623 - Central Prison - 1300 Western Blvd. - Raleigh, NC 27606. (Downing, L.) Modified on 2/3/2023 - **Copies reissued on 2/3/2023**. (Downing, L.). (Entered: 01/08/2023) |
| 01/09/2023 | | Notification to Appeals Court of Filing regarding 92 Judgment. (Foell, S.) (Entered: 01/09/2023) |
| 01/09/2023 | 93 | US Court of Appeals Case Number 23-4011 (Taylor Barton, Case Manager) for defendant Jarred Javon Ford as to 62 Notice of Interlocutory Appeal filed by Jarred Javon Ford. (Foell, S.) (Entered: 01/09/2023) |
| 01/23/2023 | 95 | Mail returned as out to court. Mail sent to Jarred Javon Ford. (Downing, L.) (Entered: 01/24/2023) |
| 02/03/2023 | 96 | Pro Se MOTION for Leave to Appeal In Forma Pauperis filed by Jarred Javon Ford. (Attachment: # 1 cover letter, # 2 Envelope) (Downing, L.) (Entered: 02/03/2023) |

| 02/03/2023 | | Copies of DE 93 mailed to: Jarred Javon Ford #1653623 - Central Prison - 1300 Western Blvd. - Raleigh, NC 27606. (Downing, L.) (Entered: 02/03/2023) |
|---|---|---|
| 03/10/2023 | 97 | ORDER of US Court of Appeals appointing Amos Granger Tyndall as to Jarred Javon Ford regarding 62 Notice of Interlocutory Appeal. (Foell, S.) (Entered: 03/10/2023) |
| 04/27/2023 | 98 | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 3/28/2022, Initial Appearance, before Judge Brian Meyers, regarding 62 Notice of Appeal. Court Transcriber/ eScribers, Telephone number 973-406-2250, www.escribers.net. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - No. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's website. Redaction Request due 5/21/2023. Redacted Transcript Deadline set for 5/31/2023. Release of Transcript Restriction set for 7/29/2023. (Foell, S.) (13 pages) (Entered: 04/27/2023) |
| 04/27/2023 | 99 | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 4/8/2022, Detention Hearing, before Judge Robert T. Numbers, II, regarding 62 Notice of Appeal Court Transcriber/ eScribers, Telephone number 973-406-2250, www.escribers.net. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - Yes. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's website. Redaction Request due 5/21/2023. Redacted Transcript Deadline set for 5/31/2023. Release of Transcript Restriction set for 7/29/2023. (Foell, S.) (12 pages) (Entered: 04/27/2023) |
| 04/27/2023 | | Notice of Filing of Official Transcript 98 , 99 Transcript - Appeal. The parties have seven calendar days from the filing of the transcript to file a Notice of Intent to Request Redaction. The parties must also serve a copy on the court reporter or transcriber. After filing the Notice of Intent to Request Redaction, a party must submit to the court reporter or transcriber, within 21 calendar days of the filing of the transcript, a written statement indicating where the personal data identifiers to be redacted appear in the transcript. (Foell, S.) (Entered: 04/27/2023) |
| 05/08/2023 | 100 | ***SEALED*** OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 8/25/2022, Jury Selection, before Judge Terrence W. Boyle, regarding 62 Notice of Interlocutory Appeal Does this satisfy all appellate orders for this reporter? Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available at http://www.nced.uscourts.gov/cmecf/default.aspx (Foell, S.)(20 pages) (Entered: 05/08/2023) |
| 05/08/2023 | 101 | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 8/25/2022, Jury Trial, before Judge Terrence W. Boyle, regarding 62 Notice of Appeal Court Reporter/ Michelle McGirr, Telephone number mamcg350@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - Yes. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's website. Redaction Request due 6/1/2023. Redacted Transcript Deadline set for 6/11/2023. Release of Transcript Restriction set for 8/9/2023. (Foell, S.) (87 pages) (Entered: 05/08/2023) |
| 05/08/2023 | 102 | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 8/9/2022, Arraignment, before Judge Terrence W. Boyle, regarding 62 Notice of Appeal Court Reporter/ Michelle |

JA11

| | | |
|---|---|---|
| | | McGirr, Telephone number mamcg350@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - Yes. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's <u>website</u>. Redaction Request due 6/1/2023. Redacted Transcript Deadline set for 6/11/2023. Release of Transcript Restriction set for 8/9/2023. (Foell, S.)(7 pages) (Entered: 05/08/2023) |
| 05/08/2023 | | Notice of Filing of Official Transcript <u>102</u> Transcript - Appeal, <u>101</u> Transcript - Appeal. The parties have seven calendar days from the filing of the transcript to file a Notice of Intent to Request Redaction. The parties must also serve a copy on the court reporter or transcriber. After filing the Notice of Intent to Request Redaction, a party must submit to the court reporter or transcriber, within 21 calendar days of the filing of the transcript, a written statement indicating where the personal data identifiers to be redacted appear in the transcript. (Foell, S.) (Entered: 05/08/2023) |
| 05/25/2023 | <u>103</u> | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 3/31/2022, Detention Hearing Continuance of Hearing, before Judge James E. Gates, regarding <u>62</u> Notice of Appeal. Court Transcriber/ eScribers, Telephone number 973-406-2250, www.escribers.net. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - Yes. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's <u>website</u>. Redaction Request due 6/18/2023. Redacted Transcript Deadline set for 6/28/2023. Release of Transcript Restriction set for 8/26/2023. (Foell, S.)(3 pages) (Entered: 05/25/2023) |
| 05/25/2023 | | Notice of Filing of Official Transcript <u>103</u> Transcript - Appeal. The parties have seven calendar days from the filing of the transcript to file a Notice of Intent to Request Redaction. The parties must also serve a copy on the court reporter or transcriber. After filing the Notice of Intent to Request Redaction, a party must submit to the court reporter or transcriber, within 21 calendar days of the filing of the transcript, a written statement indicating where the personal data identifiers to be redacted appear in the transcript. (Foell, S.) (Entered: 05/25/2023) |
| 06/21/2023 | <u>104</u> | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 11/15/2022, Motion Hearing, before Judge Terrence W. Boyle, regarding <u>62</u> Notice of Interlocutory Appeal Court Reporter/ Glenda Biggerstaff, WordServices, Telephone number 919-548-4914, wanda@mywordservices.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - Yes. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's <u>website</u>. Redaction Request due 7/15/2023. Redacted Transcript Deadline set for 7/25/2023. Release of Transcript Restriction set for 9/22/2023. (Foell, S.) (Entered: 06/21/2023) |
| 06/21/2023 | <u>105</u> | OFFICIAL TRANSCRIPT as to Jarred Javon Ford for dates of 1/4/2023, Sentencing Hearing, before Judge Terrence W. Boyle, regarding <u>62</u> Notice of Appeal. Court Reporter/Transcriber Wanda Constantino, Telephone number 919-548-4914, wanda@mywordservices.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Does this satisfy all appellate orders for this reporter? - Yes. Please review Attorney obligations regarding the redaction of electronic transcripts of court proceedings available on the court's <u>website</u>. |

| | |
|---|---|
| | Redaction Request due 7/15/2023. Redacted Transcript Deadline set for 7/25/2023. Release of Transcript Restriction set for 9/22/2023. (Foell, S.) (Entered: 06/21/2023) |
| 06/21/2023 | Notice of Filing of Official Transcript 104 , 105 Transcript - Appeal. The parties have seven calendar days from the filing of the transcript to file a Notice of Intent to Request Redaction. The parties must also serve a copy on the court reporter or transcriber. After filing the Notice of Intent to Request Redaction, a party must submit to the court reporter or transcriber, within 21 calendar days of the filing of the transcript, a written statement indicating where the personal data identifiers to be redacted appear in the transcript. (Foell, S.) (Entered: 06/21/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/22/2023 09:26:06 | | |
| **PACER Login:** | agtyndall | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:21-cr-00105-BO |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |
| **Exempt flag:** | Not Exempt | **Exempt reason:** | Not Exempt |

JA13

FILED IN OPEN COURT
ON  3|2|21 BRH
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
NO. 5:21-CR-105-1 BO(2)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | |
| JARRED JAVON FORD | ) | |

The Grand Jury charges that:

On or about February 4, 2021, in the Eastern District of North Carolina, the defendant, JARRED JAVON FORD, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, knowingly possessed a firearm, and the firearm was in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

[Remainder of page intentionally left blank]

JA14

## FORFEITURE NOTICE

The defendant is hereby given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), as made applicable by Title 28, United States Code, Section 2461(c), any and all firearms or ammunition involved in or used in a knowing commission of the said offense.

The forfeitable property includes, but is not limited to, the following:

(1)    Taurus G2C .9mm pistol, bearing serial number TLX67384; and

(2)    All related Ammunition.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant –

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third person;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be subdivided without difficulty,

2

JA15

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL:

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

3-2-2021
DATE

G. NORMAN ACKER, III
Acting United States Attorney

BY: AAKASH SINGH
Assistant United States Attorney

3

JA16

AO 470  (Rev. 01/09)  Order Scheduling a Detention Hearing

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

UNITED STATES OF AMERICA )
)
V. ) Case No.  5:21-CR-105-BO
)
JARRED JAVON FORD _____ )
*Defendant* )

## ORDER SCHEDULING A DETENTION HEARING

A detention hearing in this case is scheduled as follows:

| Place: | Terry Sanford Federal Building | Courtroom No.: | 6th Floor Courtroom |
|---|---|---|---|
| | 310 New Bern Avenue | | |
| | Raleigh, North Carolina | Date and Time: | 3/31/22 at 10:00 a.m. |

**IT IS ORDERED:**  Pending the hearing, the defendant is to be detained in the custody of the United States marshal or any other authorized officer.  The custodian must bring the defendant to the hearing at the time, date, and place set forth above.

_____
*Judge's signature*

Date:  ___28 March 2022___

Brian S. Meyers, United States Magistrate Judge
*Printed name and title*

1

1          UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF NORTH CAROLINA

3                              )
   UNITED STATES OF AMERICA,    )
4                              )   DOCKET NO. 5:21-CR-00105-BO-1
                 Plaintiff,    )
5                              )
   v.                          )
6                              )
   JARRED JAVON FORD,          )
7                              )
                 Defendant.    )
8    _____

9           TRANSCRIPT OF INITIAL HEARING
           BEFORE MAGISTRATE JUDGE BRIAN S. MEYERS
10           MONDAY, MARCH 28, 2022; 10:06 AM
                 RALEIGH, NORTH CAROLINA
11

12   **FOR THE PLAINTIFF:**
           United States Attorney's Office
13         By:  Aakash Singh
           150 Fayetteville Street
14         Suite 2100
           Raleigh, NC 27601
15

16   **FOR THE DEFENDANT:**
           Federal Public Defender - Eastern District of North
17         Carolina
           By:  Sonya Allen, Esq.
18         150 Fayetteville Street
           Suite 450
19         Raleigh, NC 27601

20    Audio Operator:              CLERK'S OFFICE PERSONNEL

21                      eScribers, LLC
                    7227 N. 16th Street
22                      Suite 207
                    Phoenix, AZ 85020
23                    800-257-0885
                    www.escribers.net
24

25   Proceedings recorded by electronic sound recording; transcript
              produced by transcription service.



JA18

2

Colloquy

1                    P R O C E E D I N G S

2          THE COURT:  Counsel, are you ready to proceed?

3          MS. ALLEN:  We are.

4          MR. SINGH:  We are, Your Honor.  Thank you.

5          THE COURT:  We are here in the United States District

6   Court for the Eastern District of North Carolina sitting in

7   Raleigh for preliminary criminal proceedings.

8          We have two matters on the docket this morning for

9   initial appearance:  the case of United States v. Ford -- it's

10  case number 521-CR-105 -- and United States v. Howard, case

11  number 522-CR-54.

12         Mr. Howard, you are here today.  You had a previous

13  initial appearance because you were charged by means of

14  criminal complaint at that time.  You have since been indicted

15  by a grand jury.  I will cover your rights, but you will

16  receive the same advice of rights that you got at your first

17  hearing; so nothing has changed there.  But you will be

18  advised of the charges against you as well.

19         For each of you, your cases will not be resolved

20  today.  Instead, we are here to advise you of the nature of

21  the charge or charges against you, the maximum penalties you

22  face if you're convicted of those charges, and important

23  rights that you have under the Constitution and laws of the

24  United States.

25         First, you have the right to remain silent.  No one



Colloquy

1   can require you to answer any questions or make any statements

2   about the charges that you're facing.  If you've already made

3   a statement, you do not need to make additional statements.

4   If you start to make a statement, you may stop at any time.

5   This is a right that can be waived, and if you waive your

6   right to remain silent, anything you say may be used against

7   you.

8        You're entitled under the Constitution and laws of

9   the United States to be represented by an attorney at every

10  stage of the proceeding.  That includes during any questioning

11  by the authorities, at any lineup, and at all court

12  proceedings including this initial appearance.  You may

13  consult with your attorney before questioning takes place at

14  any proceeding.  And if you're unable to obtain counsel,

15  counsel will be appointed for you.

16       Mr. Ford, do you wish to have court-appointed

17  counsel?

18       DEFENDANT FORD:  Yes.

19       THE COURT:  Mr. Howard, you had previously been

20  appointed counsel and you have now retained Mr. Hill to

21  represent you and he is here with you today.

22       Mr. Ford, I reviewed the financial affidavits that

23  you completed and find that you are entitled to have counsel

24  appointed.  Based upon this finding, I appoint the Federal

25  Public Defender's Office to represent you.  Here, today, from



Colloquy

1    the Federal Public Defender's Office is Assistant Federal

2    Public Defender Sonja Allen.

3           If you have any questions during today's proceeding

4    or if at any point you don't understand what I'm saying,

5    please raise your hand or otherwise let me know and I'll pause

6    so you can speak with her about any concerns you may have.

7           Going forward, the Federal Public Defender may assign

8    a different attorney to work with you or, in certain

9    circumstances, may refer your case out to an attorney in

10   private practice who's agreed to work with defendants who are

11   appointed counsel.

12          Mr. Ford and Mr. Howard, you are each here today

13   because you have been indicted.  What this means is that the

14   Government presented its allegations to a grand jury and the

15   grand jury found probable cause to believe that a crime was

16   committed and that you were the one who committed it.

17          Mr. Howard, as I've already stated, you were

18   originally charged by means of a criminal complaint.  You had

19   an initial appearance on that on February the 23rd of 2022.

20   On March the 10th of 2022, you waived your right to a

21   preliminary hearing and right to a detention hearing in your

22   case.  On March the 16th, 2022, a federal grand jury returned

23   an indictment against you and that is why you are here in

24   court today for another initial appearance.

25          At this time, will the Government please advise Mr.



5

Colloquy

1   Howard of the nature of the charge or charges against him and

2   the maximum penalties he faces if convicted.

3           MR. SINGH:  Yes, Your Honor.

4           Mr. Howard, Count I of the indictment charge is

5   conspiracy to distribute and possess with the intent to

6   distribute 1,000 kilograms or more of marijuana.  For that

7   offense you face not less than ten years imprisonment but not

8   more than life; a fine not to exceed ten million dollars; or

9   both fine and imprisonment; not less than five years of

10  supervised release but not more than life supervised release;

11  not more than five years imprisonment upon revocation of

12  supervised released; 100-dollar special assessment and

13  restitution if applicable.

14          Count II of the indictment charge is possession with

15  the intent to distribute a quantity of marijuana in violation

16  of Title 21, United States Code Section 841(a)(1).  If

17  convicted on that count you face up to five years

18  imprisonment; a fine not to exceed 250,000 dollars; or both

19  fine and imprisonment; not less than two years but no more

20  than life of supervised release; not more than two years

21  imprisonment upon revocation of supervised release; 100-dollar

22  special assessment in restitution if applicable.

23          If you were to commit this violation after a prior

24  conviction for a felony drug offense has become final, then

25  the penalties would be not more than ten years' imprisonment;



Colloquy

1    up to 500,000 dollars; or both fine and imprisonment; not less

2    than four years but no more than life supervised release; not

3    more than two years of imprisonment upon revocation of

4    supervised release; 100-dollar special assessment in

5    restitution if applicable.

6         Count III of the indictment charge is possession of a

7    firearm by a convicted felon.  That's a violation of Title 18

8    of United States Code Section 922(g)(1).  If convicted on that

9    count you face a term of not less than ten years imprisonment;

10   a fine not to exceed 250,000 dollars; or both fine and

11   imprisonment; not more than three years supervised release;

12   not more than two years imprisonment upon revocation of

13   supervised release; a 100-dollar special assessment in

14   restitution if applicable.

15        If you're found to be a armed career criminal on that

16   count, you face not less than fifteen years imprisonment but

17   not more than life; the fine would stay the same, it would be

18   not more than five years supervised release; not more than

19   five years imprisonment upon revocation of supervised release;

20   a 100-dollar special assessment in restitution if applicable.

21        Count IV of the indictment charge is possession of a

22   firearm in furtherance of a drug trafficking crime.  That's in

23   violation of Title 18 of United States Code Section 924(c).

24   If you get convicted on that count you face not less than five

25   years imprisonment and that runs consecutive to any other



Colloquy

1   sentence imposed with no more than life imprisonment.

2       In the case of a violation that occurs after a prior

3   violation under that subsection has become final, the penalty

4   would be not less than twenty-five years but not more than

5   life, to still be served consecutively on any other sentence;

6   a fine not to exceed 250,000 dollars; or both fine and

7   imprisonment; not more than five years supervised release; not

8   more than five imprisonment upon revocation of supervised

9   release; a 100-dollar special assessment in restitution if

10  applicable.

11      Your Honor, the Government is seeking detention in

12  this matter.

13      THE COURT:  Mr. Howard, do you understand the nature

14  of the charges against you?

15      DEFENDANT HOWARD:  Yes, sir.

16      THE COURT:  Do you understand the maximum penalties

17  you face if you are convicted of those charges?

18      DEFENDANT HOWARD:  Yes, sir.

19      THE COURT:  And as I already covered, but I want to

20  cover specifically here with regard to your detention, you

21  waived your right to a detention hearing in this matter on

22  March the 10th of 2022, and you have already been ordered

23  detained.

24      Mr. Hill, do you wish to be heard with regard to the

25  detention issue?



Colloquy

1        MR. HILL:  No, Your Honor.

2        THE COURT:  Government, please advise Mr. Ford of the

3   nature of the charges against him and the maximum penalties he

4   faces if convicted.

5        MR. SINGH:  Mr. Ford, for Count -- the sole Count of

6   the indictment, possession of a firearm by a convicted felon

7   in violation of Title 18, United States Code Section 922(g).

8   If you're convicted on that count you face not more than ten

9   years imprisonment; not more than 250,000 dollars in a fine;

10  or both fine and imprisonment; not more than three years

11  supervised release; not more than two imprisonment upon

12  revocation of supervised release; a 100-dollar special

13  assessment in restitution if applicable.

14        If you're deemed to be armed career criminal on that

15  count you face not less than fifteen years imprisonment but

16  not more than life; you would face a fine of not more than

17  250,000 dollars; or both fine and imprisonment; not more than

18  five years supervised release; not more than five years

19  imprisonment upon revocation of supervised release; a 100-

20  dollar special assessment in restitution if applicable.

21        The Government is also seeking detention in this

22  matter, Your Honor.

23        THE COURT:  Thank you, Mr. Singh.

24        Mr. Ford, do you understand the nature of the charge

25  against you?



JA25

Colloquy

 1          DEFENDANT FORD:  Yes, I do.

 2          THE COURT:  Do you understand the maximum penalties

 3   you face if you're convicted of that charge?

 4          DEFENDANT FORD:  Yes, I do.

 5          THE COURT:  Mr. Ford, as you heard, the Government

 6   has made a motion that you be detained pending further

 7   proceedings in your case.  I'm setting your detention hearing

 8   to take place this Thursday, March 31st, 2022, at 10 a.m. here

 9   in this courtroom.

10          The principal question at your detention hearing will

11   be whether there's any condition or combination of conditions

12   authorized by law that would reasonably assure your appearance

13   as required or reasonably assure the safety of any other

14   person in the community, pending the outcome of your case.  At

15   your detention hearing you have the right to be represented by

16   an attorney and have one appointed if you can't afford one.  I

17   have appointed the Federal Public Defender's Office to

18   represent you throughout your case.

19          At your detention hearing you have the opportunity to

20   testify but you do not have to do so.  You may present

21   evidence on your own behalf and question any witnesses who

22   appear on behalf of the Government.  You may present

23   information by what is called a proffer, which is where you or

24   your attorney explain what evidence you would show or

25   otherwise.  You may waive your right to a detention hearing,



JA26

Colloquy

1    but if you do so the hearing will not be held and you will be

2    held in custody, pending further proceedings in your case.

3         The law requires that you be held in custody until

4    your detention hearing takes place, and therefore, at the end

5    of today's hearing, I'll remand you to the custody of the

6    United States marshal.

7         There's several other important rights that both of

8    you have under the Constitution and laws of the United States

9    of which you should be aware.

10        Mr. Ford and Mr. Howard, because you have each been

11   charged with a felony, you have the right to have your case

12   tried before a jury.  At a later date, you will be asked to

13   plead guilty or not guilty to the charges against you.

14        If you plead guilty, there will not be a trial.  You

15   will be admitting that you committed the crimes charged.

16        If you plead not guilty, there will be a trial.  And

17   at trial, you have the right to be represented by an attorney

18   and to have one appointed if you can't afford one.  You'll be

19   presumed innocent, meaning there's no burden on you to prove

20   anything.  Instead, the Government must prove you guilty

21   beyond a reasonable doubt using competent evidence.  The

22   Government must bring any witnesses it wishes to rely upon to

23   court and you and your attorney will be allowed to question

24   the Government's witnesses.

25        At trial you also have the right to present evidence



www.escribers.net | 800-257-0885

JA27

Colloquy

1   on your own behalf, and this includes the right to subpoena

2   witnesses.  Meaning, the court will issue an order requiring

3   that witness to appear.  You'll have the choice of whether you

4   wish to testify.  If you choose not to testify, the judge will

5   instruct the jury that they cannot hold this against you or

6   even consider it during their deliberations.

7          Now, the Court is required to advise both of you

8   that, if you are not a United States citizen, you may request

9   that an attorney for the Government or a federal law

10  enforcement official notify a consular officer from your

11  country of nationality that you'd been arrested.  This

12  notification may take place even without your request if it's

13  required by a treaty or international agreement.  In

14  accordance with the Due Process Protections Act, Court is

15  required under Rule 5(f)(1) of the Rules of Criminal Procedure

16  to remind counsel both verbally and in writing, so a text

17  order will follow in each of your cases, that under Brady v.

18  Maryland and its progeny the suppression by the prosecution of

19  evidence favorable to an accused upon request violates due

20  process, where the evidence is material either to guilt or to

21  punishment.  And this is irrespective of the good faith or the

22  bad faith of the prosecution.  Failure by the Government to

23  comply with its disclosure obligations could result in

24  consequences including, among others, the exclusion of

25  evidence, adverse jury instructions, dismissal of charges,



12

Colloquy

1  reversal of a conviction, vacation of a sentence, and

2  imposition of sanctions against the individuals responsible

3  for the violation.

4        Although the Due Process Protections Act specifically

5  addresses prosecutorial obligations, the Court additionally

6  reminds counsel for the defendants of reciprocal discovery

7  obligations under the law.

8        At this time, each of you has been advised of the

9  nature of the charge or charges against you, the maximum

10  penalties that you face if you're convicted of those charges,

11  and some of the important rights that you have under the

12  Constitution and laws of the United States.

13        Before we conclude, I want to confirm that each of

14  you has heard and believe you've understood everything I've

15  said today.

16        Mr. Ford, have you heard and do you believe you've

17  understood everything I've said today?

18        DEFENDANT FORD:  Yes, Your Honor.

19        THE COURT:  Mr. Howard, have you heard and do you

20  believe you've understood everything I've said today?

21        DEFENDANT HOWARD:  Yes, sir.

22        THE COURT:  Is there anything further on behalf of

23  Mr. Howard, Mr. Hill?

24        MR. HILL:  No, Your Honor.

25        THE COURT:  On behalf of Mr. Ford?



JA29

13

Colloquy

1          MS. ALLEN:  No, Your Honor.

2          THE COURT:  From the Government?

3          MR. SINGH:  Nothing, Your Honor.  Thank you.

4          THE COURT:  You're welcome.

5          This will conclude each of your initial appearances.

6          I remand you to the custody of the United States

7    marshal pending further proceedings in each of your cases.

