# No. 23-4011

# United States Court of Appeals for the Fourth Circuit

_____

**UNITED STATES OF AMERICA,**

*Appellee,*

***v.***

**JARRED JAVON FORD,**

*Appellant.*

_____

*On Appeal from the United States District Court
for the Eastern District of North Carolina*

_____

# RESPONSE BRIEF OF THE UNITED STATES

_____

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:    DAVID A. BRAGDON
        LUCY PARTAIN BROWN
        *Assistant United States Attorneys*

        150 Fayetteville Street, Suite 2100
        Raleigh, North Carolina 27601
        Telephone: (919) 856-4530

        *Attorneys for Appellee*

# TABLE OF CONTENTS

Table of Authorities ....................................................................... iii

Statement of Jurisdiction ............................................................... 1

Statement of Issues........................................................................ 2

Statement of Facts.......................................................................... 3

Summary of Argument.................................................................. 10

Argument ...................................................................................... 11

**I.    The district court did not plainly err in granting Defendant's motion to proceed pro se, where his decision was knowing, intelligent, and voluntary.**

    A.    Standard of Review................................................... 11

    B.    Discussion of Issue. ................................................ 11

**II.   The district court erred by briefly discussing Defendant's sentence in his absence.**

**III.  Defendant's sentence was reasonable.**

    A.    Standard of Review................................................... 18

    B.    Discussion of Issue. ................................................ 19

        1.    The attempted murder cross reference was properly applied where Defendant did not dispute the facts underlying the district court's decision.................................... 20

        2.    The district court's lack of explanation had no impact on Defendant's sentence. ............................................... 22

            a. Plain error applies because Defendant did not request a different sentence .............................................. 22

b. Even if the district court's explanation was in error, Defendant's substantial rights were not affected because he has not shown a reasonable likelihood of a lower sentence on remand ...................................... 24

Conclusion ................................................................................. 26

Certificate of Compliance

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Faretta v. California,*
  422 U.S. 806 (1975) .................................................................. 11

*Greer v. United States,*
  141 S. Ct. 2090 (2021)..........................................................11, 19

*United States v. Ashford,*
  718 F.3d 377 (4th Cir. 2013) ...............................................18, 20

*United States v. Dominguez Benitez,*
  542 U.S. 74 (2004).................................................................. 16

*United States v. Engle,*
  676 F.3d 405 (4th Cir. 2012) ................................................... 20

*United States v. Frazier-El,*
  204 F.3d 553 (4th Cir. 2000) ...............................................11, 13

*United States v. Gonzalez-Flores,*
  701 F.3d 112 (4th Cir. 2012) ................................................... 17

*United States v. King,*
  582 F.2d 888 (4th Cir. 1978) ...............................................12, 14

*United States v. Lawrence,*
  605 F.2d 1321 (4th Cir. 1979).............................................12, 14

*United States v. Lewis,*
  958 F.3d 240 (4th Cir. 2020) ................................................... 18

*United States v. Lorick,*
  753 F.2d 1295 (4th Cir. 1985).................................................. 11

*United States v. Lynn,*
  592 F.3d 572 (4th Cir. 2010) .......................................... 19, 23, 24

iii

*United States v. Olano,*
   507 U.S. 725 (1993) .............................................................11, 19

*United States v. Puckett,*
   556 U.S. 129 (2009) ................................................................ 23

*United States v. Singleton,*
   107 F.3d 1091 (4th Cir. 1997)...........................................12–15

*United States v. Slager,*
   912 F.3d 224 (4th Cir. 2019) ................................................. 21

*United States v. Williams,*
   342 F.3d 350 (4th Cir. 2003) ................................................. 20

## Statutes

18 U.S.C. § 922(g).................................................................... 3

18 U.S.C. § 924........................................................................ 3

18 U.S.C. § 1111 .................................................................... 20

18 U.S.C. § 3231 ...................................................................... 1

18 U.S.C. § 3553 ...................................................................... 2

18 U.S.C. § 3742 ...................................................................... 1

28 U.S.C. § 1291 ...................................................................... 1

## Rules

Fed. R. Crim. P. 43 ................................................................ 17

Fed. R. Crim. P. 51 ................................................................ 23

Fed. R. Crim. P. 52 ...........................................................17, 23

## Sentencing Guidelines

U.S.S.G. § 2K2.1 ........................................................................... 20

## STATEMENT OF JURISDICTION

Defendant Jarred Javon Ford appeals from a judgment of conviction following a jury trial. Jurisdiction to the district court was established by 18 U.S.C. § 3231.