8          Court will be in recess.

9          THE BAILIFF:  All rise.

10         This Court stands in recess.

11                    (Court is adjourned)

12                    *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

JA30

1                    CERTIFICATE OF TRANSCRIBER

2

3         I, Chrishanda Sassman-Reynolds, court-approved

4   transcriber, in and for the United States District Court for

5   the Eastern District of North Carolina, do hereby certify that

6   pursuant to Section 753, Title 28, United States Code, that

7   the foregoing is a true and correct transcript from the

8   official electronic sound recording of the proceedings held in

9   the above-entitled matter and that the transcript page format

10   is in conformance with the regulations of the Judicial

11   Conference of the United States.

12

13                Dated this 8th day of April, 2023.

14

15             /s/

16             _____

17             CHRISHANDA SASSMAN-REYNOLDS

18             COURT-APPROVED TRANSCRIBER

19

20

21

22

23

24

25



1              UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF NORTH CAROLINA

3                              )
   UNITED STATES OF AMERICA,    )
4                              )    DOCKET NO. 5:21-CR-00105-BO-1
                   Plaintiff,   )
5                              )
   vs.                          )
6                              )
   JARRED JAVON FORD,           )
7                              )
                   Defendant.   )
8    _____ )

9            TRANSCRIPT OF DETENTION HEARING
          BEFORE MAGISTRATE JUDGE JAMES E. GATES
10         THURSDAY, MARCH 31, 2022; 10:07 AM
                RALEIGH, NORTH CAROLINA
11

12   **FOR THE PLAINTIFF:**
          United States Attorney's Office
13        By:  Aakash Singh
          150 Fayetteville Street
14        Suite 2100
          Raleigh, NC 27601
15

16   **FOR THE DEFENDANT:**
          Federal Public Defender - Eastern District of North
17        Carolina
          By:  Michael McDonald
18        150 Fayetteville Street
          Suite 450
19        Raleigh, NC 27601

20    Audio Operator:            CLERK'S OFFICE PERSONNEL

21                      eScribers, LLC
                     7227 N. 16th Street
22                        Suite 207
                     Phoenix, AZ 85020
23                      800-257-0885
                     www.escribers.net
24

25    Proceedings recorded by electronic sound recording; transcript
                produced by transcription service.



www.escribers.net | 800-257-0885

2

Colloquy

1          P R O C E E D I N G S

2          THE CLERK:  Court is now in session.  The Honorable

3   Judge James E. Gates is presiding.  Be seated.  Come to order.

4          THE COURT:  Good morning, folks.

5          MR. SINGH:  Good morning, Your Honor.

6          MR. MCDONALD:  Good morning, Your Honor.

7          THE COURT:  We're set this morning for a detention

8   hearing in the case of United States vs. Jarred Javon Ford,

9   but my understanding is the defendant seeks a continuance.

10         Mr. McDonald?

11         MR. MCDONALD:  Correct, Your Honor.  He's currently

12   being housed in a central prison, and it's my understanding

13   per their policy we have to make a request a week in advance.

14   And it's also a limit to, like, three days, so we haven't had

15   the opportunity to go up and --

16         THE COURT:  Yeah.

17         MR. MCDONALD:  -- do our initial evaluation with

18   them.  Based on that, we'll be asking the Court to consider

19   sending this matter to next Friday.

20         THE COURT:  Okay.  Very well.  Mr. Singh, any

21   objection by the Government?

22         MR. SINGH:  None from the Government, Your Honor.

23   Thank you.

24         THE COURT:  Very well.  For good cause shown, that

25   motion is allowed, and Mr. Ford's detention hearing is



JA33

Colloquy

1  continued until Friday, I believe that would be April 8th, at

2  10 a.m.  Is the fifth floor courtroom, Madam Clerk?

3          THE CLERK:  Yes.  It is.  Yes, Your Honor.

4          THE COURT:  In the fifth floor courtroom.  Any delay

5  that results from this continuance shall be excluded from the

6  Speedy Trial Act computation pursuant to 18 USC Section

7  3161(h)(7)(A), on the grounds that the ends of justice served

8  by granting this continuance outweigh the best interest of the

9  public and the defendant in a speedy trial.

10          Mr. McDonald, is there anything further on behalf of

11  Mr. Ford for this morning?

12          MR. MCDONALD:  No, Your Honor.

13          THE COURT:  Thank you, sir.  Mr. Singh, anything

14  further from the Government?

15          MR. SINGH:  None, Your Honor.  Thank you.

16          THE COURT:  Very well.  And of course, by law Mr.

17  Ford must remain in custody pending the continued detention

18  hearing.  So at this time I remand Mr. Ford to the custody of

19  the United States Marshall and we'll be in recess until 1

20  o'clock.

21          THE CLERK:  All rise.  The Court will stand in

22  recess.

23                     (Court is adjourned)

24                      *  *  *  *  *

25



JA34

4

```
 1                     CERTIFICATE OF TRANSCRIBER

 2

 3            I, Kyle Blaus-Plissner, court-approved transcriber,

 4    in and for the United States District Court for the Eastern

 5    District of North Carolina, do hereby certify that pursuant to

 6    Section 753, Title 28, United States Code, that the foregoing

 7    is a true and correct transcript from the official electronic

 8    sound recording of the proceedings held in the above-entitled

 9    matter and that the transcript page format is in conformance

10    with the regulations of the Judicial Conference of the United

11    States.

12

13                     Dated this 25th day of May, 2023.

14

15                     /s/ _____

16                     _____

17                     KYLE BLAUS-PLISSNER

18                     COURT-APPROVED TRANSCRIBER

19

20

21

22

23

24

25
```



JA35

1     **UNITED STATES DISTRICT COURT**

2     **EASTERN DISTRICT OF NORTH CAROLINA**

3     )

    **UNITED STATES OF AMERICA,**    )

4     )    **DOCKET NO. 5:21-CR-00105-BO-1**

    **Plaintiff,**    )

5     )

    **v.**    )

6     )

    **JARRED JAVON FORD,**    )

7     )

    **Defendant.**    )

8     ———————————————————

9     **TRANSCRIPT OF DETENTION HEARING**

    **BEFORE MAGISTRATE JUDGE ROBERT T. NUMBERS, II**

10     **FRIDAY, APRIL 8, 2022; 10:56 AM**

    **RALEIGH, NORTH CAROLINA**

11

12     **FOR THE PLAINTIFF:**

    United States Attorney's Office

13     By: Kelly Sandling

    150 Fayetteville Street

14     Suite 2100

    Raleigh, NC 27601

15

16     **FOR THE DEFENDANT:**

    By: Jennifer Dominguez

17     150 Fayetteville Street

    Suite 450

18     Raleigh, NC 27601

19     Audio Operator:             CLERK'S OFFICE PERSONNEL

20

    eScribers, LLC

21     7227 N. 16th Street

    Suite 207

22     Phoenix, AZ 85020

    800-257-0885

23     www.escribers.net

24     Proceedings recorded by electronic sound recording; transcript

    produced by transcription service.

25



www.escribers.net | 800-257-0885

JA36

1                          I N D E X

2    RULINGS:                                    PAGE   LINE
     Court's Ruling                              10     10
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

www.escribers.net | 800-257-0885

JA37

Colloquy

1                       P R O C E E D I N G S

2              THE BAILIFF:  All rise.

3              Court's back in session.

4              Please be seated.

5              THE COURT:  All right.  The next matter on our docket

6      is United States of America v. Jarred Javon Ford, case 520-CR-

7      105.

8              We're here today for Mr. Ford's detention hearing.

9              Would counsel please identify themselves for the

10     record, beginning with Counsel for the United States?

11             MS. SANDLING:  Good morning, Your Honor.

12             Counsel for the Government, Kelly Sandling.

13             MS. DOMINGUEZ:  Jennifer Dominguez on behalf of Mr.

14     Ford.

15             THE COURT:  Good morning, Counsel.

16             This does not appear to be case in which the

17     rebuttable presumption in favor of detention would apply.

18     It's my practice in this case to ask the defense to proceed

19     first -- I'm sorry -- the Government to proceed first.

20             Would the Government like to present any evidence

21     today?

22             MS. SANDLING:  Your Honor, the Government, with the

23     consent of Ms. Dominguez, will be presenting evidence by

24     proffer.

25             THE COURT:  Sorry?



4

Colloquy

1          MS. SANDLING:  The defendant, not presenting any

2     third-party custodian, the facts in this case would be, Your

3     Honor, that on February the 4th of last year, the defendant

4     was traveling south on I95 from New York headed to Florida

5     when he was stopped by the Nash County Sheriff's Office

6     Interdiction Unit for traveling at a high rate of speed on 95.

7     The defendant was also following too closely to other vehicles

8     and was weaving between lanes as well.

9          Dep. Shelby Smith, with the Nash County Sheriff's

10    Office, approached Mr. Ford -- who was the driver of the

11    Mercedes for which she had stopped for speeding -- and

12    immediately smelled the odor of marijuana.  She noticed that

13    Mr. Ford was holding his arm at his waist, Your Honor, as if

14    he were holding something in his waistband.

15         She asked him, based on this, if he had any guns or

16    knives on him, and he told her no.  She then asked for his

17    license and vehicle documentation and began running his

18    license.  She asked Mr. Ford to step out of the vehicle

19    because she wanted to better able -- be able to see if he had

20    any weapons on him.

21         She walked back to her patrol car because she did not

22    have backup.  She called for backup and also wanted to put --

23    open her door and create some distance between she and Mr.

24    Ford in case he did have a weapon on him.

25         At approximately 10:06 a.m. on February the 4th of



Colloquy

1   2021, Dep. Toney arrived in his agency-issued Ford F-150 to

2   assist.  He parked behind Dep. Shelby Smith's patrol vehicle.

3           They began conversing with Mr. Ford, asked him where

4   he was coming from.  He stated he was coming from New York

5   after visiting with his grandmother.  She then advised him

6   that she could smell the odor of marijuana and was going to

7   search his car.  She then asked him to -- or told him that she

8   was going to pat him down to check for weapons.  As she told

9   him that, Mr. Ford stated, no, you're not going to touch me.

10          He then pushed away and pushed Dep. Smith -- or

11  pulled Dep. Smith and Dep. Toney away into a ditch beside of

12  Interstate 95.  At which point, he then pulled out a Taurus

13  nine-millimeter pistol from his body and again shooting Dep.

14  Toney at close range.

15          Your Honor, the evidence in the case would show that

16  Dep. Toney was shot in his right wrist area.  He was also shot

17  through and through in the fatty area of his hip and in his

18  upper right arm as well, Your Honor.

19          Based upon the defendant firing directly at Dep.

20  Toney, Dep. Shelby Smith began firing back at Mr. Ford,

21  shooting him approximately four times.

22          At that point, assistance from the Nash County

23  Sheriff's Office began arriving and Mr. Ford was taken into

24  custody by law enforcement.

25          Both he and Dep. Toney were transported to the



JA40

Colloquy

1   hospital where Dep. Toney was eventually released but has not

2   been able to regain full use of his right hand and is going on

3   disability with the sheriff's office.

4           Your Honor, a search warrant was obtained by the

5   sheriff's office of Mr. Ford's car.  Inside of his vehicle

6   were found an extended magazine loaded with thirty rounds of

7   federal nine-millimeter ammunition, another plastic bag

8   containing nine-millimeter ammunition, drug paraphernalia, a

9   plastic bag containing marijuana, a prescription bottle

10  containing white powder and two white pills, an empty mason

11  jar with possible marijuana residue, a gun light with a green

12  laser, and a black vest with the militia patch on it.

13          On February the 4th of 2021, ATF submitted an urgent

14  trace on the firearm for which Mr. Ford possessed and entered

15  it into a NIBIN entry, Your Honor.  Cartridge casing from the

16  firearm that Mr. Ford possessed were entered into NIBIN as

17  well, at which point, they got a positive NIBIN hit to a lead

18  from a shooting and an attempted homicide in St. Petersburg,

19  Florida, on January the 13th of 2021, just less than a month

20  prior to February 4th of 2021.

21          It was found that the gun did travel in interstate

22  commerce, Your Honor.  In speaking with Capt. Bryant who is

23  here from the Nash County Sheriff's Office today and certainly

24  is available to Your Honor if you have any further questions,

25  with the assistance of the State Bureau of Investigation, they



www.escribers.net | 800-257-0885

JA41

Colloquy

1   went up on Mr. Ford's telephone.  They were able to pinpoint

2   from cellular analysis and cell site examination of Mr. Ford's

3   telephone, that they were able to put him in the St.

4   Petersburg area on January the 13th of 2021 at the crime scene

5   where the attempted homicide did occur in St. Petersburg,

6   Florida.

7          From Florida, he then ran from that shooting, went up

8   to New York where he was hiding out for approximately a month,

9   was then coming back from New York to the Florida area, at

10  which point he was then stopped by Dep. Shelby Smith on

11  February the 4th of 2021.

12         I would tell Your Honor that, based upon that

13  proffer, the Government does believe that there is a serious,

14  serious flight risk for the defendant, given the attempted

15  shooting that was committed on January the 13th of 2021.  He

16  immediately fled from that shooting, went to New York, and was

17  away for over a month.  And the only reason he was stopped was

18  because he was speeding -- by law enforcement.

19         The defendant's criminal record would also establish

20  that the defendant has not performed well on post-release or

21  probation after being convicted of felony crimes.  The

22  defendant was convicted of a felony crime, which was fleeing

23  or eluding a law enforcement, which he received a sentence of

24  thirteen months, Your Honor, as well on that conviction.  On

25  that particular conviction, he was revoked on probation on



Colloquy

1   February the 5th of 2016.  And another felon -- or, excuse me,

2   misdemeanor conviction of misdemeanor battery of the defendant

3   also had his probation revoked.

4       The Government does not believe that the defendant

5   would perform well on any conditions of pre-trial release in

6   this case.  And in fact, even if the defendant is released on

7   this case, he is currently being held on state charges of

8   attempted first-degree murder by the Nash County District

9   Attorney's Office, which filed a charge for attempted first-

10   degree murder.

11       So the defendant is in custody on that charge, Your

12   Honor.

13       And for all of the reasons discussed, the Government

14   does believe that not only is the defendant a safety risk to

15   the community, but he is a serious flight risk given the

16   fleeing that he committed just prior to the shooting in this

17   case of a Nash County deputy.

18       Thank you, Your Honor.

19       THE COURT:  Thank you.

20       Ms. Dominguez?

21       MS. DOMINGUEZ:  Thank you, Your Honor.

22       Mr. Ford wants this Court to know that Mr. Ford does

23   not believe himself to be a danger to the community and wishes

24   to live at their residence -- well, it's actually their

25   father's residence -- in St. Petersburg, Florida, at 2549



www.escribers.net | 800-257-0885

JA43

Colloquy

1  Langdon Avenue South.

2      Mr. Ford has -- there's a lack of information in the

3  pre-trial services report because he wasn't interviewed, so

4  I'd just like to supplement some of that information for Your

5  Honor.

6      So Mr. Ford is a military veteran.  He was in Iraq

7  and was there in 2007 and 2008.  He has three children and

8  lives with his father, as I said, in St. Petersburg, Florida,

9  where he is -- the children don't live -- he shares custody

10  with the children's mother and so he has those children as a

11  stay-at-home dad when he is there.

12      Mr. Ford is also concerned because, as the Government

13  noted, there's a state case pending.  And I guess, in the

14  state case, none of the video evidence has been released in

15  that case, none of the bodycams or dashcams.  And Mr. Ford

16  wanted me to put on the record that that's been a problem with

17  the failure to provide that discovery in his mind.  I didn't

18  have much time to tell him that, of course, that information

19  will be disclosed pursuant to the discovery rules in federal

20  court and his attorney, Rosemary Godwin, will have access to

21  that.

22      He has a child that's fifteen, three, and one.  And

23  he graduated from high school and did have community college

24  and has a barber's license.  Has been generally with jobs

25  through different placement agencies.  And of course, he is



Ruling

1    severely in -- he is in safekeeping at Central Prison by

2    virtue of his injuries that are a result of the events that

3    the Government was speaking about.

4        So with that, we just -- Mr. Ford wanted this Court

5    to know that he understands.  I tried to explain that, even if

6    this Court were to release him today, he wouldn't go anywhere,

7    but he wants to live in St. Petersburg, Florida, and raise his

8    children.

9        Judge.

10        THE COURT:  Thank you.

11        The bail format requires me to consider four factors

12    in determining whether release or detention is appropriate:

13    the nature and circumstances of the offense, the weight of the

14    evidence against the defendant, the defendant's history and

15    characteristics, and the nature and seriousness of the risk to

16    the community imposed by the defendant's release.  Based upon

17    those factors and the evidence we've heard here today, I'm

18    going to grant the Government's motion for detention.

19        Mr. Ford is charged with being a felon in possession

20    of a firearm.  And the circumstances of that offense, as

21    we've -- based on what we've heard here today, are very

22    serious and could have resulted in the death of multiple

23    individuals.

24        Mr. Ford, apparently, based on what we've heard here

25    today, shot at law enforcement officers in the course of a



Ruling

1    traffic stop.  That's, obviously, amongst the most serious

2    conduct we can see here in terms of firearm possession case.

3    So that weighs heavily in favor of detention.  The evidence,

4    again as we've heard here today, appears very strong, which,

5    again, weighs in favor of detention.

6        Mr. Ford has a number of prior convictions; one of

7    which is for fleeing and eluding law enforcement, which

8    indicates a flight risk.  The facts of this case also indicate

9    a flight risk, given that he was not willing to -- well, was

10   willing to use violence to avoid law enforcement engaging with

11   him.  He has another failure to appear in a 2015 charge in

12   Florida.  He has multiple revocations of probation for various

13   violations which indicate that he will not perform well on

14   probation or on supervision.

15       And again, given the facts of this case, there

16   appears to be a severe danger to the community based on the

17   defendant's willingness to use violence to evade law

18   enforcement.  So I'm going to find the Government has shown,

19   by clear and convincing evidence, that there are no conditions

20   I can impose that would reasonably assure the safety of any

21   other person in the community pending the outcome of the case.

22   And they have shown, by a preponderance, that there are no

23   conditions I can impose that would reasonably assure his

24   appearance at future proceedings, and grant the motion for

25   detention.



JA46

12

Ruling

1          Anything further from the Government?

2          MS. SANDLING:  No, Your Honor.

3          Thank you.

4          THE COURT:  Anything further from the defense?

5          MS. DOMINGUEZ:  No, Your Honor.

6                    (Court is adjourned)

7                         *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JA47

```
 1                  CERTIFICATE OF TRANSCRIBER

 2

 3          I, Chrishanda Sassman-Reynolds, court-approved

 4    transcriber, in and for the United States District Court for

 5    the Eastern District of North Carolina, do hereby certify that

 6    pursuant to Section 753, Title 28, United States Code, that

 7    the foregoing is a true and correct transcript from the

 8    official electronic sound recording of the proceedings held in

 9    the above-entitled matter and that the transcript page format

10    is in conformance with the regulations of the Judicial

11    Conference of the United States.

12

13                  Dated this 8th day of April, 2023.

14

15

16    /s/ _____.

17    CHRISHANDA SASSMAN-REYNOLDS

18    COURT-APPROVED TRANSCRIBER

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN  DIVISION

NO.  5:21-CR-105-BO

UNITED STATES OF AMERICA

v.

JARRED JAVON FORD

MOTION TO WITHDRAW AS
COUNSEL OF RECORD

The Office of the Federal Public Defender hereby respectfully moves the Court for an order

allowing it to withdraw as counsel of record for Jarred Ford.  The ground for this motion is that

Mr. Ford communicated his intention to represent himself pro se.

WHEREFORE, the Office of the Federal Public Defender respectfully moves the Court for

an order allowing it to withdraw as counsel for Jarred Ford.

Respectfully requested this the 3rd day of August, 2022.


G. ALAN DuBUOIS
Federal Public Defender

*/s/ Rosemary Godwin*
ROSEMARY GODWIN
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Rosemary_Godwin@fd.org
N.C. State Bar No. 18217
LR 57.1 Counsel
Appointed

JA49

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

AAKASH SINGH
Assistant United States Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system which
will send notification of such filing to the above.

This the 3rd day of August, 2022.

***/s/ Rosemary Godwin***
ROSEMARY GODWIN
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Rosemary_Godwin@fd.org
N.C. State Bar No. 18217
LR 57.1 Counsel
Appointed

.

.

JA50

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

```
_____  )
                               )
UNITED STATES OF AMERICA,      )
                               )
              vs.              )      CASE NO. 5:21-CR-105-1BO
                               )
                               )
JARRED JAVON FORD,             )
                               )
              Defendant.       )
_____  )
```

**TUESDAY, AUGUST 9, 2022**
**MOTION TO WITHDRAW AND ARRAIGNMENT AND PLEA HEARING**
**HELD IN RALEIGH, NORTH CAROLINA**
**BEFORE THE HONORABLE TERRENCE W. BOYLE**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

On Behalf of the Government:

**AAKASH SINGH, Assistant U.S. Attorney**
**U.S. Attorney's Office**
**150 Fayetteville Street, Suite 2100**
**Raleigh, North Carolina  27601**

On Behalf of the Defendant:

**ROSEMARY GODWIN, Assistant Public Defender**
**Federal Public Defender's Office**
**150 Fayetteville Street, Suite 450**
**Raleigh, North Carolina  27601**

USPO:

**ALEDA THOMAS**

**MICHELLE A. McGIRR, RMR, CRR, CRC**
**Official Court Reporter**
**United States District Court**
**Raleigh, North Carolina**

JA51

2

```
 1                    (Tuesday, August 9, 2022)

 2                 P R O C E E D I N G S

 3                   (Open Court at 3:07 p.m.)

 4          THE COURT:  Jarred Ford.

 5          MR. SINGH:  Afternoon, your Honor.

 6          THE COURT:  Good afternoon.

 7          MS. GODWIN:  I'm back.

 8          THE COURT:  Good afternoon.

 9          MS. GODWIN:  Good afternoon.

10          THE COURT:  I don't see a pretrial services report in

11   this case.  Was one done?

12          MR. SINGH:  There was one, your Honor.  It should be

13   Docket Entry 17.

14      (The defendant, Jarred Javon Ford, escorted into the courtroom

15                      at 3:09 p.m.)

16          MS. GODWIN:  I have one if you want me to hand it up.

17          THE COURT:  Well, I'd rather get it from probation.

18          PROBATION OFFICER THOMAS:  I'm looking for it.

19   (Reviewing documents).

20          Yes, sir.  It was completed here in Raleigh in our

21   office.  Would you like me to forward it?