Jurisdiction to this Court is provided by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The judgment was entered on January 8, 2023, and Defendant filed a timely notice of appeal.

## STATEMENT OF ISSUES

1.      Whether the district court plainly erred by granting Defendant's request to proceed pro se, where it admonished him about the challenges of doing so and where Defendant knew his charge and potential penalties.

2.      Whether, as the government concedes, the district court erred by discussing Defendant's sentence in a hearing on a motion to continue where Defendant was not present. And if so, what the proper remedy is where Defendant has not requested that the matter be reassigned to a new district court on any remand.

3.      Whether, at sentencing, (a) the district court abused its discretion by applying the attempted murder cross reference where Defendant admitted to shooting a law enforcement officer three times at close range and (b) whether the lack of § 3553(a) explanation was harmless where Defendant's sentence was one-third of the bottom of his earned guidelines range and would be the same on remand.

## STATEMENT OF FACTS

### Procedural History

The grand jury indicted Defendant on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. J.A. 14. He chose to proceed pro se, pled not guilty, and went to trial. J.A. 55–57; *see also* J.A. 7, D.E. 56. He was convicted. J.A. 158.

At sentencing, Defendant's guidelines range was 360 months to life, but his sentence was capped by a statutory maximum of 120 months' imprisonment. J.A. 223, ¶ 58. He was sentenced to 120 months. J.A. 182. He appealed. J.A. 160–161.

### Offense Conduct

As Deputy William Toney assisted at a traffic stop, Defendant Jarred Javon Ford shot him three times. Deputy Toney's partner, Deputy Shelby Smith, had pulled over Defendant for speeding down Interstate 95. J.A. 84. She smelled marijuana coming from his car. J.A. 84. She called for backup, and Deputy Toney and his K-9 partner answered the call. J.A. 84. Together, Deputies Smith and Toney asked Defendant about drugs, and he admitted to marijuana. J.A. 85. Deputy Smith then tried to detain Defendant, but he resisted. J.A. 85; J.A. 215, ¶ 8. As he did, Deputy Smith noticed a handgun in his waistband and warned Deputy Toney. J.A. 91; J.A. 119. Defendant then pulled out the gun and began firing. J.A. 85. He shot Deputy Toney in the arm. J.A. 133. Then, he shot him in the hip. J.A. 133. Then, as Deputy Toney was

falling to the ground, he shot him a third time in the other arm. J.A. 133; J.A. 215, ¶ 8. Defendant then began firing toward Deputy Smith, who rolled herself into a ditch and shot back at him. J.A. 85–86. Defendant shot at Deputy Smith until he ran out of bullets. J.A. 135.

## Pre-trial Hearings

Defendant was federally indicted for felon in possession of a firearm and had an initial appearance before a magistrate judge. There, he was told his charge and potential penalties. J.A. 25. He assured the court he understood the nature of his charges and the maximum penalties he faced. J.A. 25–26. He was also told that he had a right to an attorney at every stage of his case. J.A. 20.

Months later, Defendant's appointed counsel moved to withdraw from the case, as Defendant had "communicated his intention to represent himself pro se." J.A. 49. The district court held a hearing on the motion. J.A. 51. There, the court first reviewed the Pretrial Services Report, which included Defendant's criminal history. J.A. 52; J.A. 189–190. It then heard from defense counsel, who said Defendant wanted to be his own lawyer and was representing himself in his related state case as well.[1] J.A. 53. The district court then told Defendant:

> You have a right to counsel. You also have a right to be
> your own lawyer. I'd admonish you that you need legal
> skill to appear in a court.

---

[1] Defendant's waiver of counsel from his state case is included in a Supplemental Joint Appendix. S.A. 3.

J.A. 53. It then asked Defendant to explain why he wanted to represent himself. J.A. 53. Defendant replied that he felt it was in his best interest. J.A. 53. The district court then asked Defendant where he currently lived, where he was born, and what his nationality was. J.A. 53. Defendant explained that he was American, born in America, and lived in Florida. J.A. 53. After then hearing a summary of the anticipated facts of the case, the court noted it "should be pretty easy to try." J.A. 55. It then allowed defense counsel to withdraw and Defendant to proceed pro se. J.A. 55. Defendant clarified whether he still had time to file pretrial motions and was told he did. J.A. 56.