22        (The deputy clerk providing documents to the Court)

23          THE COURT:  Thank you.

24          THE CLERK:  Yes, sir.

25                   (The Court reviewing documents)
```

JA52

3

1          THE COURT:  What's going on in this case?  He wants to be

2     his own lawyer?

3          MS. GODWIN:  He does, your Honor.  And I would advise the

4     Court that he has pending charges in Nash County related to the

5     same --

6          THE COURT:  A shoot-out with the police?

7          MS. GODWIN:  -- and he's representing himself in those

8     matters as well.  And he's requested that I advise the Court that he

9     would -- wishes to represent himself in this matter.

10          THE COURT:  You have a right to counsel.  You also have a

11     right to be your own lawyer.  I'd admonish you that you need legal

12     skill to appear in a court.  But tell me why you want to be your own

13     lawyer.

14          THE DEFENDANT:  My attorney really doesn't believe me

15     when I speak to them about the evidence against me in the case or

16     the series of events that took place.  So I just feel like it would

17     be in my best interest to represent myself.

18          THE COURT:  Where are you from?

19          THE DEFENDANT:  I live in St. Petersburg, Florida.

20          THE COURT:  What nationality are you?

21          THE DEFENDANT:  I'm African American.

22          THE COURT:  Are you born in America?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Okay.  It's a felon in possession of a

25     firearm case?

4

1              MR. SINGH:  That's correct, your Honor.

2              THE COURT:  Did he have a shoot-out in Nash County?

3              MR. SINGH:  It was on the highway, your Honor.  There was

4    a traffic stop that was performed and the defendant was exited from

5    the vehicle.  Safety first was performed of the defendant's person

6    and at that time, he drew a firearm and began discharging his

7    firearm at the two deputies --

8              THE COURT:  Shooting.

9              MR. SINGH:  Yes, your Honor.  One of the deputies, your

10   Honor, went to the hospital with several rounds in their chest and

11   shoulders.

12             At that point, Deputy Shelby Smith, who's in the gallery

13   with us, she then immobilized the defendant by discharging her

14   service weapon into his chest.

15             THE COURT:  He was shot in the chest?

16             MR. SINGH:  He was shot after he first shot the deputies.

17   And one of the deputies is still recovering from the injuries and is

18   not able to perform their duties.

19             THE COURT:  How long ago did this happen?

20             MR. SINGH:  This happened in February of 2021, your

21   Honor.  He was charged in --

22             THE COURT:  So a year and a half ago?

23             MR. SINGH:  Correct, your Honor.  And he's been in

24   custody that entire time.

25             THE COURT:  And was he hospitalized?

JA54

5

1               MR. SINGH:  He was initially, your Honor.  He was
2      treated.
3               There was also an extended magazine that we found with
4      additional rounds in the vehicle as well.  I think there was 30
5      rounds that we found as well and some assorted 9mm ammunition, but
6      it's a -- the charge for us is just firearm by felon.  In state
7      court -- he's got the counts of attempted murder in state court.
8               THE COURT:  Well, should be pretty easy to try.
9               MR. SINGH:  I think so, your Honor.
10              THE COURT:  When do you want to try it?
11              MR. SINGH:  Your Honor, I would just ask if the Court
12     could give me some time to just check with our victims and our
13     witnesses to make sure they're available but I think --
14              THE COURT:  How about the week of August 27th, is it,
15     or -- in Elizabeth City.
16              MR. SINGH:  We could do that.
17              THE COURT:  Is that Monday?
18              THE CLERK:  The 29th.
19              THE COURT:  The 29th.  The week of August 29th.
20              MR. SINGH:  We can make that work, your Honor.  Thank
21     you.
22              THE COURT:  All right.  I'll allow you to withdraw as
23     counsel and he'll proceed *pro se* unless there's further order of the
24     Court.
25              And you're going to trial on the week of August 29th.

6

1              THE DEFENDANT:  Yes, sir.  Do I still have time to do
2    pretrial motions?
3              THE COURT:  I'll give you a week to file any pretrial
4    motions.  So today is the 9th.  By the 15th you can file them.
5              THE DEFENDANT:  Thank you.
6              THE COURT:  Okay.
7              MS. GODWIN:  And we're completely out?
8              THE COURT:  You're out.
9              MS. GODWIN:  Out.  Thank you, your Honor.
10             THE COURT:  Okay.
11             MR. SINGH:  Thank you, Judge.
12       (The deputy clerk conferring with the Court at the Bench off the
13                            Record)
14             THE COURT:  Hold on.  Hold on, everybody.  I let the
15   lawyer out.
16             I'll arraign him on the charge right now if you'll come
17   over here.
18             You're charged with possession of a firearm by a
19   convicted felon by the Grand Jury in this district under 18 U.S.
20   Code 922(g)(1) and 924.
21             How do you plead to that charge, guilty or not guilty?
22             THE DEFENDANT:  Not guilty.
23             THE COURT:  Okay.  We'll set the case for trial on the
24   29th.  Thank you.
25             THE DEFENDANT:  Thank you.

JA56

7

1           MR. SINGH:  Thank you, your Honor.

2           THE COURT:  We'll be in recess until tomorrow.

3

4

5                (Hearing concluding at 3:17 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8

```
 1                    UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF NORTH CAROLINA

 3

 4                 CERTIFICATE OF OFFICIAL REPORTER

 5

 6            I, Michelle A. McGirr, RMR, CRR, CRC, Federal

 7   Official Court Reporter, in and for the United States District Court

 8   for the Eastern District of North Carolina, do hereby certify that

 9   pursuant to Section 753, Title 28, United States Code, that the

10   foregoing is a true and accurate transcript of my stenographically

11   reported proceedings held in the above-entitled matter and that the

12   transcript page format is in conformance with the regulations of the

13   Judicial Conference of the United States.

14

15   Dated this 8th day of May, 2023

16

17                              /s/  Michelle A. McGirr
                                MICHELLE A. McGIRR
18                              RMR, CRR, CRC
                                U.S. Official Court Reporter
19

20

21

22

23

24

25
```

FILED

AUG 19 2022

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP.CLK

United States District Court

for the Eastern district of North Carolina

Western Division     No. 5:21-CR-105-1BO(2)

Jarred Javon Ford     )
                      ) Motion to Dismiss Indictment for Speedy trial rights violation
v                   ) Speedy Trial Act Violation; Due Process rights Violations
                      )

United States of America )

COMES NOW, undersigned defendant, Jarred Javon Ford, Pro Se
moves indictment in abovementioned case be dismissed on the following grounds

1. Sixth Amendment Speedy Trial rights violation.

2. Speedy Trial Act Violation.

3. Fifth Amendment Due Process rights violations.

STATEMENT OF FACTS

Defendant was placed under arrest on February 11th 2021 after
discharged from Vidant medical center. Defendant was taken into custody a
Prior on February 4th 2021. The delay in formal arrest of defendant was so th
Nash County would not be responsible for paying defendants medical fees wh
shows bad faith on the Nash County Sheriff's office.

JA59

Defendant was indicted by the Federal government on March 2nd, 2021 on a firearm possession charge. Defendant was later indicted by the state, who has a state of defendant on May 10th 2021 on several charges relating to the same incident. No ne of indictment was served on defendant in either case which violated due process right an impaired defendant's ability to defend against charges.

Since being in custody defendant has had many violations to his constitution rights. Defendants vehicle and cell phone were seized and searched upon issuance of search warrants that were invalid. The search warrants for each item both failed to comply with the fourth Amendments unambiguous particularity requirement. The officers who testi before the Judges who authorized each search warrant lied under oath and falsified information in the affidavits accompanying the search warrant applications. The applicat for the search warrant on defendants vehicle was completely blank when signed by Superio Court Judge Quentain Sumner and the affidavit accompanying it was missing inform to establish probable cause. These actions taken by law enforcement officers was done i bad faith. Defendant was never served with a copy of search warrants. Copies of the tw search warrants were left with items searched, both being in police custody. This impar defendants ability to challenge warrants.

Due to the delay in bringing defendant to trial, defendant has faced oppressiv pretrial incarceration, increased anxiety, depression, and post-traumatic stress disorder symptoms and impairment of defendants ability to defend against both state and Feder charges. Defendant has been confined at Central Prison since being arrested. Defendant spend roughly six weeks in the prison's hospital wing. Defendant was quarantined for for days in which he was denied use of the inmate telephones. Defendant would not recieve c

JA60

phone pin to be able to use the phone until after the quarantine period. Once defendant was processed and recieved a phone pin he was limited to only two fifteen minute calls per week. Defendant was unable to send a visitation form home until he recieved indigent stamps given after being indigent for 30 days. Only people approved on inmates visitation list can put funds on inmate trust account and the Nash County Sheriff's Office did not forw money they took from defendant (approximatly $270) to central Prison. Defendant was constan in pain and the medications provided to defendant were not working. When defendant notified Prison hospital staff to the extreme pain he was in, they did little to provide better medications or investigate the cause of the intense pain mainly in defendants right arm and hand. Defendant was discharged from hospital wing with many open wounds and in intense pain and discomfort. Defendant submitted many sick-call requests to get help pain and immobility from the unit doctor where he was housed which were largely ignored by the prison. After about a year defendant's body healed enough to where he was abl to focus enough to activily participate in his defense. Defendant's treatment at Cent Prison was so inadequate that he was forced to file a civil suit against prison si for failing to provide medical care and canceling transportation to multiple pre-operatic appointments.

       Defendant's ineffective assistance of counsel prejudiced defendants ability t defend against charges which violates defendants' due process rights and was made wor by the delay in bringing defendants case to trial. Defendants first public defender Th A. Gardner Jr. was on defendants case for the first seven months and never att to contact defendant nor return phone calls from defendants family. Defendant did speak with this public defender about the facts of the incident leading to defendan arrest yet Mr. Gardner signed documents with the District Attorneys to release evidence,

specifically the uniform and tazer that belonged to the officer who shot defendant. Defendant believes tazer was used in the encounter. The loss of this potentially exculpatory evidence impaired defendants ability to defend against charges before him. Defendant's family was able to raise money to retain Attorney Phylicia M. Powers of the Roberts Law Group. Phylicia would represent me from September 9th 2021 until I recieved her notice of intent to withdraw in a letter dated January 25th 2022. Phylicia decided to withdraw after I sent her a slightly sarcastic letter detailing my dissatisfaction with the twelve page discovery summery she sent me instead of my full discovery that I requested the one time I spoke to her prior to writing her. After recieving my letter she provided me with my full discovery but decided she no longer wanted to represent me. Phylicia was officially withdrawn from my case March 3rd 2022. I opted to go pro se at that time I would remain Pro Se until June 9th 2022 where I requested a public defender after noting a change to my maximum sentence from the previous hearing and coaxing by presiding Judge. I almost immedially regretted being talked into the public defender and after not hearing from the new public defender Attorney Mark Osterhout for seven weeks, I filed a motion to have him removed from my case. I spoke with Mr. Osterhout for the first time at a hearing on July 20th 2022 where he informed me that he had a conflict and that was the reason he didn't respond to me and my family's phone calls. Mr. Osterhout was removed from my case at that hearing and I was given another public defender told me he was representing an officer that played a small role in my case, on another case, which created another conflict. I requested to be pro se again but was given standby counsel for my trial which is scheduled for January 9th 2023. Failure of my first two attorneys on my state charges to demand discovery and to push for a speedy trial prejudiced my ability to defend against the charges against me. In the letter recieved from my second state Attorney Phylicia Powers she told me the state has not

JA62

disclosed the crime scene photos or videos from bodycams or vehicle cameras that captured the incident. The delay in bringing defendant to trial allowed law enforcement to fabricate evidence in the form of videos and photographs that were produced in a "reinactment" of the events that transpired leading to defendants arrest.

Defendants ability to defend against the charges has also been impaired by the state refusing to release exculpatory videos and photos in a timely manner and by attempting to destroy defendants property as he represented himself on the state case. The Nash County Sheriff's Office refused to give videos and photographs that were discoverable to the county's district attorney so the defense could prepare its defense. On January 28th 2022 almost a year after the incident defendant was informed by ex-Attorney Phylicia Powers that the district attorney Alicia Slaughter had not recieved the video footage or crime scene photographs as of January 25th 2022. After going Pro Se defendant requested voluntary disclosure of discovery from the district attorney. That request was partially fulfilled at a hearing on March 28th 2022. Defendant was given the same discovery given by his previous attorney with the addition of a blu disc containing files extracted from defendants phone but no photographs or vide of the incident or scene. On March 31st defendant mailed out a motion to compel discovery. At a June 9th hearing the district attorney requested the hearing be continue so she could respond to that motion plus three others in writing, that was granted. On 20th 2022 defendant was provided with the photos and videos but the prison allow defendant to view them and won't respond to requests to send them home. was able to view videos during a visit with Federal Public Defender Rosem Godwin on July 28th 2022 and she had previously sent the photos she had to through the mail. Delay on bringing defendant to trial have had Nash County Sheriff's

time to fabricate evidence by creating "reinactment" videos with the defendants' likeness that misrepresents the events that took place. The Nash County Sheriff's Office also forced defendant to throw away all his property including important court documents. Two deputies who wrote statements in defendants case transported defendant to his first appearance in federal court on March 28th 2022. Deputy Jonathan Collins Sykes, who was also an affiant in search warrant that is invalid along with a deputy I believe to be Joey Privette, would not allow defendant to bring any property with him stating that U.S. Marshals would not accept any property and the help of the prison officers, instructed me to put my belongings in a nearby trash can before we left. After being informed the U.S. Marshals would not hold me while I had state charges pending, the deputies called the prison and my belongings were taken out the trash. These actions by the Nash County Sheriff's Office has caused and depression in defendant due to blatant violations of defendants right to disclosure of discovery and due process resulting in unfair surprise, shock to the conscious prejudice to defendants ability to prepare defense.

## CONCLUSION

WHEREFORE, undersigned defendant respectfully requests this Court indictment with prejudice in abovementioned case.

Respectfully Submitted this the 15th day of August 2022.

JA64

Certificate of Service

The undersigned hereby certifies that the foregoing Motion to dismiss indictment was served on the following by United States Postal Service of a copy of the same to:

Aakash Singh
District Attorney's Office
150 Fayetteville St. Suite 2100
Raleigh, NC 27601

This the 15th day of August 2022.

Jarred Javen Ford

JA65

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CR-105-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | GOVERNMENT'S RESPONSE |
| v. | ) | TO DEFENDANT'S PRETRIAL |
| | ) | MOTION [D.E. 48] |
| JARRED JAVON FORD | ) | |

Now comes the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, and hereby responds in opposition to the Defendant's pretrial motion to dismiss the Indictment, filed on August 19, 2022. [Docket Entry 48].

## PROCEDURAL SUMMARY

On March 2, 2021, a federal grand jury charged the Defendant for possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). [D.E. 1]. On March 28, 2022, the Defendant has his initial appearance in federal court. [D.E. 10]. On August 9, 2022, the Defendant entered a plea of not guilty to the sole count of the Indictment. [D.E. 42, 43]. On August 19, 2022, the Defendant filed a pro se motion to dismiss, arguing that his right to a speedy trial have been violated. [D.E. 48].

## DISCUSSION

The Defendant's claim that his speedy trial rights were violated has no merit. Title 18, United States Code, Section 3161 governs the time allowed between Indictment, arrest and trial. For speedy trial purposes, it is insufficient that an

JA66

individual has been arrested on state charges that are ultimately tried in federal court. Rather, the 30-day time period does not begin to run until there is a *federal* arrest. *United States v. Iaquinta*, 674 F.2d 260, 264-69 (4th Cir. 1982). An arrest does not become a "federal arrest" because agents cooperate with state law enforcement, or because a federal detainer is filed. *See, e.g., United States v. Burgess*, 684 F.2d 445, 450-51 (4th Cir. 2012), *cert. denied*, 568 U.S. 968 (2012); *United States v. Taylor*, 240 F.3d 425, 427-28 (4th Cir. 2001). The Speedy Trial Act also provides for trial within 70 days of Indictment or initial appearance in the court in which the charge is pending ("whichever dates last occurs"), subject to specific delays which are excluded. *See* 18 U.S.C. Section 3161(c) & (h). *See, e.g. United States v. Tinklenberg*, 563 U.S. 647, 650-52 (2011). The fact the Defendant was in state custody on state charges before he was brought over for an initial appearance on federal charges does not enter into any speedy trial calculation. Moreover, the defendant's argument that he remained in state custody so law enforcement could tamper with body cam footage is false as the evidence presented at the trial will establish.

## <u>CONCLUSION</u>

WHEREFORE, the Government respectfully requests that this Court deny Defendant's motion to dismiss the Indictment.

Respectfully submitted this 23rd day of August, 2022.

MICHAEL F. EASLEY, JR.
United States Attorney

BY:   */s/ Aakash Singh*
AAKASH SINGH
Assistant United States Attorney

JA67

Criminal Division
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: 919-856-4092
Fax: 919-856-4487
Email: Aakash.Singh@usdoj.gov

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

JA68

## CERTIFICATE OF SERVICE

I certify that I have on this 23rd day of August 2022, served a copy of the

foregoing Government's Proposed Jury Instructions upon the Defendant by FedEx:

Jarred Javon Ford
Defendant
North Carolina Central Prison
1300 Western Boulevard,
Raleigh, NC 27606


BY:    */s/ Aakash Singh* _____
         AAKASH SINGH
         Assistant United States Attorney
         Criminal Division
         150 Fayetteville Street, Suite 2100
         Raleigh, North Carolina 27601
         Telephone: 919-856-4092
         Fax: 919-856-4487
         Email: Aakash.Singh@usdoj.gov

JA69

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

```
_____  )
                               )
UNITED STATES OF AMERICA,      )
                               )
              vs.              )     CASE NO. 5:21-CR-105-BO
                               )
                               )
JARRED JAVON FORD,             )
                               )
              Defendant.       )
_____  )
```

THURSDAY, AUGUST 25, 2022
JURY TRIAL/DAY 1 OF 1
HELD IN RALEIGH, NORTH CAROLINA
BEFORE THE HONORABLE TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

**AAKASH SINGH, Assistant U.S. Attorney**
**U.S. Attorney's Office**
**150 Fayetteville Street, Suite 2100**
**Raleigh, North Carolina  27601**

On Behalf of the Defendant:

**JARRED JAVON FORD,** *Pro Se*

MICHELLE A. McGIRR, RMR, CRR, CRC
Official Court Reporter
United States District Court
Raleigh, North Carolina

2

1                          I N D E X

2
Pretrial Colloquy at page 6
3

4    Preliminary Jury Instructions by the Court at page 7

5

6    **OPENING STATEMENTS:**

7
              By Mr. Singh at page 12
8             [No Opening Statements by Mr. Ford]

9

**WITNESS:**

10

11            Deputy Shelby Smith

12
     **EXAMINATION:**                                    **PAGE**
13

14            Direct Examination by Mr. Singh        14
              Cross-Examination by Mr. Ford          23
15            Redirect Examination by Mr. Singh      28

16
     **WITNESS:**
17

18            Deputy William Toney

19
     **EXAMINATION:**
20

21            Direct Examination by Mr. Singh        30
              [No Cross-Examination]
22

23

24

25
                        (Continued...)

3

I-N-D-E-X
(Continued...)

**WITNESS:**

Deputy David Marks

**EXAMINATION:**                                               **PAGE**

Direct Examination by Mr. Singh              39
Cross-Examination by Mr. Ford               47

**WITNESS:**

Senior Special ATF Agent John Griffin

**EXAMINATION:**

Direct Examination by Mr. Singh              49
[No Cross-Examination]

**WITNESS:**

Deputy Larry Connie

**EXAMINATION:**

Direct Examination by Mr. Singh              52
[No Cross-Examination]

(Continued...)

4

I-N-D-E-X
(Continuing...)

**WITNESS:**

            Deputy Robert Carlisle

**EXAMINATION:**                                                    **PAGE**

            Direct Examination by Mr. Singh              57
            Cross-Examination by Mr. Ford                59

The Government rests at page 60

**WITNESS:**

            Jarred Javon Ford

**EXAMINATION:**

            Direct Examination by Mr. Ford               60
            Cross-Examination by Mr. Singh               71

Defendant rests at page 73

Charge Conference at page 73

**CLOSING ARGUMENTS:**

            By Mr. Singh at page 75
            By Mr. Ford at page 79

                        (Continued...)

JA73

```
                          I-N-D-E-X
                        (Continuing...)


Jury Charge by the Court at page 80


Verdict at page 86


                          *   *   *


GOVERNMENT'S EXHIBITS:

No.                                          In Evid.

2 and 3                                         19
1                                               20
4 and 19                                        33
4A through 4C                                   33
5                                               42
5A through 5C                                   42
6A through 6F                                   44
7, 7A, 7B, 8A, 9A                               46
8, 10, 10A, 10B                                 47
17                                              50
16                                              54
18                                              56



                          *   *   *
```

6

```
 1                    (Thursday, August 25, 2022)
 2                    P R O C E E D I N G S
 3
 4      (The defendant, Jarred Javon Ford, escorted into the courtroom
 5                        at 9:53 a.m.)
 6                    (Open Court at 10:01 a.m.)
 7           MR. SINGH:  Good morning, your Honor.
 8           THE COURT:  Good morning.
 9           He's already been arraigned?
10           MR. SINGH:  He has been arraigned, your Honor, at the
11    last arraignment, we had one hearing previously in this matter, your
12    Honor.  At that hearing the defendant was advised of the challenges
13    of going *pro se*.  He withdrew and agreed to go *pro se* and he also
14    entered his not guilty plea, your Honor.
15           THE COURT:  He what?
16           MR. SINGH:  He also entered his not guilty plea.
17           THE COURT:  Yes.  We're going to pick -- Mr. Ford, we're
18    going to pick a jury in a few minutes and you will have a sheet that
19    will have the names and seats of the jurors and you're entitled to
20    release or remove up to ten persons from the jury.
21           So after we have the questioning by me of the jurors,
22    I'll give you an opportunity, if you want, to remove any of the
23    jurors, to write that on the piece of paper and then we'll collect
24    that.  And the Government will have the same right.  They have six
25    strikes.
```

JA75

7

1          And then when anyone who's going to be removed is removed

2     from the jury, we'll start the trial.  I'll swear in the jury and

3     we'll go forward and the Government will put on its evidence.  And

4     if there's a witness, you can ask the witness questions, but they

5     have to be about this case.  Do you understand that?

6               THE DEFENDANT:  Yes, sir.

7               THE COURT:  Okay.  All right.  Are you ready?

8               MR. SINGH:  We are, your Honor.

9               THE COURT:  Okay.  We'll bring the jury in and come back

10    on the bench.

11         (Jury venire ushered into the courtroom at 10:04 a.m.)

12         (Jury Selection reported but not transcribed at this time)

13    (Brief Recess commencing at 10:50 a.m. and concluding at 10:53 a.m.)

14                    (Open Court at 10:53 a.m.)

15              THE COURT:  All right.  Mr. Singh and Mr. Ford, we're

16    going to bring the jury back in.  The jury's going to be sworn in.

17         I'm going to give them preliminary instructions and then

18    each of you may make an opening statement.  But because of his

19    immobility, I'm going to ask you to please stay at your table.  And

20    you'll stay at your table and you can talk to the jury during that

21    and then we'll start with the first witness and the evidence.

22         So you can bring the jury back.

23    (The defendant, Jarred Javon Ford, remained in the courtroom during

24                         the recess)

25                    (Jury in at 10:56 a.m.)

8