## Trial

Defendant represented himself at trial. J.A. 75. The government called witnesses, including Deputies Smith and Toney. J.A. 71–73. Defendant testified. He told the jury that, after he admitted to marijuana, Deputy Toney was holding his arm without much force when Deputy Smith said "in a pretty loud tone" that Defendant had a gun. J.A. 132. At that time, Deputy Toney was not looking at Defendant but "across the highway." J.A. 132. Nevertheless, Defendant testified that Deputy Smith's "declaration" put him into "fear mode" for his life. J.A. 132–133. So, he told the jury, he "pulled out that firearm and [] shot Deputy Toney one time in his right arm." J.A. 133. Deputy Toney let go of Defendant's arm and yelled "I'm shot." J.A. 133. Defendant then "lowered [his] firearm and [] shot him again in his right hip." J.A. 133. At this point, Deputy

Toney began to fall toward the ground, and Defendant testified that he again aimed toward his left arm and pulled the trigger. J.A. 133.

The jury convicted. J.A. 158.

## Post-trial Hearing

Two days before Defendant's sentencing hearing, the government filed an emergency motion to continue because Deputy Toney had developed complications after having surgery to remove a bullet Defendant shot into him. J.A. 8, D.E. 71; J.A 164. The district court held a hearing on the motion that same day; Defendant was not present. J.A. 9, D.E. 77; J.A. 163. There, the government reminded the district court of some facts of the case and explained its reason for seeking a continuance. J.A. 164. The district court asked Defendant's guidelines range and was told it was 360 months to life but capped at ten years, to which the district court said, "So he's just gonna get the ten years," and the government replied affirmatively. J.A. 165. The court then asked, "where's the mystery?," to which the government replied that there was no mystery, but it wanted to give the victim a chance to allocute. J.A. 166. The district court then discussed a couple possible dates for the rescheduled hearing and confirmed that Defendant did not have a lawyer. J.A. 167. The hearing lasted four minutes. J.A. 164–168.

### Presentence Investigation Report

A Presentence Investigation Report (PSR) was prepared. It summarized Defendant's offense conduct. J.A. 215–216, ¶¶ 6–11. It noted connections between Defendant and an attempted double homicide in Florida three weeks before he shot Deputy Toney and at Deputy Smith. J.A. 216, ¶ 14.

Defendant's criminal history included multiple felonies and misdemeanors. J.A. 217–218, ¶¶ 16–18. In one instance, he fired three shots into the air during an argument and then fled police. J.A. 217, ¶ 16. In another, he refused to stop for a police officer and was found with marijuana he intended to distribute. J.A. 218, ¶ 17. Defendant also had pending state charges for attempted first degree murder for shooting Deputy Toney and at Deputy Smith. J.A. 219, ¶ 23.

Defendant had a GED and attended some college. J.A. 220, ¶ 34. He joined the United States Marine Corps and was honorably discharged as a corporal. J.A. 221, ¶ 35.

Defendant's base offense level was a 33 because the cross reference for attempted murder applied (without it, his offense level would have been a 26). J.A. 222, ¶ 48. He received enhancements for the degree of injury he inflicted and for having a law enforcement victim. J.A. 222, ¶¶ 49–50. He got no credit for acceptance of responsibility, so his total offense level was a 42. J.A. 223, ¶¶ 55–56. This offense level carries a guidelines range of 360 months to life no matter the criminal history category. J.A. 223, ¶ 58; *see also* U.S.S.G. Sentencing Table.

Defendant did not submit objections to the PSR. J.A. 226.

## Sentencing Hearing

The district court opened the sentencing hearing by asking Defendant if he wanted to say anything about his sentence. J.A. 171. Defendant responded, "Yes, sir." J.A. 171. He then asked to be heard on objections to the PSR because he had "only had seven days before the deadline" and had not filed them. J.A. 171. The district court agreed to hear his objections. J.A. 171. Defendant argued he should have been a criminal history category II, rather than a III. J.A. 171. He also asked the district court not to apply the cross reference because he was facing related state charges or, alternatively, to cross reference the offense to assault, rather than attempted murder. J.A. 172. The district court made a finding that the "exchange of gunfire at the sheriff's department and the law enforcement officers was an attempted murder as a matter of law, in fact," so the guidelines range remained 120 months. J.A. 172.