```
 1              THE CLERK:  Ms. Bowman, could you remain seated.
 2              Would the members of the jury please stand and raise your
 3    right hand.
 4                   (Jury panel sworn by the deputy clerk)
 5                        (All respond affirmatively)
 6              THE CLERK:  Thank you.  You can be seated.
 7              Ms. Bowman, if you'll stand, please, and raise your hand.
 8                (Alternate juror sworn by the deputy clerk)
 9                (Alternate juror responds affirmatively)
10              THE COURT:  You affirm.  Thank you.  You may be seated.
11              All right.  Ladies and gentlemen of the jury, now that
12    you've been sworn, I'll give you some application instructions to
13    guide you in your participation during the trial.
14              It'll be your duty to find from the evidence what the
15    facts are.  You and you alone are the judge of the facts.  You will
16    then have to apply those facts to the law.
17              I will give you instructions on the law.  You must follow
18    that law whether you agree with it or not.
19              Nothing that I say or do during the course of the trial
20    is intended to indicate, nor should it be taken by you, as
21    indicating what your verdict should be.  Your verdict is up to you.
22              The evidence from which you will find the facts will
23    consist of the testimony of witnesses, documents and other things
24    received into the record as exhibits and any facts that the lawyers
25    agree to or stipulate to or that the Court instructs you to find.
```

JA77

9

1          Certain things are not evidence and should not be
2     considered by you.  I'll list these for you.  The statements,
3     arguments and questions by the lawyers or by the defendant acting as
4     his own lawyer are not evidence in the case.
5          Objections to questions are not evidence.  Lawyers have
6     an obligation to their client to make objections when they believe
7     evidence is being received that's not admissible.  You should not be
8     influenced by that.
9          Testimony that the Court excludes is not evidence and
10    should not be considered.
11          And finally, anything you've heard or seen outside of
12    this courtroom is not evidence and should not be considered by you.
13    You're to decide the case solely on the evidence presented here in
14    court.
15          Generally speaking, there are two kinds of evidence.
16    Direct evidence and circumstantial evidence.  Direct evidence is
17    proof -- direct proof of a fact, such as the testimony of an
18    eyewitness to something.  Circumstantial evidence is proof of facts
19    from which you may infer or conclude that other facts exist.
20          I'll give you more instructions on these as well as other
21    matters at the end of the case, but bear in mind that you may
22    consider both kinds of evidence.
23          It'll be up to you to decide which witnesses to believe,
24    which witnesses not to believe and how much of any witness's
25    testimony you accept or reject.  I'll give you some guidelines for

1   determining the credibility of witnesses at the end of the case.

2          This is a criminal case.  There are some basic rules

3   about a criminal case that you have to keep in mind.

4          First, the defendant is presumed by the law to be

5   innocent until proven guilty.  So the defendant is presumed to be

6   innocent.

7          The indictment brought by the Government against the

8   defendant is an accusation of a crime.  It is not proof of guilt.

9   The defendant starts out with a clean slate.  The burden of proof is

10  on the Government until the end of the case.  The defendant has no

11  burden to prove his innocence nor to present any evidence nor to

12  testify.

13         If a defendant does not testify, the law prohibits you,

14  in arriving at your verdict, from considering that a defendant may

15  not have testified.

16         Now, let me just say parenthetically, because this is a

17  little bit of an unusual situation, the defendant is his own lawyer.

18  When he asks questions, if he cross-examines a witness, that's not

19  his testimony.  So what he may say in the course of the trial, other

20  than from the witness stand having sworn on the Bible to tell the

21  truth, is not evidence.  The only evidence that you can consider in

22  a testimonial way is proof that comes from the witness stand under

23  oath.

24         For instance, when the lawyer asks a question, what the

25  lawyer's question is, is also not evidence.  It's the testimony of

1    the witness that is the evidence in the trial, just to make that
2    clear.
3            The Government has to prove a defendant's guilt beyond a
4    reasonable doubt.  This is a higher level of proof than what exists
5    in a civil case.
6            The defendant is charged with being a felon at the time
7    he later possessed a firearm.  So in order for the Government to
8    prove that, it has to show that he was a felon; that he knew he was
9    a felon; and that he possessed a firearm after being a felon; and
10   that the firearm moved or traveled at some point in its existence in
11   interstate or foreign commerce and that's why it's in federal court.
12           You're to decide the case solely on the evidence
13   presented here within the courtroom.  You're not to conduct any
14   independent research.  Until you retire to deliberate with your
15   fellow jurors, you're not to discuss the case.
16           If you want to take notes, you may.  If you do, they're
17   for your own use.  They're not to be shared or given to anyone else.
18           The trial will begin in a minute after I finish these
19   instructions and the parties make their opening statements.  The
20   Government will call any witnesses that it has and the Government
21   will examine these and the defendant may cross-examine these.
22           After all the evidence has been received from the
23   Government, the Government will rest.  And if the defendant has any
24   evidence, he can present that.
25           When you've heard all the evidence in the case, the

1    parties will make their closing argument and then I'll give you a

2    set of instructions or rules, or speak to you like I am now, to

3    explain to you what your duty is and what the trial is about.  And

4    you'll be retired to your jury room to deliberate on the case and

5    have a verdict.

6              So that's a summary of what you can expect in an actual

7    federal criminal jury trial.

8              So the jury can be with the Government for your opening

9    statement.

10             MR. SINGH:  Thank you, your Honor.

11                         **OPENING STATEMENT**

12                          (by Mr. Singh)

13             A shootout on I-95 in broad daylight.  That's what this

14   case is about.  This case is about a routine traffic stop for

15   speeding on one of America's most busiest highways, I-95.

16             The traffic stop happened last year, February 4th, 2021.

17   And the question is, how does this routine traffic stop turn into a

18   shootout in broad daylight with the Nash County deputies.  And the

19   answer is simple.  Because the defendant, Mr. Ford, was a felon who

20   possessed a firearm illegally.

21             So today you're going to hear from a number of witnesses.

22   We're going to put up a number of witnesses from the Nash County

23   Sheriff's Office.  You're going to hear from the two deputies who

24   are part of that stop, who are part of that shootout.  You're going

25   to hear from other responding officers that came to the scene.

13

1   You're going to hear from the evidence technician who processed the

2   crime scene and all the physical evidence from the crime scene.

3           We're going to introduce the gun, the magazine, the spent

4   shell casings, the rounds, some other physical evidence that was

5   recovered at the scene.  We're going to play videos about what

6   happened during that day.

7           Then at the end of our evidence, we're going to come to

8   you and ask for the only verdict that's compliant with the law and

9   the facts in this case and that's guilty.

10          Thank you.

11          THE COURT:  Mr. Ford, do you want to say anything as an

12  opening statement?

13          MR. FORD:  No.

14          THE COURT:  Okay.  Call your first witness.

15          MR. SINGH:  Thank you, your Honor.

16  The Government calls Shelby Smith to the stand.

17          THE CLERK:  Please place your left hand on the Bible and

18  raise your right hand.

19                         **DEPUTY SHELBY SMITH**

20          having been duly sworn, testified as follows:

21          THE WITNESS:  I do.

22          THE CLERK:  Please be seated in the witness box.

23          MR. SINGH:  May I proceed, your Honor?

24          THE COURT:  Yes.

25          MR. SINGH:  Thank you, your Honor.

14

<u>**DIRECT EXAMINATION**</u>

BY MR. SINGH:

Q.    Good morning, Ms. Smith.

A.    Good morning.

Q.    Do you mind telling the jury where you work and how long you've worked with that agency.

A.    I'm a deputy with the Nash County Sheriff's Office.  And I've been sworn with the Nash County Sheriff's Office since 2018.

Q.    And were you working with the Nash County Sheriff's Office in February of last year?

A.    I was.

Q.    Specifically on February 4, 2021, were you working with the Nash County Sheriff's Office?

A.    I was.

Q.    And what were you doing on that day as far as your official capacity?

A.    I was assigned to the Criminal Interdiction Division in Nash County where we work Interstate I-95.

Q.    Okay.  And were you operating your official marked vehicle that day?

A.    It's not marked, but it was a Nash County Sheriff's Office issued patrol vehicle, yes.

Q.    Okay.  Do you remember if your dashboard camera and your body camera were functioning that day?

A.    They were.

1    Q.    Okay.  And do you remember conducting a traffic stop that
2  day?
3    A.    I do.
4    Q.    Can you tell the jury what you remember from the
5  beginning of that traffic stop?
6    A.    So I initiated a vehicle stop on Interstate 95 at the 144
7  and a half mile marker, southbound Interstate 95, for a speed and
8  safe movement violation.
9          I initiated the stop and approached the vehicle where I
10  spoke with Jarred Ford.  He was the sole occupant of the vehicle.
11          Advised him who I was.  Told him the reason for the stop.
12  Told him I was going to write him a warning, but during that time I
13  was speaking with him at the car, I smelled the odor of marijuana
14  coming from inside of the car.
15          I had asked Mr. Ford out of the vehicle while I wrote him
16  out his warning and I called for another unit to back me up or to
17  assist me, which would have been Deputy William Toney.
18    Q.    Okay.  And did Mr. Toney arrive on scene?
19    A.    He did.  While I was writing out the warning, I was
20  speaking with Mr. Ford at the front of my patrol car while I was
21  waiting on Deputy Toney's arrival and I was writing out the warning.
22          While I was speaking with Mr. Ford, I noticed that Mr.
23  Ford had his arm tight down to the left side of his body.  And he
24  denied being -- allowing me to frisk him for weapons, at which time
25  I told Deputy Toney, who just arrived on scene, that I smelled the

16

odor of marijuana coming from the inside of Mr. Ford's vehicle and
Mr. Ford would not pat -- wouldn't let me pat him down, but I had
not confronted him about the issues because I wanted to wait for
backup to get there.

        At which time Deputy Toney and I proceeded to engage in
conversation with Mr. Ford about the narcotics possibly in the
vehicle where Mr. Ford told me that he did possess marijuana inside
of his car, but it wasn't on him.

        At which time I attempted to detain Mr. Ford.  I was
going to have him put his hands behind his back and detain him.  And
Mr. Ford, again, began to physically resist by pulling away from
Deputy Toney and I's grip and reaching for his left-side waistband.

        In his left-side waistband, Mr. Ford continued to reach
and push us to the left -- no, the right shoulder of the road where
we fought through a ditch.

        And Mr. Ford pulled a firearm from his waistband and
began shooting at my partner and myself.

    Q.    You said you fell to the right side of the road?

    A.    Well, we fought to the right side of the road.

    Q.    So you were now off the road at this point?

    A.    Yes.

    Q.    Okay.  After you -- did you hear shots ring out?

    A.    I did.

    Q.    After you -- after the shots started ringing out, what
happened next?

1      A.    I had fallen to the ground and I heard shots coming like

2   -- or I heard the sound of gunfire and I felt the ground, like,

3   coming up around my legs where I had fallen on the ground.

4            And I looked back and I witnessed Mr. Ford laid in a half

5   crunch with a firearm in between his legs as Mr. Ford continued to

6   shoot at me.

7            I rolled on the ground -- I log rolled on the ground to a

8   shallow ditch of water where bullets, like rounds, were, like,

9   hitting the ground around me to try to get away from Mr. Ford.

10           I heard my partner, Deputy Toney, yelling in the

11  background, I didn't know where he was at but -- while I was in

12  exchange of gunfire with Mr. Ford.

13     Q.    So you ended up discharging your firearm as well?

14     A.    I did.

15     Q.    Okay.  After that, did you eventually regain your

16  footing?

17     A.    My footing?

18     Q.    Did you --

19     A.    Oh, yes, I got off the ground.  I did.  And I ran behind

20  my patrol car.  And when I ran behind my patrol car, Deputy Toney

21  was behind my patrol car and he was bleeding.  Like, his arm was

22  bleeding out like a spout and he told me he had been shot.

23           So I assisted Deputy Toney to the front of my patrol car

24  where I witnessed Mr. Ford on the ground crawling or pulling himself

25  to get closer to his gun that he had -- that he was using to shoot

18

1    at us with.  I saw him pulling himself on the ground and I kept

2    giving verbal commands to tell him to stop, like, don't move.  And

3    he continued to go until he got his hand on the gun again.

4          And I had called for backup and -- yeah, that's what

5    happened.

6       Q.    Could you approximate how long you think you were with

7    Deputy Toney before backup or an ambulance arrived?

8       A.    I would say approximately eight minutes.

9       Q.    Okay.

10          MR. SINGH:  Your Honor, may I approach the witness?

11          THE COURT:  Yes.

12  (Attorney Singh providing exhibits to the defendant.  Attorney Singh

13     conferring with the defendant at counsel table briefly off the

14   record.  Attorney Singh approaching the witness bench.  Providing

15                    exhibit to the witness)

16       Q.    (By Mr. Singh)  All right.  Ms. Smith, I have just handed

17  you premarked Government's Exhibits 1 through 3.  Take a minute to

18  just look at those for a second.  Do you recognize these items?

19       A.    (Reviewing exhibits).  I do.

20       Q.    You've seen these items before?

21       A.    I have.

22       Q.    Let's talk about the two CDs in front of you.  Do you

23  recognize Government Exhibits 2 and 3?

24       A.    I do.

25       Q.    And what are Government's Exhibits 2 and 3?

1      A.   No. 3 is my dash cam and No. 2 is my body cam -- camera
2 footage.
3      Q.   And how do you know those CDs contain those?
4      A.   Because I watched them and signed them.
5      Q.   Okay.  So you've initialed and dated those CDs?
6      A.   I did.
7      Q.   Okay.  When you reviewed those CDs, were they a true and
8 accurate reflection of what you observed on that day?
9      A.   They are.
10      Q.   And do they appear -- any alterations or differences
11 between what you remember and what's on that video?
12      A.   (Shaking head).
13      Q.   Okay.
14           MR. SINGH:  Your Honor, the Government would move to
15 admit Exhibits 2 and 3 into the record.
16           THE COURT:  They're received.
17 **(Government's Exhibit Nos. 2 and 3 received into evidence)**
18           MR. SINGH:  Thank you.
19      Q.   (By Mr. Singh)  Now, as far as Exhibit 1, Ms. Smith, do
20 you mind identifying what that is?
21      A.   Exhibit No. 1 is the -- a photo of the license -- the
22 Florida license provided to me by Mr. Ford.
23      Q.   Okay.  And it doesn't appear any different from the day
24 you observed it on the crime scene?
25      A.   That's correct.

1          MR. SINGH:  We would move to admit Exhibit 1, your Honor.

2          THE COURT:  It will be received.

3     **(Government's Exhibit No. 1 received into evidence)**

4          MR. SINGH:  Let's publish -- let's start with --

5          THE COURT:  You can publish it.

6          MR. SINGH:  -- the body camera.

7     Q.    (By Mr. Singh)  Ms. Smith, we're going to now play the

8     body camera clip and publish that to the jury.

9       (Video with audio played in open court commencing at 11:15 a.m.)

10                    (Video concluded at 11:16 a.m.)

11     Q.    (By Mr. Singh)  Ms. Smith, was that what you remember

12     occurring on that day?

13     A.    For that portion, yes.  My body camera had died at that

14     point.

15     Q.    Was it on low battery?

16     A.    Yes, it was.  When I got out of the car, that was my

17     first stop of the day.  I looked down when I had gotten out and cut

18     my body camera on and it was on 3 percent and it died but...

19     Q.    Now, you mentioned that you had dashboard camera footage,

20     correct?

21     A.    That is correct.

22     Q.    Did that dashboard camera footage capture the events that

23     are missed by body cam?

24     A.    That's correct.

25          MR. SINGH:  Okay.  Let's move to publish the first clip

1    from the dashboard.

2      (Video with audio played in open court commencing at 11:17 a.m.)

3                    (Video paused at 11:17 a.m.)

4      Q.   (By Mr. Singh)  So that was the interaction -- that's the

5    beginning of the interaction with you and this vehicle?

6      A.   That's correct.

7            MR. SINGH:  Okay.  Let's play clip two.

8       (Video with audio resumed in open court at 11:18 a.m.)

9                  Video paused at 11:18 a.m.)

10           MR. SINGH:  And just run it back to the beginning.

11     Q.   (By Mr. Singh)  And so, Ms. Smith, before I play this

12   clip, you can obviously see the picture there.  Can you tell us

13   what's happening at this point.

14     A.   So at that point, that's when I had asked Mr. Ford out of

15   his car and back to the front of my car where I was standing behind

16   my front passenger side door where I had opened it.  Having a

17   general conversation with Mr. Ford about his travel while I was

18   waiting for my backup unit to get there.

19     Q.   Thank you.

20           THE COURT:  What state was his license tag from?

21           THE WITNESS:  His license tag was from the state of

22   Florida.

23           THE COURT:  Florida.

24           THE WITNESS:  Yes, sir.

25           THE COURT:  Okay.

22

1        (Video with audio resumed in open court at 11:18 a.m.)

2                  (Video paused at 11:19 a.m.)

3        MR. SINGH:  I'm sorry.  We'll restart the clip two.

4        Q.    (By Mr. Singh)  Is this when Deputy Toney assists you on

5    scene?

6        A.    That's correct.  That was Deputy Toney standing to my

7    right.  We were both standing in front of Mr. Ford.

8      (Video with audio resumed in open court commencing at 11:19 a.m.)

9                  (Video paused at 11:21 a.m.)

10       Q.    (By Mr. Singh)  Okay.  Ms. Smith, can you tell us what

11   happened in that clip?

12       A.    While we were speaking with Mr. Ford, that's when I -- he

13   had admitted to possessing marijuana in the vehicle.  I also believe

14   by Mr. Ford's body language that he had body language consistent

15   with someone who was concealing a firearm on his body.  So at that

16   point, I made the decision to detain Mr. Ford.

17            So I approached his left side while Deputy Toney was

18   still standing on his right side and began to resist and that's when

19   we fought to the right shoulder of the road.

20            During that -- during the fight, Mr. Ford was -- like I

21   said, he was fighting to get to his left-side waistband.  That

22   exposed the butt of the -- like, the handle part of the firearm,

23   black in color.  The butt of it was black.  I yelled that, he's got

24   a gun, he's got a gun, in an attempt to warn Deputy Toney.

25            At that point there was an exchange of the gunfire.  I

23

1  fall on the ground.  I saw Mr. Ford fall on the ground.  He was

2  shooting at me.  I exchanged gunfire with Mr. Ford as I rolled to my

3  car.

4          I got up on my feet.  I ran around the car.  That's when

5  Deputy Toney said he'd been shot.

6          And we get to the front of my car and I began giving loud

7  verbal commands to Mr. Ford, asking him to stop moving and put his

8  hands up.

9      Q.    Okay.  Did you -- after the ambulance arrived, where did

10 you go?

11     A.    The ambulance arrived.  Myself, Deputy Larry Connie and

12 Deputy Toney, who had been shot, all got inside of the ambulance and

13 went to Nash General Hospital to the helipad where -- or the

14 helicopter pad where Deputy Toney was loaded into a helicopter.  And

15 I went to Nash General Hospital and Deputy Toney went to the

16 hospital in Greenville.  I think it's, like, Pitt Memorial or Vidant

17 Medical Center.  Something like that.

18         MR. SINGH:  No further questions, your Honor.

19         THE COURT:  Do you want to ask any questions?

20         MR. FORD:  Yes, sir.

21                     **CROSS-EXAMINATION**

22 BY MR. FORD:

23     Q.    Ms. Smith, during the altercation, can you recall how

24 much time you spent on the ground after you had fell?

25     A.    From the time that I fell and the time that I was back on

JA92

24

1  my feet?

2       Q.   Yes, ma'am.

3       A.   Approximately -- maybe approximately 12 seconds.

4       Q.   Okay.  And you indicated that you fired your gun prior to

5  falling or as you were falling or after you had fell?

6       A.   Oh, I shot before I fell.

7       Q.   Before you fell.  Okay.  And what was the reason -- what

8  caused you to fall?

9       A.   I tripped.

10      Q.   Tripped over...

11      A.   I guess my feet --

12      Q.   Okay.

13      A.   -- and the ground.

14      Q.   All right.  So you tripped and you were on the ground for

15  approximately 12 seconds while you were being shot at?

16      A.   Yes.

17      Q.   Okay.  All right.  And after you got up off the ground,

18  you ran to your vehicle, correct?

19      A.   I did.

20      Q.   And you said at that time that you were on the ground,

21  you were not aware of where Officer Toney was?

22      A.   When I was laying on the ground, no, I didn't know where

23  he was at.

24      Q.   Okay.  When the firearm that you seen came out, where was

25  Officer Toney relative to the defendant?

1        A.    What are you -- rephrase your question.

2        Q.    When the firearm that shot Officer Toney came out, you

3   said you seen the handle of a firearm on my waistband?

4        A.    I did.

5        Q.    Okay.  Where was Officer Toney, in what -- like, in

6   relative to me at that time?

7        A.    He was holding on to your elbow, your right arm.

8        Q.    Okay.  And as soon as you seen the gun, you -- as soon as

9   the gun came out, you said you started firing, right?

10       A.    Yes.

11       Q.    Okay.  So Officer Toney was still relatively close to me

12  when you began firing?

13       A.    Yes.

14       Q.    Do you remember how many shots you fired, Ms. Smith?

15       A.    I don't recall.

16       Q.    After you were finished firing your firearm, you did

17  return to your vehicle and do a magazine change, right?

18       A.    I did.

19       Q.    How many bullets were in your magazine before you changed

20  it?

21       A.    It was empty.

22       Q.    When you arrived to the scene, how many bullets were in

23  your magazine?

24       A.    I don't recall.

25       Q.    You don't recall.  How many bullets does your magazine

26

 1    hold in that firearm that you possessed that day?

 2         A.    Like 14 or 15.

 3         Q.    14 or 15.  So it's safe to say that you fired all 14 to

 4    15 shots in that period of time that -- before you fell?

 5         A.    No, that's not correct.

 6         Q.    Okay.  Between the time that you started firing and you

 7    finished firing was prior to you reaching your vehicle, correct?

 8         A.    Yes -- no, that's not correct.  Because I shot again

 9    after I got to my vehicle.

10         Q.    That was after you changed your magazine, correct?

11         A.    That's correct.

12         Q.    So you shot 14 to 15 bullets before you changed your

13    magazine, which was before you reached your vehicle?

14         A.    That's correct.

15         Q.    Okay.  So it is -- I'm not going to say safe to say, but

16    it's pretty accurate to say that Officer Toney was in a relative

17    close proximity to the defendant as you began shooting as he was

18    holding his arm, correct?

19         A.    I'm sorry, what?

20         Q.    Nevermind.  I take that question back.  It's kind of

21    confusing for me.  Okay.

22               You made a comment that after the defendant, me, after I

23    was shot, I began to crawl towards my firearm again; is that

24    correct?

25         A.    Well, you were dragging your body.  You weren't crawling.

27

 1    Q.    I was dragging my body.  I was on my back, correct?

 2    A.    That is correct.

 3    Q.    And I was scooting towards my firearm?  I was making a

 4  move towards my firearm from where I was at?

 5    A.    That's correct.

 6    Q.    How far away was the firearm at that point?

 7    A.    I'm not sure.  Like maybe three feet -- approximately

 8  three feet maybe.

 9    Q.    And do you know how that firearm got three feet away?

10    A.    No, I don't.

11    Q.    Okay.  But you did testify -- you did write a statement

12  that you seen the defendant firing at you with both hands on the

13  weapon, correct?

14    A.    Yeah, I did.

15    Q.    Okay.  Now, are you aware of the injuries that the

16  defendant sustained at that incident?

17    A.    Not all of them, but I know I shot you.

18    Q.    According to this Nash County EMS, there was multiple

19  gunshot wounds to the left leg, there was a wound to the right leg

20  and there was -- it says there was only one to the right arm, but

21  there was actually two to the right arm, which broke the bone --

22  (indicating) -- whatever bone this is -- which would pretty much

23  render the defendant's right arm and both of his legs useless at

24  that time.  But you said that you seen the defendant scooting using

25  his legs and --

28

1    A.    I didn't say I saw you scooting using your legs.

2    Q.    You made a statement -- in your written statement to the

3  Nash County Sheriff's Office that you observed the defendant

4  scooting on his back using his legs, correct?

5    A.    Dragging your legs.  You were dragging your legs.

6    Q.    Okay.

7         THE COURT:  Can you identify the person who's asking you

8  the questions as the person who shot at you?

9         THE WITNESS:  Yes, sir, I do.

10         THE COURT:  Okay.  This is only about whether you're

11  previously a felon and at some time later in time, incident to this

12  indictment, you had a firearm.  You've admitted it several times

13  here.  It's not about whether you were shot justifiably or not.

14         MR. FORD:  Yes, sir, I understand that.

15         THE COURT:  Okay.  As long as you understand that.

16         Do you have any other questions?

17         MR. FORD:  Yes, I do.

18    Q.    (By Mr. Ford)  During your interview with -- nevermind.

19         MR. FORD:  I'm done.

20         THE COURT:  All right.  Do you have any redirect?

21         MR. SINGH:  Just briefly, your Honor.

22                        **REDIRECT EXAMINATION**

23  BY MR. SINGH:

24    Q.    Ms. Smith, do you remember what caliber duty firearm you

25  had that day?

29