Deputy Toney then allocuted. He told the court the traffic stop of Defendant affected him physically, mentally, and emotionally and ended his career. J.A. 173. He explained that he lost his radius bone, which was replaced by a metal rod and eight screws. J.A. 173. This caused three fingers to remain numb and led to constant, severe pain in his arm. J.A. 173–174. He told the court he could not open a jar, button his shirt, go to the restroom, or write without a struggle. J.A. 174. He could hardly walk on rainy days due to the hip pain and could not throw a ball with his son or otherwise stay physically fit. J.A. 174. He suffered from PTSD and dreamt "over and over" about how Defendant shot him. J.A. 174. He struggled to go to the grocery store for the constant fear that

8

someone could shoot him. J.A. 174. He also mentioned the toll on his K-9 partner who was trained to protect him and instead had to see Deputy Toney face death without being able to help. J.A. 174–175. In the end, he told Defendant he forgave him. J.A. 175.

The government argued for a 120-month sentence. J.A. 175–179. It reminded the district court that Defendant "fired every bullet that was in his gun at two different officers." J.A. 176. It pointed out that the same gun Defendant used to shoot Deputy Toney and at Deputy Smith had been used just 22 days earlier in another double shooting with multiple ties to Defendant. J.A. 177. It discussed his criminal history and argued "you cannot get much more serious than the facts of this case for a firearm by a felon." J.A. 178.

The district court inquired about the pending state case, reiterated the guidelines range of 360 months to life and statutory maximum of 120 months, and stated, "so I'll impose a sentence of 120 months." J.A. 179, 182.

# SUMMARY OF ARGUMENT

1.      The district court did not plainly err by allowing Defendant to proceed pro se. Examination of the record makes clear that Defendant was aware of his charge, penalties, and the ways in which an attorney would help him, so his decision was knowing, intelligent, and voluntary. He does not dispute the other requirements, so his claim fails.

2.      The district court erred when it briefly discussed Defendant's sentence at a hearing where Defendant was not present. It is unclear from the Defendant's brief, however, whether remand is required because Defendant does not ask this Court to reassign the case to a new district court.

3.      The district court did not err in applying the cross reference to attempted murder where Defendant did not dispute the fact that he shot Deputy Toney three times at close range and never testified to or argued anything that would indicate he only intended an assault. Moreover, the district court's lack of explanation did not affect Defendant's substantial rights where his sentence was capped at far below the bottom of his earned guidelines range and he would rightly get the same sentence on remand.

# ARGUMENT

## I. The district court did not plainly err in granting Defendant's motion to proceed pro se, where his decision was knowing, intelligent, and voluntary.

### A. Standard of Review.

Because neither Defendant nor original defense counsel objected below, review is for plain error. J.A. 52–56.

To establish plain error, Defendant must show: (1) error, (2) that is plain, and (3) that affects his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if these requirements are met, this Court should decline to correct plain error that does not "serious[ly] affect[] the fairness, integrity or public reputation of judicial proceedings." *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (internal quotation marks omitted).

### B. Discussion of Issue.

The Sixth Amendment affords a criminal defendant the right to self-representation. *Faretta v. California*, 422 U.S. 806 (1975). To assert that right, a defendant's request must be "(1) clear and unequivocal . . . (2) knowing, intelligent, and voluntary . . . and (3) timely." *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000).

To satisfy the first requirement, the request to proceed pro se must be express and unambiguous. *United States v. Lorick*, 753 F.2d 1295, 1298–99 (4th Cir. 1985). This is intended to "protect against an inadvertent waiver of the right." *Frazier-El*, 204 F.3d at 558–59 (internal quotation marks omitted).

To satisfy the second requirement, "the court must assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance." *United States v. King*, 582 F.2d 888, 890 (4th Cir. 1978). Whether this has been satisfied need not be "a formalistic, deliberate, and searching inquiry," *United States v. Singleton*, 107 F.3d 1091, 1097–98 (4th Cir. 1997), and "no particular form of interrogation is required." *United States v. King*, 582 F.2d 888, 890 (4th Cir. 1978). Rather, it can be determined "by examining the record as a whole," "including the background, experience, and conduct of the accused." *Singleton*, 107 F.3d at 1097.

To satisfy the third requirement, the right to self-representation generally must "be asserted at some time before meaningful trial proceedings have commenced." *United States v. Lawrence*, 605 F.2d 1321, 1325 (4th Cir. 1979) (internal quotation marks omitted).