```
 1        A.    A .357.
 2        Q.    Okay.  Thank you.
 3              MR. SINGH:  No further questions, your Honor.
 4              THE COURT:  Thank you.  You're excused.
 5                         (Witness Excused)
 6              THE COURT:  Call your next witness.
 7              MR. SINGH:  Your Honor, may I ask for release of this
 8   current witness from their subpoena?  Ms. Smith -- from her current
 9   subpoena?
10              THE COURT:  She's released.
11              MR. SINGH:  Thank you.
12              Your Honor, the next witness is William Toney.
13              THE CLERK:  Please place your left hand on the Bible and
14   raise your right hand.
15                         DEPUTY WILLIAM TONEY
16              having been duly sworn, testified as follows:
17              THE WITNESS:  I do.
18              THE CLERK:  Please be seated in the witness box.
19              THE COURT:  Good morning.
20              THE WITNESS:  How are you doing, Judge?
21              THE COURT:  Good morning.
22              MR. SINGH:  May I proceed, your Honor?
23              THE COURT:  Yes.
24              MR. SINGH:  Thank you, your Honor.
25   ///
```

JA98

30

|   | |
|---|---|
| 1 | **DIRECT EXAMINATION** |
| 2 | BY MR. SINGH: |
| 3 | Q.   Good morning, Mr. Toney. |
| 4 | A.   Good morning, sir. |
| 5 | Q.   Do you mind introducing yourself to the jury, starting |
| 6 | with your full name. |
| 7 | A.   Yes, sir.  My name is William Toney. |
| 8 | Q.   And where do you work now, sir? |
| 9 | A.   I work for Nash County Sheriff's Office. |
| 10 | Q.   And how long have you been employed with the Sheriff's |
| 11 | Office? |
| 12 | A.   I've been there eight years. |
| 13 | Q.   Okay.  And before that, were you also in law enforcement? |
| 14 | A.   Yes, sir.  I had two years prior Rocky Mount PD. |
| 15 | Q.   Okay.  Now, do you remember if you were working in your |
| 16 | official capacity on February 4th, 2021? |
| 17 | A.   Yes, sir, I was. |
| 18 | Q.   Tell us a little bit about what sort of duties you had on |
| 19 | that day. |
| 20 | A.   Yes, sir.  I'm a canine deputy so I work interdiction |
| 21 | team on I-95 and we were out doing -- just monitoring traffic that |
| 22 | morning. |
| 23 | Q.   Okay.  And did you receive a call for assistance on that |
| 24 | day? |
| 25 | A.   I did, yes, sir. |

1   Q. Do you remember who called you for assistance?

2   A. Yes.  My partner, Deputy Shelby Smith.

3   Q. And tell us a little about what happened next when you

4 responded to that call.

5   A. Yes, sir.  I responded on I-95 to back her up on that

6 call.  She called for a canine deputy to come, that she had the

7 presence of a narcotic at that stop.  That's why I went.

8   Q. Thank you.  And when you arrived on scene, did you

9 observe Ms. -- Deputy Smith already on scene?

10   A. Yes, sir, I did.

11   Q. Okay.  Did you observe Mr. Ford at that location as well?

12   A. Yes, sir, I did.

13   Q. Do you see him in the courtroom today?

14   A. Yes, sir.  He's sitting right over there.  (Indicating).

15   Q. Okay.  And can you describe --

16   THE COURT:  The witness has identified the defendant.

17   MR. SINGH:  Thank you, your Honor.

18   Q. (By Mr. Singh)  And can you just describe one article of

19 clothing that he's wearing or the color of the clothing he's

20 wearing?

21   A. Yes, sir.  He has a white shirt on.

22   Q. Thank you.

23   MR. SINGH:  Your Honor, may I approach?

24   THE COURT:  Yes.

25 (Attorney Singh showing exhibits to the defendant.  Attorney Singh

32

1    conferring with the defendant at counsel table briefly off the

2    record.  Attorney Singh approaching the witness bench and providing

3                          exhibits to the witness)

4         Q.    (By Mr. Singh)  All right.  Mr. Toney, I have just handed

5    you what's been premarked as Government's Exhibits 4, 4A through D

6    and 19, okay.  I want you to just take a minute to just look at

7    those for a second.

8         A.    (Witness reviewing exhibits).  Okay.

9         Q.    Now, let's start with Government's Exhibits 4 and 19.

10   The two CDs in front of you.

11        A.    Yes, sir.  Okay.

12        Q.    Yes, sir.  Do you recognize these exhibits?

13        A.    Yes, sir, I do.

14        Q.    Okay.  And what are they?

15        A.    Yes, sir.  This is my body cam and my dash cam.

16        Q.    Okay.  And you know that because you viewed these

17   footages?

18        A.    Yes, sir, I did.  I initialed and dated it.

19        Q.    Okay.  Thank you.  And when you reviewed that footage,

20   was it a true and accurate reflection of what happened on February

21   4, 2021?

22        A.    Yes, sir, it is.

23        Q.    Thank you.

24              MR. SINGH:  Your Honor, we would move to admit these

25   exhibits.

33

1          THE COURT:  They'll be received.

2      **(Government's Exhibits 4 and 19 received into evidence)**

3      Q.    (By Mr. Singh)  Now, let's turn your attention to

4  premarked Exhibits 4A through C.  Those are the photographs in front

5  of you.

6      A.    Okay.

7      Q.    Now, do you recognize these exhibits?

8      A.    (Reviewing exhibits).  Yes, sir, I do.

9      Q.    Okay.  And what are these exhibits?

10     A.    This is a handgun that was fired at me.

11     Q.    Is it safe to say that these are still shots from your

12  body cam --

13     A.    Yes, sir.  They are still shots from my body cam.  Yes,

14  sir.

15     Q.    Okay.  And when you look at these photos now, and based

16  on your recollection of your body camera, are there any alterations

17  or do they appear different in any way?

18     A.    No, sir.

19     Q.    They're a fair and accurate representation?

20     A.    Yes, sir, they are.

21     Q.    Thank you.

22          MR. SINGH:  Your Honor, we would move to admit

23  Government's Exhibits 4A through C.

24          THE COURT:  They're received.

25     **(Government's Exhibit Nos. 4A through 4C received into evidence)**

34

1          MR. SINGH:  Okay.  Let's pull four.

2      Q.    (By Mr. Singh)  Now, Mr. Toney, we're going to play a

3  clip and then after the clip is played, I'm going to have you walk

4  us through it, okay?

5      A.    Yes, sir.

6    (Video with audio played in open court commencing at 11:36 a.m.)

7                    (Video paused at 11:38 a.m.)

8      Q.    (By Mr. Singh)  Mr. Toney, is that what you remember

9  happening on February 4?

10     A.    Yes, sir, it is.

11         MR. SINGH:  Okay.  Hold on one second.

12     Q.    (By Mr. Singh)  Okay.  We're going to play a second clip

13  for you.  And after I play this clip, I want you to tell us what's

14  happening in it.

15     A.    Okay.  Yes, sir.

16    (Video with audio played in open court commencing at 11:38 a.m.)

17                    (Video paused at 11:39 a.m.)

18     Q.    (By Mr. Singh)  Now, Mr. Toney, do you recognize that

19  clip as well?

20     A.    Yes, sir, I do.

21     Q.    And it was a slowed-down clip, correct?

22     A.    Yes, sir.

23     Q.    What is the jury seeing in that clip?

24     A.    Okay.  We are -- I was trying to get Mr. Ford on the

25  ground.  And what I'm seeing here is the handgun that he had

35

concealed in his waistband in his hand getting ready to fire at me.
That's what I see there.

    Q.    Okay.  Thank you.

    MR. SINGH:  Now, if we can just publish to the jury
images 4A through D.  Or is it C?

    THE COURT:  All right.  There's a gun in that picture.
And there's a hand in the picture.  Whose hand is that on the gun?

    THE WITNESS:  That is his hand, sir.

    THE COURT:  Who is "he"?

    THE WITNESS:  Mr. Ford.

    THE COURT:  The person who's the defendant in this case?

    THE WITNESS:  Yes, sir.

    THE COURT:  And that's a photograph of his pistol or of a
pistol --

    THE WITNESS:  Yes.

    THE COURT:  -- with his hand wrapped around it?

    THE WITNESS:  Yes, sir.

    THE COURT:  Okay.

    Q.    (By Mr. Singh)  And is that his left hand on it there?

    A.    Yes, sir.  That's his left hand.

    Q.    Where do you see his trigger finger in that photo?

    A.    His trigger finger is on the trigger.

    Q.    All right.  Now, let's talk about premarked Exhibit 19,
the other CD you have.  You mentioned that was your dashboard camera
footage?

36

1       A.    Yes, sir; correct.

2       Q.    And you remember that that captures the events from the

3  day as well, correct?

4       A.    Yes, sir.

5            MR. SINGH:  Let's play that clip for the jury.

6      (Video with audio played in open court commencing at 11:40 a.m.)

7                      (Video paused at 11:42 a.m.)

8       Q.    (By Mr. Singh)  Do you mind telling us what happened

9  there?

10      A.    Yes, sir.  We were at the front of the car and she saw --

11  the other view there -- we were trying to take him down at that

12  point in time.  And we were wrestling, trying to take him down.  And

13  the gun -- his gun was fired at that point in time at me and I was

14  trying to get away from him as he was firing the weapon to take

15  cover.

16      Q.    Okay.  And then that's you that -- you get to the -- from

17  the base -- of the back of her car --

18      A.    Yes, sir.  That's me at the back of the vehicle, yes,

19  sir, that comes around to the side.

20      Q.    And that individual that was rolling through the ditch,

21  who was that?

22      A.    That was my partner.

23      Q.    Deputy Smith?

24      A.    Deputy Smith, yes, sir.

25            MR. SINGH:  Play the next clip.

JA105

37

```
 1              (Video with audio resumed in open court commencing

 2                              at 11:42 a.m.)

 3                        (Video paused at 11:43 a.m.)

 4         Q.    (By Mr. Singh)  Who is this individual that arrives on

 5    screen?

 6         A.    That's Deputy Carlisle.

 7         Q.    Okay.  And then did you remain in that physical position

 8    until the ambulance came?

 9         A.    I did; yes, sir.

10         Q.    Mr. Toney, where were you shot?

11         A.    I was shot two times in my right arm, one time in my left

12    arm and one time in my right hip.

13         Q.    And in your right hip, is it fair to say that it's close

14    to the buttocks area in the back?

15         A.    Yes, sir.  The bullet went through my hip and came out my

16    buttocks area.

17         Q.    Mr. Toney, do you mind showing the members of the jury

18    your right forearm?

19         A.    Yes, sir.  (Displaying right forearm).

20         Q.    So, Mr. Toney, what's that dent that's on your --

21         A.    So this hole here is one of the holes that went in.  The

22    other hole is adjacent behind it.  This is where the bullet went

23    through and it destroyed my radius bone in my arm.  So I have a

24    metal rod that runs from my wrist to my elbow.

25              When shots were fired, my mic -- lapel mic wire was taken
```

38

1    through my arm through one of these holes -- through this hole here

2    that ended up in my nervous system that's still there now.

3          I have a bullet that's still in my arm that was also

4    lodged in my nervous system that they couldn't remove at the time of

5    the accident.  So that bullet is sitting on top here.  (Indicating).

6       Q.    And if you don't mind showing the Court that part of your

7    arm.

8       A.    This is the bullet right there.  (Indicating).

9          THE COURT:  Yeah.

10          MR. SINGH:  No further questions, your Honor.

11          THE COURT:  Do you have any questions?

12          MR. FORD:  No, sir.

13          THE COURT:  Okay.  That's all.  Thank you, Deputy.

14    You're excused.

15          THE WITNESS:  Okay.  Thank you, sir.

16                    (Witness Excused)

17          MR. SINGH:  And, your Honor, may I approach the witness

18    stand to just collect the exhibits?

19          THE COURT:  Yeah.

20          MR. SINGH:  Thank you, your Honor.

21          Your Honor, our next witness is David Marks.

22          THE COURT:  Okay.

23          MR. SINGH:  Your Honor, I'm sorry, can I also release Mr.

24    Toney from his subpoena?

25          THE COURT:  Yes.

JA107

39

1             MR. SINGH:  Thank you.

2             THE CLERK:  Please place your left hand on the Bible and

3    raise your right hand.

4                        **DEPUTY DAVID MARKS**

5             having been duly sworn, testified as follows:

6             THE WITNESS:  I do.

7             THE CLERK:  Please be seated.

8                        <u>**DIRECT EXAMINATION**</u>

9    BY MR. SINGH:

10        Q.    Good morning, Mr. Marks.

11        A.    Good morning.

12        Q.    Do you mind telling the jury where you work and what your

13   position is with that agency.

14        A.    I am a deputy and an evidence specialist for the Nash

15   County Sheriff's Office.

16        Q.    Okay.  And I'm going to -- since this is a -- since we're

17   all kind of in close proximity, I'm going to probably just remind

18   you to speak up a little bit, okay?

19        A.    Okay.

20        Q.    Thank you.

21             Now, Mr. Marks, are you still employed with the Nash

22   County Sheriff's Office?

23        A.    Yes, sir.

24        Q.    And you mentioned that you are in charge of some of the

25   evidence collection; is that right?

JA108

1      A.   Yes, sir.

2      Q.   Were you involved in the investigation on February 4th,

3  2021?

4      A.   I was.

5      Q.   And what was your role in that investigation?

6      A.   As the crime scene investigator.

7      Q.   Okay.  Which means you're responsible for processing the

8  evidence from the crime scene?

9      A.   Yes.  Photographing, documenting and collecting.

10     Q.   Okay.  Let's talk about the procedure for some of those

11  documentations.  Do you process all the evidence in tamper-proof

12  packaging?

13     A.   Yes.

14     Q.   And they're all accounted for with special markings and

15  notations?

16     A.   Yes.  On the seal with initials and chain of custody is

17  maintained.

18     Q.   And you've maintained the chain of custody for all this

19  evidence from this case, correct?

20     A.   Yes.  At the Sheriff's Office.

21     Q.   And you brought it here today?

22     A.   Correct.

23     Q.   Okay.  And they have been held securely since

24  February 4th, 2021, correct?

25     A.   Yes, sir.

41

```
1              MR. SINGH:  Okay.  Your Honor, I'm going to hand the
2   defendant some exhibits in batches if that's okay.
3              THE COURT:  Yeah.
4              MR. SINGH:  Thank you, your Honor.
5   (Attorney Singh providing exhibits to Mr. Ford.  Conferring with Mr.
6              Ford at counsel table briefly off the record)
7              THE COURT:  That's okay, you don't have to show him the
8   gun.
9              MR. SINGH:  Okay.
10             (Attorney Singh approaching the witness stand)
11             MR. SINGH:  I apologize, your Honor.  Just one second.
12          (Attorney Singh providing exhibits to the witness)
13             THE COURT:  Are you going to put the gun into evidence?
14             MR. SINGH:  Huh?
15             THE COURT:  Are you going to put the gun into evidence?
16   It's a felon in possession --
17             MR. SINGH:  I am, your Honor.
18             THE COURT:  -- of a firearm case.
19             MR. SINGH:  I am, your Honor.
20        Q.   (By Mr. Singh)  Mr. Marks, I've handed you premarked
21   Government's Exhibit 5.  Can you other tell us whether you've seen
22   that before?
23        A.   Yes.  Item 5 is a Taurus 9mm collected from the crime
24   scene.
25        Q.   Okay.  And does it appear -- you're the one who packaged
```

42

1    that, correct?

2            A.    Correct.

3            Q.    Does it appear different in any way or altered in any way

4    from the time that you packaged it?

5            A.    No, sir.

6            MR. SINGH:  Your Honor, we would move to admit

7    Government's Exhibit 5 into evidence.

8            THE COURT:  It's received.

9        **(Government's Exhibit No. 5 received into evidence)**

10           Q.    (By Mr. Singh)  I'd like you to turn your attention to

11   the photographs in front of you.  Exhibits -- premarked Government's

12   Exhibits 5A through C.

13           A.    (Reviewing exhibits).  Okay.

14           Q.    And can you identify what those are as well?

15           A.    Yes.  5A is a photograph of this firearm in its packaging

16   and the way that it's sealed and the way that it was packaged inside

17   of this box.

18           5B is the photograph of this firearm at the crime scene,

19   photographed at the crime scene at its location.

20           And 5C is another photograph of this firearm photographed

21   at the crime scene.

22           MR. SINGH:  Your Honor, we would move to admit 5A through

23   C into evidence.

24           THE COURT:  They're received.

25       **(Government's Exhibit Nos. 5A through 5C received into evidence)**

JA111

1          MR. SINGH:  Can we publish 5A through C -- B and C.

2          Thank you.

3          Your Honor, may I approach?

4          THE COURT:  Yes.

5     Q.    (By Mr. Singh)  Mr. Marks, I've handed you premarked

6     Government's Exhibit 6.  Do you recognize this item?

7     A.    I do.

8     Q.    And did you package that item?

9     A.    I did.

10    Q.    And what are those items or what is that item?

11    A.    This packaging has four individual packages of fired

12    shell casings collected from the crime scene.

13    Q.    And photographs -- or premarked Government's Exhibits 6A

14    through F, can you identify -- do you know what those are?

15    A.    (Reviewing exhibits).  Okay.  6A is a photograph of the

16    four shell casings that's in this bag that are a photograph of its

17    individual packaging with the shell casings removed from each

18    individual packaging.

19          6B is -- or B, C -- 6B, C, D and E are individual --

20    individual shell casings.  6A is all four, side by side.  And 6B, C,

21    D and E are individuals of the first four as they were sitting side

22    by side.

23          And 6F is a picture of the crime scene and overall

24    picture once most of the -- once all the evidence had been marked on

25    the scene --they're marked by evidence flags or markers -- and 6F is

44

1    a representation of an overall picture of all of the evidence

2    markers at the crime scene.

3              THE COURT:  So those are shell casings that came from the

4    gun that you're identifying?

5              THE WITNESS:  Um...

6              THE COURT:  Nevermind.

7              THE WITNESS:  6B through --

8              THE COURT:  Nevermind.

9              THE WITNESS:  Yes, sir.

10              THE COURT:  Nevermind.

11              MR. SINGH:  Your Honor, we'd move to admit Exhibits 6A

12    through F into evidence.

13              THE COURT:  They'll be received.

14       **(Government's Exhibit Nos. 6A through 6F received into evidence)**

15              MR. SINGH:  We'll publish them.

16         Q.   (By Mr. Singh)  Mr. Marks, are these 9mm shell casings?

17         A.   Yes, they are.

18         Q.   And is the firearm that you introduced a 9mm handgun?

19         A.   Yes, it is.

20         Q.   Thank you.

21              THE COURT:  Are you finished with this witness?

22              MR. SINGH:  Just a few more exhibits, your Honor.

23              THE COURT:  Go ahead.

24    (Attorney Singh approaching the witness bench.  Providing exhibits

25                             to the witness)

JA113

45

1      Q.    (By Mr. Singh)  Mr. Marks, I've handed you Government's

2    Exhibits 7 and 8.  Do you mind identifying or have you seen these

3    items before?

4      A.    Actually, it's 7 and 9 right here.

5      Q.    Appreciate that.  7 and 9.

6      A.    Okay.  Yes, I have.

7      Q.    And what are they?

8      A.    Exhibit 7 is an extended magazine that fits a -- it was

9    packaged -- it holds 30 rounds.

10          And Exhibit 9 is a -- approximately 26 rounds of

11   ammunition that were removed from this magazine once it was

12   collected from its location.

13     Q.    And what are the photographs?

14     A.    7A is a photograph of the extended magazine once it was

15   removed from its packaging.

16          7B is a photograph of Exhibit 9 in its original location

17   where it was collected from inside of the defendant's vehicle.

18          8A is a up-close photograph of the live rounds that were

19   removed from the extended magazine.

20          9A shows the packaging that the 26 rounds were originally

21   located in inside the plastic bag and it was how it was originally

22   packaged when it was found.

23          MR. SINGH:  I would move to admit those exhibits into

24   evidence, your Honor.

25          THE COURT:  Received.

JA114

46

1   **(Government's Exhibit Nos. 7, 7A, 7B, 8A, 9A received into evidence)**

2           MR. SINGH:  Just two more and these are the last ones,

3   your Honor.

4    (Attorney Singh approaching the witness bench.  Providing exhibits

5                        to the witness)

6       Q.    (By Mr. Singh)  Mr. Marks, I've handed you premarked

7   Government's Exhibit 8 as well as premarked Government's Exhibit 10

8   as well as their corresponding photos.

9       A.    Right.

10      Q.    Can you tell us what 8 and 10 are.

11      A.    Yes.  Exhibit 8 are 30 live ammo 9mm rounds that were

12  collected from the -- collected from the magazine.

13          And 10 is a gun light kit that can be affixed to a pistol

14  that was located in the defendant's vehicle -- collected from the

15  defendant's vehicle.

16          And 10A and 10B is a up close -- up-close photograph of

17  the gun light as it -- after it was removed from the packaging for

18  photographic purposes.

19      Q.    Thank you.

20          And none of these appear with any alterations or

21  differences from when you collected them, correct?

22      A.    No, sir.

23          MR. SINGH:  Your Honor, we would move to admit the

24  remainder of the exhibits in evidence.

25          THE COURT:  They're received.

JA115

1   **(Government's Exhibit Nos 8, 10, 10A and 10B received into evidence)**

2       Q.    (By Mr. Singh)  And just to clarify, Mr. Mark, minus the

3   firearm and the shell casings, where did you guys find all of those

4   exhibits in evidence?

5       A.    Inside the defendant's vehicle.

6       Q.    Okay.

7           MR. SINGH:  No further questions, your Honor.

8           THE COURT:  Do you have any questions?

9           MR. FORD:  Yes, sir.

10                        **CROSS-EXAMINATION**

11  BY MR. FORD:

12      Q.    How many shell casings were found that went to the 9mm

13  pistol that you just seen?

14      A.    I'm sorry.  Could you say that again, sir.

15      Q.    The firearm that the defendant is suspected of

16  possessing, how many shell casings were found that belong to that --

17  how many 9mm shell casings were there on the scene during the

18  investigation?

19      A.    There were four collected.

20      Q.    There was four collected.  How long did you guys process

21  the scene?

22      A.    The scene was -- with -- I can't recall the exact amount

23  of time that the scene was established to the time it was shut down.

24  I can only give you an approximate.

25      Q.    Do you know what time the scene was shut down?

48

1      A.   I don't recall, sir.

2      Q.   Okay.  Could you give me approximate then?

3      A.   Approximate, at least six to seven hours before it was

4   closed down.

5      Q.   Okay.  And there was a fingerprint on the magazine of the

6   firearm; is that correct?

7      A.   I don't recall, sir.

8      Q.   You don't recall.  Okay.

9           MR. FORD:  No further questions.

10          THE COURT:  All right.

11          Anything further from this witness?

12          MR. SINGH:  Nothing, your Honor.

13          THE COURT:  You're excused.

14                      (Witness excused)

15          THE COURT:  Call your next witness.

16          MR. SINGH:  Your Honor, our next witness is John Griffin.

17          And, your Honor, may I release Mr. Marks from his

18   subpoena?

19          THE COURT:  Yes.

20          THE CLERK:  Please place your left hand on the Bible and

21   raise your right.

22          **SENIOR SPECIAL ATF AGENT JOHN GRIFFIN**

23          having been duly sworn, testified as follows:

24          THE WITNESS:  Yes, I do.

25          THE CLERK:  Please be seated in the witness box.

49

**<u>DIRECT EXAMINATION</u>**

BY MR. SINGH:

Q.    Afternoon, Mr. Griffin.  Do you mind telling the jurors where you work.

A.    Yes, sir.  I'm a Senior Special Agent with the ATF Raleigh field office.  It's also known as the Bureau of Alcohol, Tobacco, Firearms and Explosives.

Q.    And, Mr. Griffin, you were the case agent on this case for federal prosecution?

A.    Yes, sir.

Q.    So you were not there on the scene that day, were you?

A.    I was not.

Q.    Okay.  With these firearm cases -- how long have you been a Special Agent with ATF?

A.    Fifteen and a half years.

Q.    And how long have you examined firearms to do interstate nexus on them?

A.    Over 13 years.

Q.    How many -- rough estimate, how many guns do you think you've looked at to evaluate in your lifetime?

A.    Thousands.

Q.    Okay.  You conducted the examination on the firearm in this case?

A.    Yes, sir, I have.

Q.    Okay.

50

1          MR. SINGH:  Your Honor, may I approach?

2          THE COURT:  Yes.

3     (Attorney Singh approaching the witness bench.  Providing exhibits

4                        to the witness)

5          Q.   (By Mr. Singh)  Mr. Griffin, I've handed you what's been

6     premarked as Government Exhibit 17 as well as what's already been

7     admitted as Government's Exhibit 5.

8               What is Exhibit 5?

9          A.   Exhibit 5 is a Taurus model G2C 9mm pistol.

10         Q.   Is that the firearm you evaluated in this case?

11         A.   Yes, sir, it is.

12         Q.   Let's look at proposed Exhibit 17.  What is that?

13         A.   This is a firearms trace summary regarding the firearm

14    that is identified as Exhibit No. 5.

15         Q.   Did you conduct that trace yourself?

16         A.   Yes, sir, I did.

17         Q.   Okay.  And does that appear in any way different from

18    what the trace is that you conducted?

19         A.   No, sir.

20              MR. SINGH:  We'd move to admit Government Exhibit 17,

21    your Honor.

22              THE COURT:  It will be received.

23         **(Government' Exhibit No. 17 received into evidence)**

24              MR. SINGH:  Can we publish 17.

25         Q.   (By Mr. Singh)  Mr. Griffin, do you mind telling us --

1    telling the jury what they're looking at here.  Let's start with
2    that first top portion, the firearm information.
3         A.   Yes.  So this is a record that identifies this particular
4    firearm.  Under federal law, manufacturers have to put certain
5    markings on the firearms and one of those markings is a serial
6    number.  A firearm's trace uses that serial number to identify where
7    the firearm was manufactured and who the purchaser was and where it
8    was purchased at as well as the licensed firearms dealer that sold
9    that firearm.
10        Q.   And where is this firearm manufactured or imported from?
11        A.   This firearm is manufactured in Brazil.
12        Q.   Okay.
13             MR. SINGH:  Your Honor, I would also move to have John
14   Griffin admitted as an expert in firearms pursuant to Rule 702 and
15   703.
16             THE COURT:  He'll be received as an expert and allowed to
17   express his opinions in that regard.
18        Q.   (By Mr. Singh)  And, Mr. Griffin, is it your opinion that
19   based on the country of origin, this firearm traveled in
20   international or interstate commerce?
21        A.   Yes, sir, it is.
22        Q.   And that information we pulled up there on the eTrace,
23   Mr. Griffin, where was this firearm purchased?
24        A.   This was purchased in Tampa, Florida.
25             MR. SINGH:  Thank you, your Honor.