In *Singleton*, the defendant made a "mid-trial request to fire counsel." *Singleton,* 107 F.3d at 1098. The trial court "did not conduct a formal inquiry" but "did advise Singleton that he should think 'long and hard' before firing counsel, nothing that counsel would be of assistance to him." *Id.* It also told the defendant he would be required to follow the same rules as an attorney, but he would be on his own. *Id.*

On appeal, this Court noted those factors and the lack of "direct evidence of Singleton's educational background, his understanding of the judicial process, and his appreciation of the charges against him and the potential penalties." *Id.*

But this did not end the inquiry. Rather, the Court conducted a "fuller exploration of the history of th[e] case," which revealed that the defendant "had the requisite appreciation of those factors to make an intelligent choice to proceed *pro se*." *Id.* In coming to this conclusion, the Court considered that the defendant "had earlier been adequately informed" of "the nature of [the] charges." *Id.* He had an "appreciation of the judicial process" because he had seen an attorney "in action" in trial and pretrial hearings. *Id.* His "intelligence and education" were sufficient, as seen in his questions and "eventual conduct of his defense," as well as the fact that he was a high school graduate with work history. *Id.* For all these reasons, though it would have "prefer[red] to have seen a more thorough colloquy," this Court affirmed because "the record as a whole demonstrate[d] that Singleton's decision to waive counsel was knowing, intelligent, and voluntary." *Id.* at 1099.

Here, as in *Singleton*, examination of the whole record reveals a knowing, intelligent, and voluntary waiver of the right to counsel. Preliminarily, Defendant concedes the first and third requirements of waiver. As to the first factor, his request was unequivocal. The district court came into the hearing aware of his request ("He wants to be his own lawyer?") and that was then confirmed by then-counsel ("He does, your Honor.") and Defendant himself ("I just feel like it would be in my best interest to represent myself."). J.A. 53. On appeal, he acknowledges the record can be seen to "reveal[] that Mr. Ford's decision was clear, and questionably unequivocal." Brief at 14. At the very least, there is no risk the waiver was inadvertent. *See Frazier-El*, 204 F.3d at 558–59. As to the

13

third factor, aside from a bare assertion, Defendant does not contest the timeliness of his request. Brief at 13–14 (claiming "[t]he trial court met none of these requirements" but never discussing timeliness). As his request was made weeks before trial, it was "asserted at some time before meaningful trial proceedings [] commenced." *United States v. Lawrence*, 605 F.2d 1321, 1325 (4th Cir. 1979) (internal quotation marks omitted).

So, the only issue before this Court is whether Defendant's waiver of counsel was knowing, intelligent, and voluntary. Because Defendant was told his charges, potential punishment, and how an attorney could assist him, it was. At his initial appearance, the magistrate judge told Defendant he had been charged with one count of possession of a firearm by a convicted felon. J.A. 25. It also told him the potential punishment, including fines, supervised release, special assessment, and even any enhancement under the Armed Career Criminal Act. J.A. 25. Defendant was thus adequately informed of the charges and potential penalties even though the district court did not re-advise him at the time of waiver. *See Singleton*, 107 F.3d at 1098.

Moreover, the district court was assured that Defendant knew "the manner in which an attorney [could] be of assistance." *King*, 582 F.2d at 890. For starters, it told him as much when it said: "You have a right to counsel. You also have a right to be your own lawyer. *I'd admonish you that you need legal skill to appear in a court.*" J.A. 53 (emphasis added). This was akin to the warning in *Singleton* to think "long and hard" before going pro se because counsel would be of assistance. *Singleton*, 107 F.3d at 1098.

But this was not the only basis for the district court to assure itself that defendant made an intelligent choice. *See Singleton*, 107 F.3d at 1098 (discussing many of the following factors before affirming the defendant's waiver of counsel). The district court also knew Defendant was 34 years old and had repeated experience in the court system. J.A. 52 (district court requesting and being provided the pretrial services report); J.A. 188–190 (the report). It also knew Defendant had already made the choice to proceed pro se in related charges at the state level. J.A. 53. It knew defense counsel raised no concern about Defendant's ability to waive the right or to represent himself. J.A. 52–56. And it knew the case was conceptually simple. J.A. 55. The district court also ensured that Defendant had been born in America, so some degree of familiarity with the American legal process—as well as native understanding of the English language—could be presumed. Further examination of the record reveals that, like the defendant in *Singleton*, Defendant was educated and had meaningful work history. J.A. 220–221, ¶¶ 34–43.

For these reasons, even if the Court "would have…prefer[red] to have seen a more thorough colloquy," "the record as a whole demonstrates that [Defendant's] decision to waive counsel was knowing, intelligent, and voluntary." *Singleton*, 107 F.3d at 1099. Thus, the district court allowing him to do so was not error, much less plainly so.