```
 1              Thank you, Mr. Griffin.

 2              No further questions, your Honor.

 3              THE COURT:  Do you have any questions?

 4              MR. FORD:  No, sir.

 5              THE COURT:  Thank you.  You're excused.

 6                       (Witness Excused)

 7              THE COURT:  Next witness.

 8              MR. SINGH:  Your Honor, may we release Mr. Griffin as

 9  well?

10              Your Honor, the next witness is Larry Connie.

11              THE CLERK:  Please place your left hand on the Bible and

12  raise your right hand.

13                     DEPUTY LARRY CONNIE

14              having been duly sworn, testified as follows:

15              THE WITNESS:  I do.

16              THE CLERK:  Please be seated in the witness box.

17                     DIRECT EXAMINATION

18  BY MR. SINGH:

19     Q.   Good afternoon, Mr. Connie.  Can you tell the jurors your

20  full name.

21     A.   Larry Anthony Connie, Jr.

22     Q.   And where do you work, Mr. Connie?

23     A.   I work for CSX.

24     Q.   And what's that?

25     A.   A railroad.
```

JA121

53

```
 1        Q.    So you're an engineer?

 2        A.    Freight conductor.

 3        Q.    Okay.  So you're the conductor?

 4        A.    Yes, sir.

 5        Q.    Do you also work at the Nash County Sheriff's Office?

 6        A.    I do.  I'm reserve.

 7        Q.    Okay.  But on February 4, 2021, were you working in your

 8   official capacity?

 9        A.    Yes, sir.

10        Q.    Do you remember receiving a call for assistance that day?

11        A.    I do.

12        Q.    Would you -- just generally, what do you remember the

13   call for assistance being?

14        A.    It was a call for help, that a deputy had been shot.

15        Q.    Okay.  And do you remember, where location-wise, the call

16   was coming from?

17        A.    It was on I-95 near Gold Rock.

18        Q.    Okay.  Do you remember if you were wearing your

19   officer-worn body camera that day?

20        A.    I was.

21        Q.    Okay.

22              MR. SINGH:  Your Honor, may I approach?

23              THE COURT:  Yeah.

24   (Attorney Singh approaching the witness bench.  Providing exhibit to

25                            the witness)
```

JA122

54

1      Q.    (By Mr. Singh)  Mr. Connie, I've handed you what's been
2  premarked as Government's Exhibit 16.  Do you recognize this item?
3      A.    I do.
4      Q.    And how do you recognize this item?
5      A.    I've seen it.
6      Q.    And what is that item?
7      A.    It's body camera footage of me responding to the call.
8      Q.    Okay.  And you mentioned you reviewed this footage?
9      A.    I have.
10     Q.    It was a true and accurate reflection of what happened on
11 February 4th?
12     A.    Yes, sir.
13     Q.    It shows your encounter with the defendant and the crime
14 scene?
15     A.    Yes, sir.
16           MR. SINGH:  Your Honor, we'd move to admit this exhibit.
17           THE COURT:  It will be received.
18      **(Government Exhibit No. 16 received into evidence)**
19       (Video with audio played in open court at 12:05 p.m.)
20                  (Video paused at 12:06 p.m.)
21     Q.    (By Mr. Singh)  Can you tell us what you did in that
22 clip?
23     A.    When I got there, I helped with detaining the defendant.
24 And I went and put a tourniquet on William Toney.
25     Q.    Okay.  And did you eventually travel with Mr. Toney in

1    the ambulance as well?

2        A.    I did.

3        (Video with audio played in open court commencing at 12:07 p.m.)

4                    (Video paused at 12:08 p.m.)

5        Q.    (By Mr. Singh)  And, Mr. Connie, is that your

6    recollection of what happened in the ambulance?

7        A.    Yes, sir.

8        Q.    Okay.  And who is that seated in the chair right there?

9        A.    That's William Toney.

10       Q.    Okay.  Did you go with him to the ambulance afterwards --

11   or to the hospital afterwards?

12       A.    I did.

13       Q.    Okay.  Thank you.

14            MR. SINGH:  No further questions, your Honor.

15            THE COURT:  Do you have any questions?

16            MR. FORD:  No, sir.

17            THE COURT:  Thank you.  You're excused.

18            THE WITNESS:  Thank you.

19                    (Witness Excused)

20            THE COURT:  Next witness.

21            MR. SINGH:  Your Honor, before I call the next witness,

22   I'd like to read our stipulation into the record if that's okay.

23            THE COURT:  You have a stipulation?

24            MR. SINGH:  We do, your Honor.

25            THE COURT:  Okay.

JA124

56

1          MR. SINGH:  Your Honor, the United States of America, by

2     and through the United States Attorney for the Eastern District of

3     North Carolina, and the defendant hereby stipulate as follows:

4          The jury must accept as proven that prior to

5     February 4th, 2021, Jarred Javon Ford, the defendant sitting before

6     you, had previously been convicted of a crime punishable by a term

7     of imprisonment exceeding one year.

8          Further, the defendant knew he had been convicted of such

9     a felony.

10          The jury must accept as proven that Jarred Javon Ford is

11     a felon and knew he was a felon prior to February 4, 2021.

12          Respectfully submitted and signed by Jarred Jovan Ford,

13     the defendant, on August 18th, 2022, and myself as the Assistant

14     United States Attorney.

15          And, your Honor, I would move to admit this as Government

16     Exhibit 18.

17          THE COURT:  It's received in evidence.

18          **(Government's Exhibit No. 18 received into evidence)**

19          THE COURT:  Ladies and gentlemen, the issue of his being

20     a felon prior to the date in question when this happened is now

21     admitted by everyone so that there's no further proof of that.  It's

22     not in controversy.  It's established.

23          MR. SINGH:  Your Honor, our next witness is Robert

24     Carlisle.

25          And I would just ask if I can also have Mr. Connie

JA125

57

1    released from his subpoena as well.

2             THE COURT:  He'll be released.

3             Mr. Carlisle.

4             THE CLERK:  Please place your left hand on the Bible and

5    raise your right hand.

6                      **DEPUTY ROBERT CARLISLE**

7             having been duly sworn, testified as follows:

8             THE WITNESS:  I do.

9             THE CLERK:  Please be seated in the witness box.

10                   **<u>DIRECT EXAMINATION</u>**

11   BY MR. SINGH:

12     Q.   Good afternoon, Mr. Carlisle.

13     A.   Good afternoon.

14     Q.   Do you mind telling the jury where you work.

15     A.   Nash County Sheriff's Office.

16     Q.   And how long have you worked there, sir?

17     A.   Going on four years.

18     Q.   Okay.  And were you working in your official capacity on

19   February 4th, 2021?

20     A.   I was.

21     Q.   Do you remember receiving a call for assistance that day?

22     A.   I do.

23     Q.   And tell us where that call was coming from?

24     A.   It was coming from I-95 on the southbound.

25     Q.   When you arrived on scene, what do you remember seeing?

JA126

1    A.    I remember seeing Deputy Smith at her patrol vehicle.  I
2  remember seeing Deputy William Toney hunched down.  And as I was
3  jumping over the guard railing, I saw two troopers pull up.  And
4  then once I arrived, I took cover behind William Toney's vehicle.
5    Q.    Okay.  So you were one of the initial people to respond
6  then?
7    A.    I was.
8    Q.    Okay.  Weren't wearing a body camera that day, correct?
9    A.    I was not.
10    MR. SINGH:  Can we play William Toney's dashboard camera,
11  clip two.
12    (Video with audio played in open court commencing at 12:12 p.m.)
13             (Video paused at 12:12 p.m.)
14    Q.    (By Mr. Singh)  Now, Mr. Carlisle, is that you in the
15  video?
16    A.    It is.
17    Q.    And can you tell us what was going on from your vantage
18  point at that point?
19    A.    Once I approached, I initially saw the defendant kept
20  reaching for his weapon.  And which I and also Deputy William Toney
21  and Deputy Shelby Smith was giving verbal commands to not move, to
22  not grab the weapon, things like that.
23    Q.    And so you did observe him reaching for the weapon?
24    A.    I did.
25    MR. SINGH:  No further questions, your Honor.

JA127

59

1          THE COURT:  Do you have any questions?

2          MR. FORD:  Yes, sir.

3                    **CROSS-EXAMINATION**

4    BY MR. FORD:

5      Q.   Mr. Carlisle, you said you responded to the scene on the

6    date of the incident, correct?

7      A.   I did.

8      Q.   And you checked in with dispatch when you arrived to the

9    scene?

10     A.   I did.

11     Q.   Now, what time did you arrive?

12     A.   I'd have to refer to notes.

13     Q.   All right.  Because I have the Nash County Emergency

14   Services, basically the dispatch log, and doesn't have you as

15   checking into the scene on here at all.

16         THE COURT:  But your picture is on the film, so you were

17   there.

18         THE WITNESS:  Yes, sir, I was there.

19         MR. FORD:  No further questions.

20         THE COURT:  All right.  Thank you.

21         MR. SINGH:  No further questions, your Honor.

22         THE COURT:  All right.  You're excused.

23                    (Witness Excused)

24         THE COURT:  Do you have any other evidence?

25         MR. SINGH:  No further evidence for us, your Honor.  That

60

1    closes the Government's case.

2              And I would ask for just a standing order to release all

3    of our witnesses from their subpoenas.

4              THE COURT:  They'll be released.

5              MR. SINGH:  Thank you, your Honor.

6              THE COURT:  Are you going to put on any evidence?  Are

7    you going to testify?

8              MR. FORD:  I will testify.

9              THE COURT:  You will?

10             MR. FORD:  Yes, sir.

11             THE COURT:  All right.  Excuse the jury for now.

12   We'll take a very short recess.

13             And he can be brought up to the witness stand.

14             You can take the jury out, Linda.

15      (Recess commencing at 12:14 p.m. and concluding at 12:20 p.m.)

16                        (Open Court at 12:20 p.m.)

17                          (Jury in at 12:21 p.m.)

18             THE COURT:  Do you swear to tell the truth?

19             THE WITNESS:  Yes, sir.

20        (The defendant, Jarred Javon Ford, sworn by the Court)

21             THE COURT:  In your own words, whatever you want to say

22   that's relevant and material to this trial, you can ask about.

23        A.    Yes, sir.  I was stopped on I-95 on February 4th of 2021

24   by a Nash County Sheriff's deputy.

25             During that stop, I was told that I was given a warning

JA129

61

1    ticket.  The officer returned to their vehicle to start writing the

2    warning ticket.

3              After a while, the officer returned to my vehicle, the

4    window, and asked me to step out of the vehicle.

5              At the time that I stepped out of the vehicle, I stood

6    behind my vehicle's rear driver's side light.  As soon as I stopped

7    at that position, I was asked by the officer to move towards the

8    headlight of her vehicle.  It was a female officer.  Moved to the

9    headlight.  So I moved to the headlight.

10             As soon as I reached the spot where I was asked to move,

11   the officer asked me to move back to the original spot where I

12   stopped, which was behind my vehicle at the tail -- the driver's

13   side taillight.  And then instantly again that officer asked me to

14   move back by their driver's side headlight, which was only -- two

15   spaces were only a couple of feet away, but at that point I became

16   suspicious as to the movements.  There wasn't normal.

17             I've been pulled over plenty of times.  I've never been

18   pulled out the vehicle -- well, I wasn't pulled out.  I've never

19   been asked out of the vehicle before.

20             So once I stood in front of the officer's driver's side

21   headlight, the officer asked me if they could frisk me, at which

22   point I declined to be frisked.  The officer seemed a little upset

23   and asked if I said, no, which I didn't repeat anything.

24             At that time the officer called for a back up unit.  We

25   waited a few minutes.  I looked down the highway for a second unit

62

1    to appear.  There was no conversation with me and the officer after

2    the officer asked to frisk me and I declined.

3              The second officer, a male officer, arrived.  They spoke

4    for a moment on the passenger side of the female officer's vehicle.

5    The next statement that was made was:  We're going to search you and

6    the car.

7              At that time I said, why are you going to search me and

8    the vehicle.  I told the officer that I had smoked a joint earlier

9    that day, but I don't understand why you have to search me and the

10   vehicle.

11             At that point the officers began to walk over towards me.

12   It looked like they were going to the vehicle to perform their

13   search, but they kind of just abruptly changed direction and each

14   officer grabbed one of my arms.  The female officer grabbed my left

15   arm, the male officer grabbed my right arm.

16             And at that moment I froze my body.  I didn't move.  The

17   female, she was trying to move my left arm, but I wouldn't allow her

18   to move my left arm because I didn't know what was going on.  And

19   she didn't say anything like, you're under arrest, you're being

20   detained.  She just kind of grabbed me.

21             The officer on my right arm, the male officer, he didn't

22   really, like, use a lot of force.  He was just basically holding my

23   arm because there was no tension and there was no resistance on my

24   right arm, only my left arm.

25             So at that point, the female officer she said, stop.

JA131

63

1   That was the only thing that she said.  And like I said, I wasn't

2   moving.  I kept my body still.  So I didn't really understand what

3   she was asking me to do.  I was kind of waiting for her to give me

4   an instruction to, you know, get against the vehicle, put your arms

5   -- put your hands behind your back, you're under arrest, you know.

6   Normal things that an officer would tell somebody if they're being

7   detained or arrested.

8           But it kind of caught me by surprise and it shocked me.

9   The officer, she just screamed -- she didn't really scream, but she

10  said in a pretty loud tone, she just said, he has a gun.

11          We're still in front of the vehicle.  We haven't left

12  from in front of the vehicle at this time.  She says, he has a gun.

13  And she looks to the male officer and I looked to the male officer

14  and I look in his face and he's not looking at us.  It appears he's

15  looking across the street, across the highway.

16          So I look back at her and she really is just kind of like

17  she returned to trying to manipulate my arm as if she never made

18  that statement at all, that he had a gun.

19          There was a statement made by the Officer Shelby Smith

20  that she did not -- she wasn't aware that I had a firearm on my

21  person at the time that she grabbed me prior to it being exposed, as

22  she says.

23          So after the officers grabbed me, she made that

24  declaration.  I kind of went into fear mode.  I was kind of in fear

25  for my life at that point because she just yelled out that, he has a

64

1    firearm, that she wasn't aware of at the time.

2         So I looked at the -- I looked at the male officer, like

3    I said.  I looked back at her and I was pretty -- pretty -- I took

4    that -- her saying that as basically to me being in the position I

5    was in, it kind of sounded like, shoot him at this point.

6         Because traffic stops, they -- I don't want to say

7    routinely or often, but there is a lot of traffic stop that end in

8    people being -- a suspect, detainee, defendant -- being shot and

9    killed and they don't get to testify about what happened.  So I was

10   really in fear for my life at that point.

11        At that point I did pull out a firearm, not from the

12   waistband of my pants, but from the waistband of my shorts that was

13   under my pants.  And it was kind of lower than my actual waistband

14   so that you couldn't see it.

15        I pulled out that firearm and I shot Deputy Toney one

16   time in his right arm.  He let go of me with his right arm.  He

17   yelled, I'm shot.  As he was letting go of me with his right arm, he

18   still had me with his left arm.  I lowered my firearm and I shot him

19   again in his right hip.

20        At that point he begin to fall to the ground.  I took

21   my -- I moved my -- where I was pointing the gun from his right leg

22   to his -- which would be his left arm at this point, which was the

23   opposite arm that had previously been shot, and I did pull the

24   trigger but the firearm, it jammed at that point.  I'm not

25   100 percent sure that a bullet came out at that point because the

65

1    firearm did jam.

2         I cleared the jam in the firearm and I began to try to

3    move away from the two officers. I'm in the middle of the highway

4    so there's not, like, really anywhere to go, but I'm trying to get

5    some type of cover in between me and the officer so we could -- if

6    I'm being arrested, so they could arrest me or whatever was going to

7    happen, but I was trying to avoid getting shot at that point.

8         That's when I blacked out. I completely lost

9    consciousness at that point. I don't know how much time passed, but

10   I would wake up, I was about 30 feet away from the initial site

11   where I shot Deputy Toney. I was about 30 feet laying in the grass,

12   perpendicular to the highway so I was at a 90-degree angle with the

13   highway at this point. I wake up and my right arm -- I could still

14   feel bullets being fired at me while I was laying there unconscious.

15        I was shot in my -- most of the damage -- most of the

16   gunshots are from my right side. I felt my leg and my arm on the

17   right side being hit as I was waking back up. I feel like the

18   gunshots is what woke me back up.

19        I can't -- I don't know what rendered me unconscious but

20   I believe it was a taser and then the bullets had woke me back up as

21   I laid in the field.

22        So I checked my limbs. My right arm, I tried to lift it

23   up and it just kind of flops down because I have a gun shot --

24   (indicating) -- it's at least one -- I believe it's two gunshot

25   wounds, but it's at least one gun shot wound that fractured --

1  severed the bone.  That's the exit scar.  It kinda has three

2  different parts to it.  So this arm was completely -- this hand was

3  completely useless at that point.

4          My right leg was broken.  I couldn't lift it.  I had

5  got -- I had to have surgery -- a rod put into my right thigh, the

6  whole length of my thigh.  I'm not sure where the bullet wound went

7  in.  I believe that the incision scar is where the bullet went in so

8  you can no longer see the bullet wound.  And then I was shot in my

9  left leg twice.  One on my inner thigh and on my shin, in the top of

10 the shin.

11          But when I awoke, I had -- my firearm was still in my

12 hand -- in my left hand as I lay there.  Like I said, I was still

13 being shot at by the female officer.  So in an attempt to stop her

14 from shooting at me, I did point my firearm in her direction and

15 provide myself cover fire and I shot four to five times.  I couldn't

16 recall, it was about four or five times.  And then the firearm

17 was -- it decocked.  There was no more bullets in the firearm.  So

18 the slide, it locked to the back.

19          At that point I can't move and there's no bullets in this

20 firearm.  I toss the firearm a short distance.  I didn't have a very

21 lot of strength left, but I tossed it away from me so that when I

22 was approached by officers, they wouldn't still see a firearm in my

23 hand.

24          So I tossed the firearm and I laid there.  I was having

25 trouble breathing so I rolled over to my left side.  I elevated my

67

1  right side.  I'm laying on the ground.  And a couple seconds later,
2  I was shot a final time in my back.
3         I have a gunshot wound in my back.  I don't have any
4  gunshot wounds to my chest, just in my left leg, my right leg, my
5  right arm and my back.
6         The three -- the two of the three shots that went to my
7  arm, they're -- (indicating) -- second one went in through there and
8  it came out under there.
9         My arm was straight and to my side when I sustained these
10 three injuries and the reason why I know that is because there's a
11 bullet wound that if I touch this exit wound to my side, there's
12 another bullet wound right there.  And if I touch this exit wound to
13 the side of my butt cheek, there's an incision there.  And it's not
14 from surgery, it's from a bullet wound.
15        So at that time that I was shot by Shelby Smith, it
16 wasn't during a physical altercation with her and Deputy Toney, I
17 was -- to my knowledge I was unconscious and my arm was straight
18 down to my side.
19        After that I laid on the ground -- after I had thrown the
20 firearm a short distance away, I laid on the ground.  And like I
21 said, I was shot in the back.  Once I was shot in the back, I laid
22 back down on my back and I just laid there until the ambulance came.
23        As the ambulance came, a couple people started to get out
24 with the stretcher.  And I believe it was the first ambulance that
25 arrived to the scene.  They started unloading the stretcher.  They

68

1   got out.

2          A state trooper -- I didn't see his vehicle, but I seen a

3   state trooper.  He came in between the ambulance and Officer Toney's

4   truck.  And he said, there's one over here, don't let him die.  He

5   ran up to me.  He kicked the gun away from me towards the tree line.

6          At that time, the medical -- the medical crew that came

7   out of the ambulance, they came and put me on a stretcher.

8   Immediately loaded me into the ambulance and we were leaving.

9          They asked me a few question.  They asked me if I knew

10  where I was at and I told them North Carolina.  They asked me if I

11  knew the date and I either told them February 3rd or February 4th, I

12  couldn't remember at the time.  They asked me if I knew what

13  happened and I told them that I had been shot.

14         And at that point I was injected with something in my

15  neck that put me to sleep and I remained asleep for the next two

16  days.  I didn't wake up until February the 6th in the hospital, in

17  Vidant Medical Center.  I had had surgeries, metal rods put into

18  my -- put into my body.

19         And I was able to phone home at that time and I found out

20  from my father that -- he was notified by a news company -- like a

21  TV news station, they called him, and that's how he found out about

22  what had happened to me.  Actually, they called his girlfriend first

23  and then they called my sister and then they called my dad and then

24  the news company called my dad and that's how he figured out I was

25  injured.  And I didn't get to speak with him until two days after

the incident.

During the two days that I was unconscious, I don't -- I was unconscious.  A medically-induced coma is what I put it.  And I'm not exactly sure what happened to me during that time.

There's been a lot of inconsistent statements from the Nash County Sheriff's Office who investigated this -- this incident and they really -- they don't really add up with what has been testified to today.

One thing that I notice that was shown at this trial was when Shelby Smith's body camera was turned on, you don't hear music playing like you do in her dash cam video, the inward dash cam video.  You hear a nice song playing in the background, you don't hear that on the body cam, which has led me to believe that after the incident transpired, the Nash County Sheriff's Office created a new video with somebody that looked similar to me and they are trying to pass that off as the authenticated version.

One thing that wasn't mentioned was that both Officer Toney and Officer Shelby's in-vehicle videos were corrupted when they were trying to take them out of the vehicle.  I guess the investigating officer stopped the -- he pulled the SD cards out too quickly and the video wasn't properly saved and they had to send them to a third party and get them repaired.  And then they eventually got around to distributing it to the prosecutor.  And I didn't get the videos until a couple months ago and this case is 18-months' old.

70

1          That's really the only inconsistency between what was

2     testified and what I know to my mental -- that I could think of.

3     The videos weren't played in whole so I can't really express the

4     fact that they're --

5          THE COURT:  You're supposed to testify about what

6     happened that day, not about your opinions and things that are

7     irrelevant.

8          THE WITNESS:  Okay.

9          THE COURT:  Do you have anything else to say?

10    A.   I believe that it is relevant that if the Nash County

11    Sheriff's Office is fabricating evidence --

12         THE COURT:  I can't hear you.

13    A.   I said I believe that it is relevant that if the Nash

14    County Sheriff's Office is fabricating evidence, that the jury

15    should be aware of that and should be able to look and determine for

16    themselves if they feel that the videos and the audios that they're

17    receiving are authentic.

18         I was just giving them -- letting them know what happened

19    from my perspective so that they can compare that to what they see.

20         I have tattoos on both of my hands.  In some of the

21    scenes you'll notice that the person that is supposed to be me

22    doesn't have tattoos on their hands.

23         And just the whole energy of the situation, the officer

24    they say -- officer was shot, but it really seemed like that the

25    energy that you would expect, the intensity that you would expect

71

1    was not there in these videos that I say that they're fabricating.

2            It's up to the jury to decide whether they believe that

3    or not.  And that is my -- what happened.

4            THE COURT:  Do you have any questions?

5            MR. SINGH:  Briefly, your Honor.

6            THE COURT:  Go ahead.

7                        **CROSS-EXAMINATION**

8    BY MR. SINGH:

9        Q.   Mr. Ford, you were driving down from New York that day,

10   correct?

11       A.   Yes, sir.

12       Q.   And you were headed to Florida?

13       A.   Yes, sir.

14       Q.   Okay.  And you say you were pulled over by Nash County on

15   I-95, right?

16       A.   Yes, sir.

17       Q.   Okay.  You're left-handed, correct?

18       A.   I am left-handed.

19       Q.   Okay.  And you mentioned that you were resisting on your

20   left-hand side.  Like your left arm, you said, was being held

21   straight; is that right?

22       A.   The detention was on my left arm; yes, sir.

23       Q.   Okay.  And then you said that you did pull the firearm

24   from your person?

25       A.   Yes, sir.

72

```
 1        Q.    Okay.  Where on your person was the firearm?
 2        A.    The firearm was on my person.  It was on my -- in the
 3   waistband of my shorts, which were not directly behind the waistband
 4   of my sweatpants.  It was at a lower level.  So that if you observed
 5   my sweatpants, you wouldn't be able to see the firearm at all.  It
 6   was not exposed at all.
 7        Q.    Is it fair to say that you had the firearm concealed
 8   then?
 9        A.    Yes.
10        Q.    Okay.  You mentioned that you fired your gun multiple
11   times, correct?
12        A.    Yes.
13        Q.    And you mentioned that you emptied the clip?
14        A.    I fired four to five shots and that was all that was in
15   the clip at that time.
16        Q.    Okay.  And you did mention that you shot -- you remember
17   shooting Deputy Toney?
18        A.    Yes, sir.
19        Q.    Okay.  And you said you shot him in his arm and his hip?
20        A.    In his right arm, in his right leg/hip area and possibly
21   in his left arm, but I'm not sure if the bullet actually discharged
22   at that point.
23        Q.    Okay.
24              MR. SINGH:  No further questions, your Honor.
25              THE COURT:  All right.  We'll be in recess for your lunch
```

73

```
1    now and resume at 2 o'clock.  Court will be in recess until 2.