Moreover, even if it were, Defendant has not satisfied the third prong of plain error because he cannot show his substantial rights were violated. To do so, he would have to show that there is a "reasonable probability" that he would

15

have chosen to be represented by counsel if the Court had performed a more detailed colloquy. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." (internal quotation marks omitted)). The record suggests otherwise. Defendant remained pro se for sentencing, showing his commitment to representing himself even after he lost when doing so at trial. J.A. 170. He also waived counsel in his more-serious state court case. J.A. 53; J.A. 55. And to this day, he has never said he would use counsel at any retrial. Brief at 13–14. He just wants another bite at the apple, and that is not enough to show that his substantial rights were violated.

Moreover, records from Defendant's related state court case demonstrate his independent understanding of the consequences of proceeding pro se. There, before his federal waiver and trial, Defendant waived state counsel and swore to the court there that he "fully under[stood] and appreciate[d] the consequences of [his] decision to waive the right to assigned counsel and the right to assistance of counsel." S.A. 3. The state judge also certified as to Defendant's knowing, voluntary, and intelligent waiver of counsel in that case. S.A. 3.

Because he was already aware of the impact of proceeding pro se, Defendant's substantial rights were not impacted even if the waiver admonishment in his federal case fell short. Because he cannot meet any of the first three prongs of plain error, this Court should not use its discretion to disturb the district

court's ruling. And for all the reasons above, any error was also harmless even if Defendant had preserved error. *See* Fed. R. Crim. P. 52(a).

## II.     The district court erred by briefly discussing Defendant's sentence in his absence.

At the four-minute hearing on the government's emergency motion to continue sentencing, the district court briefly discussed Defendant's sentence. J.A. 164–167. The circumstances of that hearing were unusual, and the government can find no other case on all fours. Nevertheless, it recognizes that Federal Rule of Criminal Procedure 43 and this Court's case law require a defendant's presence at any "sentencing proceeding[]." Fed. R. Crim. P. 43(a)(3); *United States v. Gonzalez-Flores*, 701 F.3d 112, 119 (4th Cir. 2012) (discussing "sentencing proceedings at which a defendant's presence is a must").

The hearing here was intended to be administrative, not substantive, in nature. Brief at 7 (discussing hearing on government's Emergency Motion to Continue Sentencing). However, in pressing the government on whether a continuance was truly necessary, the district court discussed Defendant's likely sentence. This was error because Defendant was not present for what, briefly, veered into a "sentencing proceeding[]." *Gonzalez-Flores*, 701 F.3d at 119.

Though the government concedes that this was error, it asks this Court to consider the appropriate remedy, if any. On appeal, Defendant argues that the district court "decided what sentence to impose" before the full sentencing hearing with Defendant in attendance. Brief at 14, 20. It claims that, by doing so, the

district court "violated Mr. Ford's Due Process and Confrontation rights in several ways." Brief at 19. Nevertheless, Defendant never asks that, if remanded, the matter be reassigned to a new judge. If a new, full sentencing before the same judge would cure Defendant's alleged error, it is unclear why the subsequent, full sentencing hearing that occurred below did not already have that effect. The government leaves to the sound discretion of this Court what the appropriate remedy—if any—should be but notes its interest in preventing Defendant from raising this same argument in any future appeal (i.e., claiming that this error continued to influence the court in a later sentencing).

## III.   Defendant's sentence was reasonable.

### A.   Standard of Review

"When determining whether a district court properly applied the advisory Guidelines, including its application of a cross reference, [this Court reviews] the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Ashford*, 718 F.3d 377, 380 (4th Cir. 2013) (internal quotation marks omitted).

As to the sentence itself, when an objection is preserved, this Court "review[s] the sentence imposed by the district court for abuse of discretion." *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020). When an abuse of discretion occurs, a sentence will be vacated unless the error was harmless. *Id.*

To preserve a sentencing explanation objection, a defendant must object or argue for a different sentence below. Otherwise, review is for plain error.

*United States v. Lynn*, 592 F.3d 572, 580 (4th Cir. 2010). To establish plain error, Defendant must show: (1) error, (2) that is plain, and (3) that affects his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). In the sentencing explanation context, this requires demonstration that the "explanation had a prejudicial effect on the sentence imposed." *Lynn*, 592 F.3d at 580. Even if these requirements are met, this Court should decline to correct plain error that does not "serious[ly] affect[] the fairness, integrity or public reputation of judicial proceedings." *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (internal quotation marks omitted).