2                MR. SINGH:  Thank you, your Honor.

3                        (Jury out at 12:43 p.m.)

4                     (Recess commencing at 12:43 p.m.)

5      (The defendant, Jarred Javon Ford, escorted out of the courtroom

6                     from the witness stand at 12:44 p.m.)

7        (The defendant, Jarred Javon Ford, returned to the courtroom

8                             at 1:55 p.m.)

9                  (Recess concluding at 2:04 p.m.)

10                      (Open Court at 2:04 p.m.)

11                        (Jury not present)

12               THE COURT:  Mr. Ford, do you have any other evidence or

13   witnesses?

14               MR. FORD:  No, sir.

15               THE COURT:  Okay.  Does the Government have any rebuttal?

16               MR. SINGH:  We do not, your Honor.

17               THE COURT:  Okay.  We'll go into the charge conference.

18               MR. SINGH:  Thank you, your Honor.

19               THE COURT:  I'll give the elements of this very plain

20   crime under 18 U.S. Code 922(g)(1).  The elements are that the

21   defendant had a firearm in his possession; that the firearm moved in

22   interstate or foreign commerce; that he was previous to that time a

23   felon; and that he knew he was a felon.

24               And those are all of the essential elements and I will so

25   charge and give the jury just general instructions on their duty and
```

74

1    how to examine the witnesses and the evidence.

2            Are you good with that?

3            MR. SINGH:  I am, your Honor.  Thank you.

4            THE COURT:  Okay.  Thank you.

5            Do you want to bring the jury back in and we'll just be

6    at ease for a minute.

7            Okay.  We'll step off the bench and we'll bring the jury

8    in and you'll go first.

9            Now, don't move yet.  So I would like you, please, to

10   make your closing argument from the table so that there's no

11   difference between -- you can make your closing argument again from

12   the table there.

13           MR. FORD:  Yes, sir.

14           MR. SINGH:  Thank you, your Honor.

15       (The Court at ease commencing at 2:06 p.m. and concluding

16                          at 2:07 p.m.)

17   (The defendant, Jarred Javon Ford, remained in the courtroom during

18                          the recess)

19                   (Open Court at 2:07 p.m.

20                     (Jury in at 2:07 p.m.)

21           THE COURT:  We're almost to the end of the trial.  You've

22   heard all the testimony and the evidence from both sides.

23           At this point, the lawyer and -- the Government lawyer

24   and the defendant may make their closing argument.  And they're

25   going to stay at their tables to do that.  So pay attention.

JA143

1          And I'll recognize the Government for opening argument.

2          MR. SINGH:  Thank you, your Honor.

3                          **CLOSING ARGUMENT**

4                          (By Mr. Singh)

5          "My firearm was in my left hand and I shot it four or

6  five times."  My firearm was in my left hand and I shot it four or

7  five times."

8          Those are the defendant's words.  Those aren't my words,

9  that's not Nash County's words.  Those are the defendant's words.

10 So if nothing else, take the defendant's words.

11         But let's go over the evidence from this case.

12         So we mentioned at the beginning that the sole charge in

13 the indictment is possession of a firearm by a convicted felon on

14 February 4th, 2021.  And that's the question for y'all today.  Did

15 we, as the Government, prove that case beyond a reasonable doubt.

16         So in order to do that, we have four main elements that

17 we have to prove to y'all.  And these are factual thresholds that we

18 have to meet beyond a reasonable doubt in order to show a guilty

19 conviction, okay.

20         So the first element is prior to February 4th, 2021, the

21 defendant had been convicted of a crime punishable by a term of

22 imprisonment exceeding one year.  So that the defendant was a

23 convicted felon.

24         Element two.  That the defendant knew and had knowledge

25 he was a convicted felon prior to that date.

76

1         Element number three is that the defendant knowingly
2    possessed a firearm.

3         And element four is that that firearm traveled in or
4    affected interstate or foreign commerce.

5         So those are the four elements.

6         So the first two elements are taken care of.  We talked
7    earlier about stipulations.  I read those into the records.  The
8    parties have agreed as fact and the jury is to accept as fact that
9    the first two elements of this case are met.  Prior to February 4,
10   2021, Mr. Ford, the defendant, knew he was convicted of a felony and
11   had been convicted of a felony.  So the first two elements are taken
12   care of.

13        That leaves us with element three.  Did the defendant
14   knowingly possess a firearm.  Now, again, I'm going to defer you to
15   the defendant's words.  The defendant's words under oath on the
16   stand were that he held his firearm in his left hand and discharged
17   it between four and five times, but there's some evidence -- there's
18   some other evidence I'd ask you to consider as well.

19        So first let's talk about what we saw in the various
20   camera footages.  We watched Deputy Shelby's body camera footage.
21   We watched her dashboard camera footage.  We watched Deputy Toney's
22   body camera footage and his dashboard camera footage.  On all of
23   those events, nothing is different.  We can all see what happened
24   during that day.  There was a tussle during which the defendant drew
25   his firearm and began firing at Deputy Toney and Deputy Shelby or --

JA145

1    Deputy Smith.

2          Now, the ammunition from the defendant's car, that was

3    brought in by David Marks.  That ammunition was 9mm ammunition, as

4    were the shell casings that were found on scene.  And the firearm

5    that the defendant possessed that day was also a 9mm caliber

6    firearm.  Inside the defendant's car, there was also an extended

7    magazine that was filled with 30 rounds of 9mm ammunition.  And,

8    again, there was also that bag of separate rounds that were found in

9    the car as well.

10         The defendant's body language -- this is something that

11   Deputy Smith talked about -- that he was consistently holding his

12   left arm down.  That was something that even the defendant talked

13   about on the stand.  That when he was initially approached, he held

14   his left arm very stiff.

15         The defendant was trying to reach for the gun and then,

16   again, the body camera footage.

17         Now, there was one thing the defendant made note of on

18   the stand that I'd like to clarify.  The defendant mentioned that in

19   the dashboard camera footage from Shelby Smith's car, you could hear

20   music, but from her body camera footage, you couldn't.  And the

21   simple reason for that, folks, is the dashboard camera footage is

22   from inside a car and there was simply music playing in the car and

23   that music is not going to be heard outside on the body camera

24   footage.  So those are the facts about the defendant knowingly

25   possessed a firearm.

JA146

78

1          And, again, I would remind you of some of the clips.

2     Now, keep in mind, the evidence and exhibits that we admitted at

3     trial, y'all are going to be able to have the opportunity, after

4     this, in deliberation to review it.  You can watch the video, you

5     can watch the clips, but I would direct you to some of these still

6     photos that we entered into evidence.

7          This is from Deputy Toney's body camera footage.  Here

8     you can see the defendant in all yellow holding that firearm in his

9     left hand as he later told us on the stand.

10          This is another such photo in which you can see the

11     defendant's finger clearly around the trigger.

12          And lest we forget, this is a still shot from Deputy

13     Connie's body camera footage when Deputy Toney was being treated by

14     EMS.  And I know the defendant has argued some things are

15     fabricated, but let me just be very clear.  Nothing in this case is

16     fabricated.  That is a very real bullet wound in Deputy Toney's

17     forearm.  That is a very real EMS technician applying assistance.

18     And when Deputy Toney was on the stand today and showed you a round

19     that is still in his forearm, I assure you, that is very real.

20          So the third element, that the defendant knowingly

21     possessed a firearm, we have met our burden on that.

22          And finally, that the firearm traveled in interstate

23     commerce.  When the defendant was on the stand on cross-examination

24     I confirmed with him that he was traveling down from New York that

25     day.  So physically, he put the firearm in interstate commerce.  But

1  you also heard from ATF Senior Special Agent John Griffin.

2          Senior Special Agent John Griffin, who we qualified as an

3  expert on firearms, was able to produce that eTrace form to you,

4  which you're also going to be able to look at when you deliberate.

5  That eTrace form tells us the origin of the firearm.  And what we

6  were able to determine from that was not only was it manufactured in

7  Brazil, therefore, affecting international commerce, but it was

8  originally purchased in Florida.  And, therefore, for it to have

9  traveled in North Carolina, it must have traveled in interstate

10 commerce.

11         And that is our showing today and that is how we have

12 proved all four elements beyond a reasonable doubt.

13         Thank you for your time today.

14         THE COURT:  Mr. Ford, do you want to say anything to the

15 jury?

16         MR. FORD:  I didn't hear you, sir.

17         THE COURT:  Do you want to say anything to the jury by

18 way of a closing argument?

19                        **CLOSING ARGUMENT**

20                        (By Mr. Ford)

21         Just want to let the jury know that I testified

22 truthfully, even if it did implicate me in some ways and just

23 that -- and the evidence fabricated against me in this case.

24         That's all.

25         THE COURT:  Do you have any rebuttal?

80

1          MR. SINGH:  I do not, your Honor.

2                        **JURY CHARGE**

3                        (by the Court)

4          All right.  Ladies and gentlemen, you've heard all the

5     evidence and the arguments in the case.

6          You will have with you in the jury room as soon as you go

7     in a special verdict form.  And it says, we, the jury, find the

8     defendant, Jarred Ford, on the sole count of the indictment,

9     possession of a firearm by a convicted felon, either guilty or not

10    guilty.

11         And when you've reached your unanimous verdict, you will

12    fill that out and your foreperson will sign it and that will be the

13    conclusion of the trial.

14         I'll give you some more details and tell you exactly

15    about the elements that the Government has to prove.

16         It's my duty to give you instructions on the law.  You're

17    the judge of the facts.  You decide what actually happened.  It's my

18    duty to preside over the trial.  You're the judge of the facts.

19         You have to follow the Court's instructions.  You can't

20    substitute your own opinion of what the law is or ought to be.  It's

21    your duty to base your verdict solely upon the testimony and the

22    evidence in the case without any prejudice or sympathy.  That's the

23    promise you made when you were selected as a juror in this case.

24         It's your duty to determine the facts.  You must consider

25    the evidence.  It's the sworn testimony and any things, images or

JA149

81

1    items that are offered into evidence.

2            You'll remember that the statements by the lawyer are not

3    evidence in the case.  The defendant's statements, other than his

4    testimony on the witness stand, is not evidence in the case.

5            You're permitted to draw such reasonable inferences from

6    the testimony and the exhibits that you feel are justified in the

7    light of your experience.

8            You may consider both the direct and the circumstantial

9    evidence.

10           The law requires that you weigh all the evidence and be

11   convinced of a defendant's guilt beyond a reasonable doubt before a

12   person can be convicted of a crime.

13           I've said you must consider all the evidence.  This does

14   not mean that you must accept all of the testimony and evidence as

15   true.  You are the sole judge of the credibility or believability of

16   any witness and the importance you want to place on that testimony.

17           In weighing the testimony of a witness, you may consider

18   that person's relationship to one side or the other in the case.

19   The interest, if any, that the person has in the outcome.  The

20   person's manner of testifying.  The person's opportunity to observe

21   or acquire knowledge about the facts that the witness testifies to.

22   A witness's candor, fairness and intelligence and the extent to

23   which what the witness tells you is either supported by or

24   contradicted by other evidence you believe in the case.

25           You're entitled to accept or reject the testimony of any

82

1  witness in whole or in part.

2        A witness can be discredited by showing that they

3  testified falsely about an important matter.

4        A separate crime is charged against the defendant in the

5  indictment.  The evidence pertaining to it should be considered

6  separately.  The case of the defendant is to be considered

7  separately.

8        You're here to determine the guilt or innocence of the

9  defendant from the evidence received in this case.

10        The defendant's not on trial for any other act or conduct

11  or offense not alleged in this indictment.

12        The matter of punishment that the law might provide for

13  any crime is a matter left exclusively within the authority of the

14  Court and should not be considered by you as jurors in reaching your

15  independent verdict.

16        The indictment or charge against the defendant is not

17  evidence of guilt.  The defendant is presumed by the law to be

18  innocent.  The law does not require a defendant to prove his

19  innocence or to produce any evidence at all.

20        The Government has the burden of proving a person guilty

21  beyond a reasonable doubt and if it fails to do so, you must find

22  the person not guilty.

23        While the Government's burden of proof is a strict or

24  heavy burden, it is not necessary that a defendant's guilt be proved

25  beyond all possible doubt.  What is only required is that the

1    Government's proof exclude any reasonable doubt concerning a

2    defendant's guilt.

3           If you are convinced the defendant has been proven guilty

4    beyond a reasonable doubt, then it would be your duty to say that.

5    If you're not so convinced, then it would be your duty to say that.

6           Count One of the indictment, the only charge, is that on

7    or about February 4th, 2021, in the Eastern District of North

8    Carolina, the defendant, Jarred Ford, knowing that he had been

9    convicted of a crime punishable by imprisonment for a term exceeding

10   one year, knowingly possessed a firearm and the firearm was in and

11   affecting commerce in violation of Title 18, Section 922(g)(1) of

12   the United States Code.

13          That law makes it unlawful for any person who's been

14   convicted in any court of a crime punishable by imprisonment for a

15   term exceeding a year to knowingly possess, in or affecting

16   commerce, any firearm.

17          In order to prove the essential elements of the offense

18   charged, the Government has to establish beyond a reasonable doubt,

19   first, that the defendant knew -- knowingly possessed a firearm;

20          Second, that at the time the defendant possessed the

21   firearm, the defendant had previously been convicted in a court of a

22   crime punishable by imprisonment for a term exceeding one year;

23          Third, that at the time of the crime charged in this

24   indictment, the defendant knew that he had been previously convicted

25   of such an offense, and;

84

1          Finally, that the firearm at some point in its existence

2   had traveled in interstate or foreign commerce.  That is, that

3   before the defendant possessed the firearm, the firearm traveled at

4   some time between one state and another or from a place outside the

5   United States into the United States.

6          The term "firearm" means a weapon which may be used to

7   expel a bullet or projectile by the action of an explosion by

8   shooting it.

9          The term "crime punishable by imprisonment for a term of

10  one year" means the crime is a felony.

11          "In or affecting commerce" means moving from once place

12  to another, outside of North Carolina into North Carolina.

13          Let's see.  You'll have this verdict form and the

14  indictment with you.

15          Upon retiring to your jury room to begin your

16  deliberations, select one of your group to act as your foreperson.

17  That person will preside over your deliberations and will be your

18  spokesperson here in court.

19          Your verdict must represent the collective judgment of

20  all of you.

21          In order to return a verdict, it's necessary that each

22  juror agree to it.  Your verdict must be unanimous.

23          It's your duty as jurors to consult with each other and

24  to deliberate with each other with a view toward reaching an

25  agreement if you can do so without compromise to your individual

85

1   judgment.  Each of you must decide the case for himself or herself,

2   but you're to do so only after an impartial consideration of the

3   evidence in the case with your fellow jurors.

4           In the course of your deliberations, do not hesitate to

5   re-examine your own views and change your opinion if you are

6   convinced it is in error.  However, you're not required to surrender

7   your honest conviction solely because of the opinion of a fellow

8   juror or for the purpose merely of returning a unanimous verdict.

9           Remember, ladies and gentlemen, at all times you are not

10  partisans, you don't have a side in the case.  You are the judge.

11  You're the judge of the facts in this case.  Your sole and only

12  interest is to seek the truth from the evidence received at trial.

13          If you need to communicate with the Court, write it out

14  on a piece of paper and give it to the Marshal who will be attending

15  you.  I'm not suggesting you do, but that's how you would do it if

16  you had a question or had some matter you wanted me to know about.

17          Let's see.  The alternate will be thanked and you won't

18  have to go into the jury room because we have a full jury.

19          And with that, I'll excuse you now and you can begin your

20  deliberations.

21          We'll be in recess.

22          You can take the jury out.

23      (Jury escorted out to commence deliberations at 2:26 p.m.)

24      (The defendant, Jarred Javon Ford, escorted out at 2:27 p.m.)

25    (The Court at ease for jury deliberations commencing at 2:26 p.m.)

86

1     (The defendant, Jarred Javon Ford, returned to the courtroom

2                          at 2:41 p.m.)

3          (Informal recess concluding at 2:43 p.m.)

4                     (The jury in at 2:43 p.m.)

5                     (Open Court at 2:44 p.m.)

6          THE COURT:  Have you selected one of your group to be the

7     foreperson?  Who is that?

8          THE FOREPERSON:  I am, your Honor.

9          THE COURT:  Okay.  Without telling me, has the jury

10    reached a unanimous verdict?

11         THE FOREPERSON:  Yes, your Honor.

12         THE COURT:  Okay.  If you'll pass that up to the clerk.

13    (The deputy clerk retrieving the verdict from the foreperson.  The

14         deputy clerk tendering the verdict to the Court)

15         THE COURT:  You can have a seat.

16         We, the jury, find the defendant, Jarred Ford, on the

17    sole count of the indictment, possession of a firearm by a convicted

18    felon, guilty.

19         Thank you, ladies and gentlemen, for your service.  This

20    was a very important case, as I think you understand.  And even

21    though it was done expeditiously, it is in the interest of justice.

22    So thank you very much for your service.

23         You're excused.

24              (Jury excused at 2:46 p.m.)

25         THE COURT:  I'll order a pre-sentence report and set

JA155

87

1    sentencing for the week of November 14th.

2            He'll be continued in detention awaiting the imposition

3    of sentence.

4            Thank you for your service.

5            MR. SINGH:  Thank you, your Honor.

6            THE COURT:  We'll be in recess.

7

8

9            (Proceedings concluding at 2:47 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

88

```
 1                    UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF NORTH CAROLINA

 3

 4                    CERTIFICATE OF OFFICIAL REPORTER

 5

 6            I, Michelle A. McGirr, RMR, CRR, CRC, Federal

 7    Official Court Reporter, in and for the United States District Court

 8    for the Eastern District of North Carolina, do hereby certify that

 9    pursuant to Section 753, Title 28, United States Code, that the

10    foregoing is a true and accurate transcript of my stenographically

11    reported proceedings held in the above-entitled matter and that the

12    transcript page format is in conformance with the regulations of the

13    Judicial Conference of the United States.

14

15    Dated this 16th day of November, 2022

16

17                              /s/ Michelle A. McGirr
                                MICHELLE A. McGIRR
18                              RMR, CRR, CRC
                                U.S. Official Court Reporter
19

20

21

22

23

24

25
```

FILED IN OPEN COURT ✓
ON 8/25/2022
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CR-105-BO

UNITED STATES OF AMERICA )
)                  **GOVERNMENT'S**
v. )                 **SPECIAL**
)                  **VERDICT FORM**
JARRED JAVON FORD )
Defendant )

We, the Jury, find as to the Defendant, JARRED JAVON FORD, on the sole count of
the Indictment, Possession of a Firearm by a Convicted Felon:

_____✓_____    Guilty

_____    Not Guilty

**REDACTED VERSION**
Pursuant to the E-Government Act and the
federal rules, the unredacted version of
this document has been filed under seal.

_____          25 Aug 2022
FOREPERSON'S SIGNATURE          DATE

3

JA158

Dear Clerk,

Please find attached my Notice of Appeal. I'm trying to find out how to request authorization to order transcripts prior to sentencing. If authorized I will need a transcript order form as well as the Criminal Justice Act Form 24 to request the government pay for the transcripts. I also need to request special authorization to include the Government's closing statement in my transcript under the CJA. I read that copies of the transcript will be re arranged by the district court, but I'm not sure if I need to provide additional copies of my Notice of appeal to comply with Rule 3.

In addition I have a civil case cause# 5:22-CT-3131-M that I need to request an update on. I don't know if I am required to do anything at this time or if I'm waiting for the answers of the defendants in this case.

Thank you for your time

_Jarred Farel_  Jarred Farel 8/30/22

JA159

FILED

SEP 0 7 2022

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

United States District Court
for the Eastern district of North Carolina
Western Division     No. 5:21-CR-105-1BO(2)

Jarred Javon Ford     )
                             )
                             )
v                       )     *Notice of Appeal*
                             )
United States of America )

    COMES NOW, undersigned defendant, Jarred Javon Ford, Pro Se,
appeal to the United States Court of Appeals for the Fourth Circuit
from the Final Judgement entered on August 25th 2022.

    Submitted this the 30th day of August 2022.

Jarred Javon Ford
Jarred Javon Ford

JA160

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**
LEWIS F. POWELL, JR. UNITED STATES COURTHOUSE ANNEX
1100 EAST MAIN STREET, SUITE 501
RICHMOND, VIRGINIA  23219-3517
WWW.CA4.USCOURTS.GOV

PATRICIA S. CONNOR
CLERK

TELEPHONE
(804) 916-2700

September 8, 2022

Peter A. Moore, Jr., Clerk
United States District Court
Eastern District of North Carolina
Post Office Box 25670
Raleigh, NC 27611

Re:  **US v. Jarred Javon Ford**
          5:21-cr-00105-BO

Dear Clerk:

Review of the district court docket discloses that the district court has not yet
entered judgment in this case. Under Fed. R. App. P. 4(b)(2), a notice of appeal
filed after a decision, sentence, or order is announced but before judgment is
entered, is treated as filed on the date of and after entry of judgment.

This court will treat the notice of appeal as filed as of the date the district court
enters its judgment and will docket the appeal following entry of judgment.
Please notify this court upon entry of the judgment.

Yours truly,

/s/ T. Fischer

cc:   Rosemary Goodwin, Esq.
       Aakash Singh, Esq.

JA161

**APPEAL TRANSMITTAL SHEET (non-death penalty)**

| | | |
|---|---|---|
| **Transmittal to 4CCA of notice of appeal filed:** _09/07/22_ | **District:** Eastern District of North Carolina | **District Case No.:** 5:21-CR-105-1BO |
| ✓ First NOA in Case | **Division:** Western | **4CCA No(s). for any prior NOA:** |
| ___ Subsequent NOA-same party | | |
| ___ Subsequent NOA-new party | **Caption:** | **4CCA Case Manager:** |
| ___ Subsequent NOA-cross appeal | | |
| ___ Paper ROA    ___ Paper Supp. | USAv. Jarred Ford | |
| Vols: _____ | | |
| Other: _____ | | |

**Exceptional Circumstances:** ___ Bail  ✓ Interlocutory  ___ Recalcitrant Witness  ___ Other _____

| | |
|---|---|
| **Confinement-Criminal Case:** | **Fee Status:** |
| ___ Death row-use DP Transmittal | ___ No fee required (USA appeal)   ___ Appeal fees paid in full   ✓ Fee not paid |
| ___ Recalcitrant witness | **Criminal Cases:** |
| ✓ In custody | ✓ District court granted & did not revoke CJA status (continues on appeal) |
| ___ On bond | ___ District court granted CJA & later revoked status (must pay fee or apply to 4CCA) |
| ___ On probation | ___ District court never granted CJA status (must pay fee or apply to 4CCA) |
| **Defendant Address-Criminal Case:** | **Civil, Habeas & 2255 Cases:** |
| USM custody pending sentencing hearing | ___ Court granted & did not revoke IFP status (continues on appeal) |
| | ___ Court granted IFP & later revoked status (must pay fee or apply to 4CCA) |
| | ___ Court never granted IFP status (must pay fee or apply to 4CCA) |
| **District Judge:** | **PLRA Cases:** |
| Terrence W. Boyle | ___ Proceeded PLRA in district court, no 3-strike determination (must apply to 4CCA) |
| | ___ Proceeded PLRA in district court, determined to be 3-striker (must apply to 4CCA) |
| **Court Reporter** (list all): | |
| Michelle McGirr | **Sealed Status** (check all that apply): |
| | ✓ Portions of record under seal |
| | ___ Entire record under seal |
| | ___ Party names under seal |
| | ___ Docket under seal |
| **Coordinator:** Shelia Foell | |

| **Record Status for Pro Se Appeals** (check any applicable): | **Record Status for Counseled Appeals** (check any applicable): |
|---|---|
| ___ Assembled electronic record transmitted | ___ Assembled electronic record available if requested |
| ___ Additional sealed record emailed to 4cca-filing | ___ Additional sealed record available if requested |
| ___ Paper record or supplement shipped to 4CCA | ___ Paper record or supplement available if requested |
| ___ No in-court hearings held | ___ No in-court hearings held |
| ___ In-court hearings held – all transcript on file | ___ In-court hearings held – all transcript on file |
| ✓ In-court hearings held – all transcript not on file | ___ In-court hearings held – all transcript not on file |
| ___ Other: | ___ Other: |

Deputy Clerk: _Shelia Foell_    Phone: _252-830-2330_    Date: _09/08/22_

01/2012

JA162

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
            vs.                )    5:21-CR-105-1BO
                               )
JARRED JAVON FORD,             )
                               )
            Defendant.         )
_____)
```