## B.   Discussion of Issue.

Defendant's sentence was reasonable.[2] The district court—which had presided over the trial—considered his belated objection to the cross reference and applied it based on the law and undisputed facts before it. The cross reference rendered any concern about criminal history category irrelevant. Moreover, though the district court did not explain its sentence, Defendant did not seek a lower one, and the record makes clear the lack of explanation had no effect, as

---

[2]   The government responds to Defendant's sentencing arguments even though it concedes above that an error occurred. It does this because: (1) the Court may disagree with its concession; (2) the Court may conclude that Defendant already received the remedy he now seeks when he was present for his subsequent, full sentencing hearing below; (3) the parties would benefit (and potentially avoid a second appeal) if the cross-reference issue is settled before any resentencing; and (4) it does not want these arguments to be considered waived at any future hearing or appeal.

the bottom of Defendant's earned guidelines range was *three times* the maximum sentence the district court could actually impose.

### 1. The attempted murder cross reference was properly applied where Defendant did not dispute the facts underlying the district court's decision.

In the event of a conviction for illegal possession of a firearm or ammunition, U.S.S.G. § 2K2.1(c) authorizes a district court to substitute the offense level for another criminal offense that the defendant committed or attempted to commit in connection with the possession of the firearm or ammunition. *See United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013). This is known as the cross reference. U.S.S.G. § 2K2.1(c). The other criminal offense can be any federal, state, or local offense other than the explosive or firearms or ammunition possession or trafficking offense regardless of whether a criminal charge was brought or conviction obtained. U.S.S.G. § 2K2.1, Application Note 14(C).

Murder is the unlawful killing of a human being with malice aforethought. 18 U.S.C. § 1111(a). Malice aforethought does not necessarily require a specific intent to kill or injure but may be established by evidence of conduct which is reckless, wanton, and a gross deviation from a reasonable standard of care of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily injury. *See United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003). Attempted murder requires proof that a defendant took a substantial step toward completion of the intended crime. *See United States v. Engle*, 676 F.3d 405, 419–20 (4th Cir. 2012).

Here, Defendant attempted murder. [3] Until this appeal, Defendant has never argued he merely meant to assault Deputy Toney, and the record does not support such a claim. At close range, Defendant shot Deputy Toney three times about the trunk of his body: his right arm, right hip, and upper left arm. J.A. 215, ¶ 8. Before that, Deputy Toney had presented no deadly threat to Defendant; he was not even looking in Defendant's direction. J.A. 132. At trial, Defendant never testified that he merely meant to assault Deputy Toney. If anything, his testimony supported an intent to kill because he repeatedly asserted that he felt in fear for his life once Deputy Smith noticed he had a gun. J.A. 132–133. After shooting Deputy Toney three times, Defendant shot at Deputy Smith until his gun ran out of bullets. J.A. 85–86; J.A. 135. Perhaps for this reason, even at sentencing, Defendant did not provide any reason *why* assault was the correct cross reference. J.A. 172. The record makes clear it was not; Defendant committed attempted murder that day, and the cross reference to it was rightly applied.

Defendant's other arguments also fail. That he was facing related charges in state court is of no moment: pending state charges do not change Defendant's underlying actions. Moreover, that the district court stated the cross reference applied "as a matter of law, in fact" was not error. Cross-reference application implicates determinations of both law and fact, and Defendant never disputed the underlying facts. *United States v. Slager,* 912 F.3d 224, 222–23 (4th Cir. 2019)

---

[3]  Defendant never objected to the facts underlying the cross-reference determination. J.A. 172; J.A. 226.

("[W]e hold that the district court did not clearly err in making its factual findings. We further conclude that the court correctly determined, based on those findings, that second-degree murder was the proper cross-reference."). Any factual determination as to intent was necessarily included in the court's legal finding and well-supported in the record. And finally, because the district court rightly applied the cross reference, any error in calculating Defendant's criminal history would be harmless, as the record is clear that it would not impact his guidelines range. J.A. 171–172.

Defendant styles his argument as implicating procedural and substantive reasonableness but cites no case for the proposition that guidelines objections are subject to substantive reasonableness review. Brief at 21–26. They are not. Even if they were, his sentence was *far* below the earned guidelines calculation and well-justified by his actions in shooting at two law enforcement officers at close range and until his gun ran out of bullets.