NOVEMBER 15, 2022
MOTIONS HEARING
BEFORE THE HONORABLE TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

<u>On behalf of the Government</u>:

AAKASH SINGH, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
aakash.singh@usdoj.gov

<u>On behalf of the Defendant</u>:

(Defendant is pro se and was not present)

Glenda L. Biggerstaff, Court Reporter
WORDSERVICES, INC.
3103 Virginia Pine Lane
Apex, North Carolina  27539
919.548.4914
wanda@mywordservices.com
Stenomask with computer-aided transcription

JA163

2

```
 1          (Tuesday, November 15, 2022, commencing at 2:47 p.m.)
 2          (The Defendant was not present.)
 3               THE COURT:  Here's the Ford case.  Do we need to
 4    continue that?
 5               THE CLERK:  Yes.
 6               THE COURT:  Because of the --
 7               MR. SINGH:  Yeah.  The --
 8               THE COURT:  Are you involved in that case?
 9               MR. SINGH:  That's my -- that's the case that we
10    tried, Your Honor.  That was that one-day trial.
11               THE COURT:  This is the shootout where the female
12    deputy rolled across the ditch?
13               MR. SINGH:  Correct.  Correct.  So if you remember
14    Deputy Tony, the one with the round in his arm?
15               THE COURT:  Yeah.
16               MR. SINGH:  So he recently got that removed
17    surgically, and he developed, unfortunately, a surgery
18    infection.
19               THE COURT:  And he wants to be here for the
20    sentencing?
21               MR. SINGH:  He does.  He does.  He was -- he was the
22    officer -- he was the deputy that's -- got shot multiple times.
23               THE COURT:  Yeah.  I remember.  And what is -- he --
24    what's -- what's his projected sentence?  What's he got --
25               MR. SINGH:  Well, he's -- he's -- he's 360 to life.
```

JA164

3

1    He's 360 to life.  The event that's 360 to life is capped at

2    ten.

3              THE COURT:  Is he an ACCA?

4              MR. SINGH:  He's not.  No.  He's got a couple of

5    priors, but I think one of them -- only one of them would be --

6              THE COURT:  Well, what was he -- he was convicted of

7    felon in possession of a firearm.

8              MR. SINGH:  Correct.  The instant conviction at trial

9    was felon in possession of a firearm.

10             THE COURT:  And -- and what's he being sentenced for?

11   Felon in possession of a firearm.

12             MR. SINGH:  Uh-huh.  Uh-huh.  But he got cross-

13   referenced with attempted murder, so his guidelines go up to

14   360 to life.

15             THE COURT:  But -- but the cap is ten years.

16             MR. SINGH:  Correct.  Correct.  Correct.  Yeah.

17             THE COURT:  So he's just gonna get the ten years.

18             MR. SINGH:  Yeah.

19             THE COURT:  Okay.  You're telling me that his

20   guideline, if there was no statutory cap, is 360 to life.

21             MR. SINGH:  Correct.

22             THE COURT:  But because of his plea, he's got a

23   ten-year cap.

24             MR. SINGH:  Well, so the only charge we could charge

25   him with for the conduct was firearm by a felon.

JA165

4

```
 1              THE COURT:  Okay.

 2              MR. SINGH:  And so because of that, yeah, he's a

 3    ten-year cap on that conviction.

 4              THE COURT:  He's got a -- so what -- where's the

 5    mystery?  I mean --

 6              MR. SINGH:  There's no -- there's no mystery.  I just

 7    -- I just want to -- I just want to see if there's any

 8    opportunity to ensure that the victim gets the chance to

 9    allocute, but that's it.  There's no mystery.  I -- I -- I

10    don't think he's actually filed any objections to the PSR

11    either.

12              THE COURT:  Well, he's representing himself, isn't

13    he?

14              MR. SINGH:  Yeah.

15              THE COURT:  Did you want to do it tomorrow, or not?

16              MR. SINGH:  I think -- I -- the -- I think the

17    problem if we do it tomorrow, Your Honor, would be that we

18    wouldn't be able to bring the victim -- I think we wouldn't

19    have -- wouldn't be able to bring him into court.  I think his

20    -- I think he's still healing.

21              THE COURT:  Well, could he come Thursday?

22              MR. SINGH:  I will find out.  I can find out.

23              THE COURT:  Otherwise, I'm not sure I'll be back here

24    in December.

25              MR. SINGH:  How --
```

5

```
 1            THE COURT:  I -- I don't -- I don't have any court
 2   scheduled right now in December.  It's in Elizabeth City.
 3            MR. SINGH:  And the last -- obviously, next week is
 4   Thanksgiving, but the week after that, the -- the 28th, is that
 5   in Elizabeth -- is that --
 6            THE COURT:  Yeah.  It's in Elizabeth City.
 7            MR. SINGH:  Elizabeth City.  I mean, I -- we gotta go
 8   where the Court is, I guess.
 9            THE COURT:  Well, check and see if he'll -- he's able
10   to come in on Thursday.
11            MR. SINGH:  Okay.
12            THE COURT:  So we'll continue it from tomorrow and
13   revisit it if you can do it Thursday.
14            MR. SINGH:  Okay.
15            THE COURT:  Who's the lawyer?  There's no lawyer.
16            MR. SINGH:  No lawyer.
17            THE COURT:  So none at all.
18            MR. SINGH:  None at all.
19            THE COURT:  Okay.  So that's easy.
20            MR. SINGH:  Yeah.  And my -- my -- you know, my
21   assumption is he'll -- his objections would probably just be to
22   everything.
23            THE COURT:  Yeah.
24            MR. SINGH:  Yeah.  So --
25            THE COURT:  All right.  Let me give you this file.
```

6

```
1           MR. SINGH:  Thank you, Your Honor.  I appreciate it.

2           THE COURT:  And we'll see if we can get it done

3   Thursday.

4           MR. SINGH:  Okay.  Thank you, Your Honor.

5           THE COURT:  We'll be in recess.

6       (Proceedings end at 2:51 p.m.)

7           _____

8                       (END OF TRANSCRIPT.)

9           _____

    NORTH CAROLINA

    SCOTLAND COUNTY

    I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT

    OF SAID PROCEEDINGS.

    /s/ GLENDA L. BIGGERSTAFF        6/19/23
    GLENDA L. BIGGERSTAFF            DATE
    Contract Court Reporter
```

FILED

DEC 19 2022

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

Clerk of the Court,        Case: USA vs. Ford / 5:21-cr-00105-BO

     I recieved a notice on November 10th 2022, of the electic filing of document 70 which stated my sentencing hearing was scheduled for November 16th 2022. I was not brought to court on November 16th and have not recieved any correspondence saying the sentencing hearing was rescheduled. At your earliest convience please send me an update to the current status of my case. Additionally, if possible please send me a form to request transcripts of my trial and hearings.

         Best regards,

            Jarred Ford /Jarred Ford/ 12/14/22

JA169

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

_____ )
                            )
UNITED STATES OF AMERICA,    )
                            )
            vs.             )      5:21-CR-105-1BO
                            )
JARRED JAVON FORD,          )
                            )
            Defendant.      )
_____ )

JANUARY 4, 2023
SENTENCING HEARING
BEFORE THE HONORABLE TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

On behalf of the Government:

CHARITY L. WILSON, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina  27601
charity.wilson@usdoj.gov

On behalf of the Defendant:

Jarred Javon Ford, Defendant pro se

Wanda B. Constantino, CVR-CM-M
WordServices, Inc.
3103 Virginia Pine Lane
Apex, North Carolina  27539
919.548.4914
wanda@mywordservices.com
Stenomask with computer-aided transcription

JA170

2

```
 1        (Wednesday, January 4, 2023, commencing at 3:35 p.m. with
 2        the Defendant present.)
 3            THE COURT:  Do you want to say anything, Mr. Ford,
 4    about your sentence?
 5            THE DEFENDANT:  Yes, sir.  I -- when I got the
 6    presentence report, it said I had 15 days to submit the
 7    objections.  But when I got it, I only had seven days before
 8    the deadline.  So I was going to ask if the Court will hear my
 9    objections now or if it was too late.
10            THE COURT:  All right.  Go ahead.
11            THE DEFENDANT:  I had objections to the -- I'm just
12    gonna give the short version -- the -- the criminal history.
13    It is -- it says that it's a score of III, and I believe that
14    it should have been a score of II because one of the
15    convictions in which I received probation, the -- the day that
16    that one was sentenced was also the sentence date because they
17    suspended the sentence in the first one and then they put it in
18    with the second conviction, which was on the same date.  And
19    that's on number 17.  I'll give you the exact date.
20            THE COURT:  Isn't it true that even if his criminal
21    history category was II, because his guideline imprisonment
22    range was 360 to life, he would still be at 120 months?
23            PROBATION OFFICER:  Yes, Your Honor.  That would be
24    correct.
25            THE COURT:  That's right.  So irrespective of the
```

3

1   actual criminal history category that the report provides,

2   whether it was a I, a II or a III, all of those would be at 120

3   months, the statutory maximum, because the guideline was in

4   excess of that.  Isn't that right?

5           PROBATION OFFICER:  Yes, Your Honor.

6           THE COURT:  Okay.  Go ahead.

7           THE DEFENDANT:  Okay.  My second objection was to the

8   offense -- offense level computation.  I would ask that it not

9   be -- the cross-reference not to cross-reference for my firearm

10  charge because I'm facing those charges in state -- in a state

11  trial.  And that if it was to be cross-referenced, that it be

12  cross-referenced with assault instead of attempted murder

13  because it's established with reasonable certainty that

14  somebody was assaulted versus the fact that I'm accused of

15  attempting to murder somebody.  Those were really the only

16  objections that I had.

17          THE COURT:  Yeah.  I'll make a finding that your

18  exchange of gunfire at the sheriff's department and the law

19  enforcement officers was an attempted murder as a matter of

20  law, in fact, so thank you.

21          THE DEFENDANT:  Okay.

22          THE COURT:  And your guideline range is 120 months.

23          He was only prosecuted on the charge of felon in

24  possession of firearm?

25          MS. WILSON:  In the state -- or in this jurisdiction,

JA172

4

```
 1   yes, sir.
 2            THE COURT:  Do you have any victim allocation?
 3            MS. WILSON:  Yes, sir.
 4            THE COURT:  Okay, you can proceed with that.
 5            MS. WILSON:  Thank you, sir.
 6       (Mr. William Toney approached the prosecutor's table.)
 7            THE COURT:  You're -- you're welcome to stay or sit
 8   wherever it's comfortable to make your statement.
 9            MR. WILLIAM TONEY:  Yes, sir.
10            Good afternoon, Judge Boyle.  My name is William
11   Toney, and I want to thank you for the opportunity to address
12   the Court.
13            On February 4th, 2021, the biggest change in my life
14   took place.  An unknown person who was later identified as
15   Jarred Ford was stopped for a traffic offense.  I responded to
16   assist my partner, Shelby Smith, with my K-9 Chase.  Who would
17   have known that this traffic stop would have ended my career?
18            Not only did this traffic stop end my career, but it
19   has affected me physically, mentally, and emotionally.  We
20   don't miss the simplest things in life until we can't do them.
21            During the traffic stop, Ford shot me four times as
22   we were trying to detain him.  As results, two bullets went
23   into my right arm.  I lost my radius bone, which was replaced
24   by a metal rod and eight screws.  I also have severe medial
25   nerve injury in that arm, causing three fingers to be numb.
```

5

```
 1   The medial nerve injury has caused me to have severe pain in my
 2   arm.  I have been experiencing that pain constantly now for two
 3   years.
 4        I'm unable to open a jar or even unscrew a cap of
 5   soda bottle or water bottle.  I'm unable to even button my
 6   shirt, or just getting dressed in general is a struggle.  I
 7   can't even go to the restroom without having to struggle.  I
 8   can't write with my right hand well.  I have to learn to write
 9   with my left hand now.  After being shot in the hip, I saw -- I
10   suffer from hip pain daily.  On rainy days I can hardly walk. I
11   was shot in my left arm, and by the saving grace of God, after
12   a bullet went through that arm, I don't have critical issues in
13   that arm.
14        These physical injuries are permanent.  I can't even
15   throw the baseball or football with my seven-year-old son.  I
16   can't even exercise such as running or lifting weights to stay
17   fit.  I can't even protect my family physically.  I suffer from
18   PTSD symptoms.  I dream over and over about how he shot me.  If
19   I hear loud noises, if someone dropped something or fireworks
20   or a car backfires, I'm running for cover.  How it is difficult
21   to get food in the grocery store, constantly thinking someone
22   can shoot me.
23        This takes a toll on me -- but not only on me, but my
24   K-9 partner too.  He has been trained to protect me and you, if
25   needed, and to do the job of searching for missing children and
```

JA174

6

```
 1   elderlies and locating drugs.  But that day he was unable to do
 2   his job.  He had a front row seat to see me, his partner, his
 3   handler, face death and not be able to protect me.  He even
 4   suffers from PTSD symptoms, loud noises, and deals with
 5   anxiety.
 6           So I ask you why.  I lost my career behind your
 7   actions.  I forgive you for what you did and I pray that you
 8   find God.  Believe it or not, He has a plan for you and for me.
 9   I pray that you seek Him.
10           THE COURT:  Thank you very much.  Thank you.  That'll
11   be made a part of the record.
12           MS. WILSON:  Thank you, Your Honor.
13           THE COURT:  Is that all?
14           MS. WILSON:  Judge, I have more to say, if Your Honor
15   would allow it.
16           THE COURT:  Yeah.
17           MS. WILSON:  Thank you.  Your Honor, This is about
18   the worst nightmare for a law enforcement officer.  It's about
19   the worst nightmare for the family of a law enforcement
20   officer, that literally an officer can pull somebody over for
21   speeding and encounter somebody that has a total disregard for
22   human life.
23           Your Honor presided over this trial.  I know that you
24   are well aware of the facts, but to avoid -- for this Defendant
25   to avoid prosecution for firearm by a felon, something that he
```

JA175

7

```
 1   could have gotten probation for in the state system -- he fired
 2   every bullet that was in his gun at two different officers,
 3   easily could have ended both of their lives.
 4          You've heard from Deputy Toney.  I know in the course
 5   of the trial that you heard from Sergeant Smith, who is also
 6   here today, and I have spoken to her about this experience and
 7   she relays to me the fear not only for her own safety -- she
 8   literally could feel dirt hitting her legs as bullets were
 9   coming near her -- but it's horrifying for her, it was
10   horrifying for her to watch her partner, somebody who had --
11   has become a close friend, be shot by this man and not knowing
12   how this was gonna end.
13          Your Honor, you've heard about the injuries that
14   Deputy Toney had sustained, and today on a rainy day he is in a
15   significant amount of pain.  Of course, coming to court, he did
16   not want to take any pain medication before coming here, and
17   that has begun to take its toll on him.  And so even things
18   like standing up and addressing this Court take a Herculean
19   effort for this man who once was protecting and serving this
20   community.
21          This was his dream job that he can no longer do.  He
22   served admirably with three different law enforcement agencies,
23   and this Defendant ended that career.  Your Honor, I don't know
24   that you can get much more horrific on the facts of a firearm
25   by a felon.
```

JA176

8

1          In terms of who this Defendant is that stands before

2    you today, he's 35 years old.  He's a self-reported Crips gang

3    member.  From the body-worn camera that I know that Your Honor

4    saw during trial, he had a blue bandana coming out of his

5    pocket even on the day that this happened and that Deputy Toney

6    was shot and Sergeant Smith was shot at.

7          He -- that particular firearm had been used in a

8    shooting 22 days earlier in his hometown of St. Petersburg,

9    Florida, where a woman was shot three times and a man was shot

10   six times.  They perfectly described the firearm.  They

11   describe a green laser light on it.  That green laser light was

12   found in this Defendant's car at the search after this shooting

13   happened.  So this is not behavior that is foreign to this

14   Defendant.

15         His criminal history reflects that too.  Paragraph 16

16   is a fleeing or eluding a law enforcement officer.  And I would

17   note for Your Honor that he discharged a firearm in the air

18   three times after getting into a verbal argument and fled from

19   law enforcement when they tried to do a traffic stop.  He was

20   placed on probation that was ultimately revoked.

21         Paragraph 17 is a possession with intent to sell and

22   deliver marijuana.  However, I would note for Your Honor that

23   again he failed to stop for an officer who was trying to do a

24   traffic stop.  He was given an active sentence of 13 months.

25         And then paragraph 18, he has a battery conviction

JA177

9

```
 1   wherein he intentionally assaulted a domestic partner that

 2   ended up being the mother of his two children, according to

 3   paragraph 28 of the presentence report.  Again, he was placed

 4   on probation that was ultimately revoked.  We do believe that

 5   Probation has properly scored him at criminal history category

 6   III.  However, Your Honor is absolutely right that regardless,

 7   because of the cross-reference, that's absolutely a hundred

 8   percent appropriate in this case, that his guideline range far

 9   exceeds the statutory maximum.

10        Again, you cannot get much more serious than the

11   facts of this case for a firearm by a felon.  There is a need

12   for Your Honor's sentence to provide just punishment and

13   promote respect for the law.  Mr. Ford has a total disregard

14   for rules.  He feels like there are no rules that apply to him.

15   He has a total disregard for law enforcement.  He continually

16   refuses to respect the authority of any officer that encounters

17   him and a total disregard of human life.  When in close

18   quarters, he's firing a firearm while fighting with law

19   enforcement, striking Deputy Toney four times.  It's an

20   absolute total disregard for the rights and safety of others.

21        In less than a month, he shot three people:  a woman

22   and a man in Florida and then Deputy Toney.  Your Honor, 120

23   months is surely not greater than necessary.  It's not even

24   sufficient to cover the conduct that has happened in this.

25   However, it is the statutory maximum and the only charge that
```

1   we had jurisdiction to charge in -- in this District.

2         He has pending state charges.  The presentence report

3   indicates that they've been dismissed, and that's not accurate.

4   The firearm by a felon charge was dismissed, but he still faces

5   attempted murder charges for both of these deputies, and that

6   trial is scheduled to begin on Monday, the 9th.

7         So Your Honor, obviously we're asking for 120 months.

8   We believe that there's no sentence below that that is

9   sufficient.

10         Thank you, Your Honor.

11         THE COURT:  I would assume that the Nash County

12   Superior Court trial will proceed as scheduled.

13         MS. WILSON:  I don't have any reason to believe that

14   -- anything contrary to that, yes, sir.

15         THE COURT:  Is he represented by counsel, or is he

16   his own counsel again?

17         MS. WILSON:  I believe he is representing himself in

18   that trial as well.

19         THE COURT:  All right.  The total offense level is a

20   category 42.  As I said, that produces a guideline range of 360

21   months to life imprisonment.  The statutory mandatory -- or the

22   statutory maximum is 120 months, and so I'll impose a sentence

23   of 120 months in the Bureau of Prisons or its authorized

24   representative, a term of three years of supervised release on

25   the conditions of supervision in force in this District, and a

11

1    special assessment of a hundred dollars.

2            That's all.

3            MS. WILSON:  Thank you, Your Honor.

4            THE COURT:  You can appeal that to the Court of

5    Appeals under the Rules of Appellate Procedure.

6        (Proceedings concluded at 3:50 p.m.)

7            _____

8                    (END OF TRANSCRIPT.)

9            _____

NORTH CAROLINA

WAKE COUNTY

I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
OF SAID PROCEEDINGS.

/s/ WANDA B. CONSTANTINO_____        6/21/23
WANDA B. CONSTANTINO, CVR-CM-M          DATE
Contract Court Reporter

JA180

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of North Carolina

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| Jarred Javon Ford | ) Case Number: 5:21-CR-00105-1BO |
| | ) USM Number: 92998-509 |
| | ) |
| | ) Pro Se |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s) ___1___
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924 | Felon in Possession of a Firearm. | February 4, 2021 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/4/2023
Date of Imposition of Judgment

_Terrence Boyle_
Signature of Judge

Terrence W. Boyle, United States District Judge
Name and Title of Judge

1/4/2023
Date

JA181

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  6

DEFENDANT:   Jarred Javon Ford
CASE NUMBER:   5:21-CR-00105-1BO

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Count 1 -  120 months.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

JA182

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page   3   of   6

DEFENDANT:   Jarred Javon Ford
CASE NUMBER:  5:21-CR-00105-1BO

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

  Count 1 - 3 years.

# MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
      ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.    ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.    ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.    ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

JA183

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3A — Supervised Release

Judgment—Page    4    of    6

DEFENDANT:  Jarred Javon Ford
CASE NUMBER:  5:21-CR-00105-1BO

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs that he or you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____     Date  _____

JA184

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
　　　　　　　　　Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT: Jarred Javon Ford
CASE NUMBER: 5:21-CR-00105-1BO

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ | $ |

☐　The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐　The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

　　If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |
| **TOTALS** | $　　　　0.00 | $　　　　0.00 | |

☐　Restitution amount ordered pursuant to plea agreement　$ _____

☐　The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐　The court determined that the defendant does not have the ability to pay interest and it is ordered that:

　　☐　the interest requirement is waived for the　☐　fine　☐　restitution.

　　☐　the interest requirement for the　☐　fine　☐　restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

JA185

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page   6   of   6  

DEFENDANT:  Jarred Javon Ford
CASE NUMBER:  5:21-CR-00105-1BO

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐   Lump sum payment of $ _____ due immediately, balance due

       ☐   not later than _____ , or
       ☐   in accordance with  ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☐   Payment to begin immediately (may be combined with  ☐C,   ☐ D, or   ☐ F below); or

**C** ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
       _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
       _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
       term of supervision; or

**E** ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
       imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑   Special instructions regarding the payment of criminal monetary penalties:
       Payment of the special assessment is due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

       Case Number
       Defendant and Co-Defendant Names
       *(including defendant number)*               Total Amount         Joint and Several Amount         Corresponding Payee, if appropriate

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☑   The defendant shall forfeit the defendant's interest in the following property to the United States:
       Preliminary Order of Forfeiture filed on 1/4/2023.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Case 5:21-cr-00105-BO   Document 92   Filed 01/04/23   Page 6 of 6

JA186