## 2. The district court's lack of explanation had no impact on Defendant's sentence.

### a. Plain error applies because Defendant did not request a different sentence.

Generally, a defendant must preserve a claim of error to seek relief for it on appeal. To do so, the party must "inform[] the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."

Fed. R. Crim. P. 51(b). Failure to do so means the defendant's appeal is reviewed for plain error, where he can only prevail if he meets the requirements above. *See also* Fed. R. Crim. P. 52(b). The underpinning of this rule is sound: it "serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them" as it is the entity "in the best position to determine the relevant facts and adjudicate the dispute." *United States v. Puckett*, 556 U.S. 129, 134 (2009). To do otherwise would invite defendant to "sandbag[] the court – remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* (internal quotation marks omitted).

The standard for what a defendant must do to preserve error on a sentencing claim is broad, but it has its limits. A defendant need not "lodge an explicit objection after the district court explanation" but must, at the very least, seek "a sentence different than the one ultimately imposed." *See United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010). In *Lynn*, when the defendant "did not argue for a sentence different than the within-Guidelines sentence [he] ultimately received" but "merely 'point[ed] out' [defendant's] conduct since adulthood and substance abuse problems," without seeking a departure, his case was reviewed for plain error. *Id.* at 580 (alteration in original). Because he could not then show that the explanation—even if assumed to be in error—"had a prejudicial effect on the sentence imposed," his sentence was affirmed. *Id.*

23

Here, Defendant did not even "point[] out" helpful information about himself or his history. When prompted to "say anything about . . . [his] sentence," he chose only to argue about guidelines enhancements. J.A. 171–172. Critically, he never asked for a departure below the guidelines range. Because Defendant did not seek "a sentence different than the one ultimately imposed," review is now for plain error, and the burden is his. *Lynn*, 592 F.3d at 578, 580.

> b.     Even if the district court's explanation was in error, Defendant's substantial rights were not affected because he has not shown a reasonable likelihood of a lower sentence on remand.

Even assuming the district court plainly erred by not explaining its sentence, the claim still fails. To prevail under the third prong of plain error, Defendant must show his substantial rights were affected by the district court's plainly erroneous sentencing explanation. To do so, he must establish that the explanation had a prejudicial effect on the sentence imposed. *Lynn*, 592 F.3d at 580. He has not and cannot.

Here, Defendant's sentence was *one-third* of the *bottom* of his earned guidelines range. *Compare* J.A. 182 *with* J.A. 223, ¶ 58. It was imposed after the district court heard trial testimony where Defendant admitted to shooting Deputy Toney repeatedly at close range, all because another deputy noticed his gun. J.A. 132–133. It was also imposed after the district court heard from Deputy Toney, who said Defendant's actions left him in constant pain—unable to throw a football with his son or even open a water bottle without assistance—and cost him

his career. J.A. 174. After that, the government provided more context, including that the gun Defendant used to shoot Deputy Toney and at Deputy Smith had been used to shoot another man and woman just 22 days earlier, and placed all this conduct within the context of Defendant's criminal history. J.A. 177–178.

Defendant earned a guidelines range of 360 to life, so a sentence of up to life in prison would be presumed reasonable on appeal. Nevertheless, the district court was constrained to a 120-month sentence. Defendant has not even tried to show that, under these circumstances, additional explanation by the district court would impact his sentence to be *less* than one-third of the bottom of his earned range.

Moreover, the PSR makes clear—and Defendant did not object—that, but for the cross reference, his base offense level would be a 26. J.A. 222, ¶ 48. With enhancements, and even giving Defendant the benefit of the lower criminal history category, his guidelines range would be 188–235 months, so a 120-month sentence would still be a dramatic benefit from his earned range. Accordingly, Defendant cannot satisfy plain error's third or fourth prongs. For the same reasons, any explanation error is harmless.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully submits that the conviction should be affirmed and the appropriate remedy, if any, for the conceded error be imposed.

Respectfully submitted, this 8th day of November, 2023.

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:   */s/ Lucy Partain Brown*
LUCY PARTAIN BROWN
*Assistant United States Attorney*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: 919-856-4530

DAVID A. BRAGDON
*Assistant United States Attorney*

*Of Counsel*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

    ☒    <u>  26  </u>    Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

    ☐    <u>        </u>    Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B)).*

2.  Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

<u>*/s/ Lucy Partain Brown*      </u>
LUCY PARTAIN BROWN
*Assistant United States Attorney*